IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|                                                                                                          |   |                           |
|----------------------------------------------------------------------------------------------------------|---|---------------------------|
| The Property Management Connection, LLC<br>807 Bradford Ave<br>Nashville, TN 37204                       | : | CIVIL ACTION NO.:         |
|                                                                                                          | : | COMPLAINT                 |
|                                                                                                          | : | JURY TRIAL DEMANDED       |
| &                                                                                                        | : |                           |
| Gordon J. Schoeffler<br>Attorney at Law<br>730 Jefferson St. (70501)<br>P.O. Box 4829<br>Lafayette, LA 70502 | : |                           |
| &                                                                                                        | : |                           |
| National Association of Residential Property Managers<br>638 Independence Parkway, Suite 100<br>Chesapeake, VA 23320 | : |                           |
| v.                                                                                                       | : |                           |
| The Consumer Financial Protection Bureau<br>1700 G Street NW<br>Washington, DC 20552                     | : |                           |
| &                                                                                                        | : |                           |
| Dave Uejio, in his official capacity as Acting Director of the Consumer Financial Protection Bureau,<br>1700 G Street NW<br>Washington, DC 20552 | : |                           |

                                                     :
                                                     :

The United States of America,       :

Served on Merrick Garland,        :

U.S. Attorney General              :

950 Pennsylvania Ave. NW      :

Washington, DC 20530            :

                                                     :

                      Defendants.      :

## COMPLAINT

The Defendant, the Consumer Financial Protection Bureau ("CFPB"), has doubled down on an unlawful policy of its fellow agency, the Centers for Disease Control and Prevention ("CDC"), to prohibit eviction in state courts of tenants defaulting on rent (the "Halt Order" or "the CDC Order"). CFPB has ensnared plaintiffs, The Property Management Connection LLC, Gordon Schoeffler and the members of the National Association of Residential Property Managers in its scheme to force them to make untrue statements to tenants who have been sued for unpaid rent, and are subject to eviction. The CDC issued and maintained an unlawful prohibition on evicting defaulting tenants in state courts. Now CFPB is requiring Plaintiffs to lie about the lawfulness and availability of the Halt Order to tenants who have failed to pay rent in derogation of Plaintiffs' First Amendment rights, and in Mr. Schoeffler's case, in derogation of zealous representation of his clients and the lawyer's ethical duty to be truthful to third parties. This Court should enjoin this CFPB policy, declare it unlawful, and set it aside.

## PARTIES

1.      Plaintiff The Property Management Connection LLC ("PMC") is a property management company in Nashville, Tennessee.

2.      As a part of its business, PMC seeks to collect rent from tenants who rent properties that it manages.  At present, some of PMC's tenants owe unpaid rent and are eligible for eviction for unpaid rent under Tennessee law.

3.      Plaintiff Gordon J. Schoeffler is an attorney practicing in real estate law in Louisiana.  As a part of his practice, he seeks to collect rent from tenants renting properties that his clients own and/or manage. At present, some of his client's tenants owe unpaid rent and are eligible for eviction for unpaid rent under Louisiana law.

4.      Plaintiff the National Association of Residential Property Managers (NARPM) is a member organization headquartered in Virginia.  NARPM was founded in 1988, and it represents over 5,000 residential property managers nationwide, by providing a permanent trade association for the residential property management industry.  At present, many NARPM members own or manage property where tenants have failed to paid rent and are eligible for eviction for unpaid rent in their respective jurisdictions.

5.      Defendant Bureau of Consumer Financial Protection is an independent executive agency of the United States of America.  It regulates consumer financial products and services, and it is headquartered in Washington, District of Columbia.

2

6.     Defendant Dave Uejio is Acting Director of the Bureau of Consumer Financial Protection.  He is sued in his official capacity.

7.     Defendant the United States of America is the Government of the United States organized under the Constitution of the United States with service effected on Merrick Garland, the Attorney General of the United States, as well as on the U.S. Attorney for the Middle District of Tennessee.

## JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331, as this matter involves questions arising under the Constitution of the United States and the Administrative Procedure Act.

9.     This Court has the authority to grant declaratory and injunctive relief in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

10.    Venue for this action properly lies in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1), because one or more Plaintiffs reside in this district, the Defendants are present in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

### A. The Halt Order

11.    On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, P.L. 116-316, which included in Section 4024 a

3

limited and temporary moratorium on evictions, for certain types of federally backed housing, that expired on July 24, 2020.

12.     On September 1, 2020, then Acting Chief of the CDC, Nina Witkofsky issued a nationwide order *not* limited to certain types of federally backed housing.  It was entitled, "*Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19*" (the "Halt Order" or the "CDC Order").

13.     The nationwide Halt Order became effective upon publication in the Federal Register, which occurred on September 4, 2020. 85 Fed. Reg. 55292 (Sept. 4, 2020), *available at* https://www.govinfo.gov/content/pkg/FR-2020-09-04/pdf/2020-19654.pdf.

14.     The Halt Order provided, "Under this Order, a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order."  *Id*.

15.     The Halt Order, by its terms, was not effective so long as a local jurisdiction applied more onerous eviction restrictions. *Id*.  In reality, however, the Halt Order stood and stands as a backstop to all similar state eviction moratoriums.  Any move to lift state moratoriums by governors, legislatures, courts, or other responsible state bodies would incur whatever political consequences from attempting to lift their moratoriums while still not allowing home providers access to their properties.  In

4

addition, the very existence of the federal Halt Order had the natural and predictable consequence of emboldening and causing tenants to cease paying rent to their landlords. Regardless of what states do, the Halt Order purports to deprive home providers of any resort to state mechanisms for eviction. And state laws no longer permit self-help evictions by changing locks.

16. The Halt Order said, "'Evict' and 'Eviction' mean any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property. This does not include foreclosure on a home mortgage." *Id*. at 55293. Perversely then, home providers cannot pursue evictions, but if they default on their mortgages and lose their properties, the banks can so evict! The same is true for home providers who can lose their property at a tax sale when their tenants' failure to pay rent leaves them unable to pay local taxes on their properties.

17. The Halt Order also said, "[A] person violating this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death or one year in jail, or both, or a fine of no more than $250,000 if the violation results in a death or one year in jail, or both[.]" *Id*. at 55296. In imposing the lesser of these criminal penalties, there is no requirement for the CDC to prove that any eviction led to the spreading of Covid-19 or any other collateral harm.

5

18.     To invoke the Halt Order, tenants must complete and sign a declaration, certifying under penalty of perjury that the tenant: is unable to pay rent "due to substantial loss of household income, loss of compensable hours of work or wages, lay-offs, or extraordinary out-of-pocket medical expenses;" is "using best efforts to make timely partial payments that are as close to the full payment as … circumstances permit"; has "used best efforts to obtain all available government assistance for rent or housing"; earns less than $99,000 per year (or $198,000 for joint filers); and is "likely to become homeless" if evicted. These declarations, however, go unchallenged. State courts rarely allow inquiry as to whether the facts behind the declaration are truthful. Mere mention of the Halt Order forestalls evictions.

19.     The initial Halt Order was effective upon publication until December 31, 2020, "unless extended." *Id*. at 55297.

20.     The Halt Order was extended past December 31, 2020, and on January 29, 2021, effective January 31, 2021, it was set not to expire until March 31, 2021. *CDC, Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations 70.2*, available at https://www.cdc.gov/coronavirus/2019-ncov/more/pdf/CDC-Eviction-Moratorium-01292021.pdf.

6

21.    The Halt Order was subsequently extended on April 1, 2021, when CDC extended it through June 30, 2021, unless extended further. *See Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19* (Apr. 1, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/more/pdf/CDC-Eviction-Moratorium-03292021.pdf

22.    The Halt Order, which does not preclude evictions based on criminal activity, property damage, violations of building or health codes, or violations of any other contractual provisions, does not explain how tenants evicted for non-payment of rent are more likely than other tenants to spread Covid-19 if evicted.  Nor does the CDC Order explain why CDC believes these tenants are likely to spread Covid-19 across state lines following an eviction for non-payment of rent.

23.    Once again, this extraordinary and unprecedented measure was issued without statutory authority and beyond the power of the federal government, on the pretext that preventing only those evictions for the non-payment of rent somehow limits the spread of Covid-19.  *Id.*

24.    The Halt Order called on state and local officials to assist with enforcement of the Halt Order, whether or not they wished to do so.  *Id.* ("Notice to Cooperating State and Local Officials").

25.    As of March 17, 2021, according to records kept by the CDC, more than 140 million Americans have had at least one dose of a Covid-19 vaccine, and more than

7

96 million Americans are fully vaccinated. CDC, COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#vaccinations (last checked April 28, 2021).

26.    Also according to the CDC, more than 42% of the American population has been vaccinated, with such vaccines concentrated in the most vulnerable populations, and 29% of the country is fully vaccinated, also concentrated among the most vulnerable. CDC, COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#vaccinations (last checked April 28, 2021).

27.    According to news reports and widely consulted statistics, the United States has vaccinated more people against Covid-19 than Europe and China combined and is the most-vaccinated large country in the world. Financial Times, *Covid-19 Vaccine Tracker: The Global Race to Vaccinate* (April 27, 2020) https://ig.ft.com/coronavirus-vaccine-tracker/?areas=usa&areas=eue&areas=chn&cumulative=1&populationAdjusted=0.

28.    In addition, CDC estimates that about 53 million Americans had had Covid-19 by September, 2020. CDC, *Estimated Incidence of Coronavirus Disease 2019 (COVID-19) Illness and Hospitalization—United States, February-September 2020* (Nov. 25, 2020) https://academic.oup.com/cid/advance-article/doi/10.1093/cid/ciaa1780/6000389.

8

29.    Yet nothing, even in the most recent Halt Order, treats the vaccinated or those who have already had the disease and thus have more natural resistance differently from anybody else.

30.    Despite the greatly changed disease and risk environment since September 2020, the Halt Order remains in place as a national housing policy masquerading as a public health policy, devastating home providers and eliminating their rights to access state courts across the country—all by an agency with no authority over housing policy.

### B. The Halt Order Is Rejected by the Courts and CFPB Doubles Down

31.    The Halt Order was immediately challenged in numerous courts across the country. In Georgia, housing providers immediately sought to enjoin it. *See Brown v. Azar*, No. 1:20-CV-03702-JPB, --- F.Supp.3d ----, 2020 WL 6364310, at *23 (N.D. Ga. Oct. 29, 2020). The U.S. District Court for the Northern District of Georgia declined to issue a preliminary injunction, but that matter is currently pending before the Eleventh Circuit on an expedited basis. *See Brown v. Azar*, Case No. 20-14210 (11th Cir.).

32.    Within the Sixth Circuit two challenges were filed against the Halt Order, both resulting in decisions invalidating CDC's action. First, on March 10, 2021, the U.S. District Court for the Northern District of Ohio "determine[d] that the Centers for Disease Control and Prevention's orders—*Temporary Halt in*

9

*Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55,292 (Sept. 4, 2020) and *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 86 Fed. Reg. 8020 (Feb. 3, 2021)—exceed the agency's statutory authority provided in Section 361 of the Public Health Service Act, 42 U.S.C. § 264(a), and the regulation at 42 C.F.R. § 70.2 promulgated pursuant to the statute, and are, therefore, invalid." *Skyworks, Ltd. v. Centers for Disease Control & Prevention*, No. 5:20-CV-2407, --- F.Supp.3d ----, 2021 WL 911720, at *13 (N.D. Ohio Mar. 10, 2021).

33.    Just days later the U.S. District Court for the Western District of Tennessee likewise held that the "[Halt] Order is *ultra vires* and unenforceable in the Western District of Tennessee." *Tiger Lily, LLC, et al. v. HUD, et al.*, No. 2:20-cv-2692, --- F.Supp.3d ----, 2021 WL 1171887, at *10 (W.D. Tenn. Mar. 15, 2021).

34.    CDC appealed the *Tiger Lily* decision and sought a stay of the injunction pending appeal.  In a published, precedential opinion issued on March 29, 2021, the U.S. Court of Appeals for the Sixth Circuit denied a stay after holding that Congress did *not* "grant the CDC the power it claims" underlying the Halt Order. *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522 (6th Cir. 2021).  The Sixth Circuit said, "CDC points to 42 U.S.C. § 264 as the sole statutory basis for the order's extension [ b]ut the terms of that statute cannot support the broad power that the CDC seeks to exert." *Id*.

10

35.     Meanwhile, the U.S. District Court for the Eastern District of Texas granted a declaratory judgment against the Halt Order to plaintiffs challenging it as beyond the Federal Government's constitutional power under the Commerce Clause. *Terkel et al., v. Centers for Disease Control, et al.,* --- F.Supp.3d ----, 2021 WL 74877 (E.D. Texas, February 25, 2021) *appeal pending* No. 21-40137 (5th Cir.). There is no stay on that judgment.

36.     Undeterred, and perhaps emboldened by its fellow agency's rejection, on April 22, 2021, Defendant CFPB issued an Interim Final Rule entitled, *Debt Collection Practices in Connection With the Global COVID-19 Pandemic (Regulation F)*, 86 Fed. Reg. 21163.  The CFPB Rule becomes effective on May 3, 2021, without public comment. *CFPB Rule*, 86 Fed. Reg. at 21163.

37.     The CFPB Rule extends the Halt Order and imposes new obligations on any person seeking to collect unpaid rent through the eviction process in any jurisdiction in which the Halt Order purportedly applies. *Id*.  The CFPB Rule requires any person seeking to collect a debt for back rent, including "attorneys who engage in eviction proceedings on behalf of landlords or residential property owners to collect unpaid residential [rent]," to make certain affirmative written disclosures to any tenants prior to filing eviction proceedings in state courts. *Id*. at 21165, 21169.

11

38.     According to CFPB, the failure to make such disclosures would violate the

Fair Debt Collection Practices Act, which would subject a housing provider or

their agent to private damages or regulatory enforcement. *See id.*

39.     Specifically, the CFPB Rule adds several provisions to Regulation F (12

C.F.R. § 1006 *et seq.*). *Id*. at 21180.  In new Section 1006.9(c) CFPB prohibits any

property owner or other person seeking to collect owed rent from:

> (1) Fil[ing] an eviction action for non-payment of rent against a
> consumer to whom the CDC Order reasonably might apply without
> disclosing to that consumer clearly and conspicuously in writing, on
> the date that the debt collector provides the consumer with an eviction
> notice or, if no eviction notice is required by applicable law, on the
> date that the eviction action is filed, that the consumer may be eligible
> for temporary protection from eviction under the CDC Order; or
>
> (2) Falsely represent[ing] or imply[ing] to a consumer that the
> consumer is ineligible for temporary protection from eviction under
> the CDC Order.

*Id*. at 21180.

40.     The CFPB Rule further provides "official interpretations," which CFPB

purports to be binding on regulated parties. *Id*.  Under these interpretations, a

"consumer to whom the CDC Order reasonably might apply is a consumer who

reasonably might be eligible to be a covered person as defined in the CDC Order."

*Id*.

41.     Strangely, however, CFPB insists that "A debt collector does not violate

FDCPA sections 807 (15 U.S.C. 1692e) or 808 (15 U.S.C. 1692f) merely because

12

the debt collector provides the disclosure to consumers as described in this comment 9(c)(1)-2 even if the consumer is not reasonably eligible to be a covered person." *Id*.

42.     CFPB further says, "A debt collector does not violate FDCPA sections 807 (15 U.S.C. 1692e) or 808 (15 U.S.C. 1692f) merely because the debt collector provides the sample language in this comment 9(c)(1)-5.i to a consumer in a jurisdiction in which the CDC Order does not apply." *Id*.  In other words, while CFPB *requires* the disclosure that a renter "may be eligible for temporary protection from eviction under the CDC Order," the agency does not consider it misleading if the housing provider is *aware* that the Order is inapplicable. *See id.*

43.     Conspicuously absent in the CFPB Rule, however, is any mention of the fact that the CDC Order was set aside in *Skyworks*, 2021 WL 911720, at *13, much less that the Sixth Circuit held that the CDC Order was legally invalid in the Sixth Circuit. *See Tiger Lily*, 992 F.3d at 522.  Nor does it note that there is a declaration by a federal court that has not been stayed that the CDC Order is wholly unlawful. *See Terkel*, 2021 WL 74877.

44.     Plaintiff PMC seeks on a routine basis to collect rent in arrears and to evict tenants when warranted as part of its business and rights under Tennessee law.  At present, some of PMC's tenants owe unpaid rent and are eligible for eviction for unpaid rent under Tennessee law.  As of the effective date of CFPB's Rule,

13

however, PMC will be required to make inaccurate disclosures to those tenants concerning the possibility of protection under the Eviction Moratorium, even though the Eviction Moratorium has been repeatedly held unlawful.

45.    Plaintiff Gordon Schoeffler, on behalf of his clients, seeks to collect rent and seek eviction when warranted under Louisiana law. At present, some of his client's tenants owe unpaid rent and are eligible for eviction for unpaid rent under Louisiana law. As of the effective date of CFPB's Rule, however, he will be required to make inaccurate disclosures to those tenants concerning the possibility of protection under the Halt Order, even though the Halt Order has been repeatedly held unlawful, and he believes it to be unlawful.  In addition, these forced, untrue, disclosures tend to be ones against his clients' interests.

46.    Under the Louisiana rules of Professional Conduct, a lawyer has a duty of candor to the tribunal (Rule 3.3) but also to third parties.  Rule 4.1 of the Rules of Professional Responsibility of Louisiana states, "In the course of representing a client a lawyer shall not knowingly … make a false statement of material fact or law to a third person[.]"

47.    Many of the more than 5,000 of Plaintiff NARPM's members routinely seek to collect rent in arrears and to evict tenants when warranted as part of their business and rights under the laws of their respective states.  At present, some of the tenants of NARPM members owe unpaid rent and are eligible for eviction for

unpaid rent under state law.  As of the effective date of CFPB's Rule, however, NARPM's members will be required to make inaccurate disclosures to those tenants concerning the possibility of protection under the Eviction Moratorium, even though the Eviction Moratorium has been repeatedly held unlawful.

48.     If the CFPB Rule becomes effective as scheduled, Plaintiffs will be forced to provide inaccurate and potentially misleading written disclosures to their tenants informing them, falsely, that the tenants "may be eligible for temporary protection from eviction under the CDC Order."  If Plaintiffs refuse, they will be subject to both private and regulatory liability under the FDCPA.  Plaintiffs will also be forbidden from informing their tenants the truth—that the Halt Order is legally invalid and unenforceable. *See CFPB Rule* 86 Fed. Reg. at 21180 ("During the effective period of the CDC Order, a debt collector collecting a debt in any jurisdiction in which the CDC Order applies must not … represent or imply to a consumer that the consumer is ineligible for temporary protection from eviction under the CDC Order.").

15

# COUNT I: UNLAWFUL AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)— CFPB EXCEEDED ITS STATUTORY AND REGULATORY AUTHORITY BY ISSUING THE CFPB ORDER BECAUSE IT REQUIRES DISCLOSURES THAT ARE NOT REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT

43.     Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

44.     Under the Administrative Procedure Act, this Court is required to hold unlawful and set aside agency action, findings, and conclusions that it finds to be contrary to constitutional right or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. *See* 5 U.S.C. § 706(2). This Court must also "hold unlawful and set aside agency action" that violates a statutory directive because it is "not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

45.     The Fair Debt Collection Practices Act generally prohibits debt collectors from using "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

46.     In its Rule CFPB claims regulatory authority over how to define what constitutes a "false, deceptive, or misleading representation or means in connection with the collection of any debt" pursuant to 15 U.S.C. § 1692(d) ("the Bureau may prescribe rules with respect to the collection of debts by debt collectors"). *See* CFPB Rule, 86 Fed. Reg. at 21168-69.

16

47.     It nearly goes without saying that CFPB cannot proscribe conduct that, in fact, is not "false, deceptive, or misleading[.]" *See City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007) ("Agency action is 'not in accordance with the law' when it is in conflict with the language of the statute relied upon by the agency.") (quoting 5 U.S.C. § 706(2)(A)). Indeed, it is a bedrock principle of administrative law that "[f]irst, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

48.     The FDCPA uses "an objective test" to determine if conduct falls under its prohibitions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). And the Sixth Circuit has cautioned that statements are not "false, deceptive, or misleading" if they are *true*. *Id*. at 331; *see also Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 594 (6th Cir. 2009) (debt collector did not violate FDCPA with unclear language because it "did not go so far as to falsely describe [the] debt").

43.     Here, CFPB's rule seeks to extend and validate agency action that has already been set aside as being unlawful.  It also requires one party to a litigation to assert a position it does not believe to the opposing side.  As a result, its dictates about what disclosures are necessary under the FDCPA are simply incorrect. The

17

CFPB Rule therefore prohibits disclosures that are *true*, which conflicts with the statutory text of the FDCPA.

44.     CFPB's entire premise is that housing providers' (and others) seeking to collect back rent without first providing disclosures about the Halt Order is inherently deceptive because "many consumers are unaware that they may be temporarily protected from eviction for nonpayment of rent under the CDC Order[.]" *CFPB Rule*, 86 Fed. Reg. 21170. But that premise assumes, of course, that the Halt Order is itself valid, and that it otherwise applies to the tenants. Indeed, CFPB even acknowledges this, saying, "If a particular consumer would not actually qualify for temporary eviction protection under the CDC Order, then there is likely no deception or unfairness to cure, no consumer benefit from receiving a disclosure about the Order, and no reason to cause debt collectors to incur the expense of providing such a disclosure." *Id*. at 21170.

45.     But the Sixth Circuit has already held, in a published decision, that CDC lacked the statutory authority to issue the Eviction Moratorium, and thus CFPB's premise is simply incorrect. *See Tiger Lily*, 992 F.3d at 522-23.

46.     Because the Halt Order has already been held invalid, it can hardly be said that a housing provider engages in "false, deceptive, or misleading" conduct by not informing a tenant to seek protection under the *unlawful* Halt Order. Indeed, a tenant *cannot* seek refuge from the lawless Halt Order, and thus a housing provider

18

clearly does not violate the FDCPA by refusing to utter CFPB's proposed disclaimer. *See Harvey*, 453 F.3d at 331.

47.    In fact, the disclosures *required* by the Rule are themselves deceptive and misleading. CFPB insists that a housing provider should provide a disclosure about the Halt Order "even if the consumer is not reasonably eligible to be a covered person" or even if "the debt collector provides the sample language in this comment … to a consumer in a jurisdiction in which the CDC Order does not apply." *CFPB Rule*, 86 Fed. Reg. at 21180. But such disclosures would be clearly *false*. Indeed, even though CFPB fails to recognize as much, the Halt Order does not apply within the Sixth Circuit, and it would be misleading for a housing provider to suggest otherwise to a tenant. *See Tiger Lily*, 992 F.3d at 522; *Skyworks*, 2021 WL 911720, at *13.

48.    CFPB's Rule conflicts with the plain language of the FDCPA and is thus void under Section 706(2)(A) of the APA. *See City of Cleveland*, 508 F.3d at 838. CFPB has tried to force *untrue* disclosures through a contorted definition of false, deceptive and misleading conduct. But the only statements actually barred by the statutory language seem to be CFPB's own required disclaimers.

49.    Agencies have no inherent power to make law. *See Loving v. United States*, 517 U.S. 748, 758 (1996) ("[T]he lawmaking function belongs to Congress … and may not be conveyed to another branch or entity."). This limitation is a

19

constitutional barrier to an exercise of legislative power by the executive branch. Agencies have "no power to act … unless and until Congress confers power upon [them]." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

50. Nothing in the relevant statutes or regulations purports to give CFPB the power or authority to require disclosures concerning the CDC Halt Order.

51. The CFPB Rule was issued in excess of any statutory authority actually provided and is therefore invalid.

**WHEREFORE**, Plaintiffs demand declaratory judgment against CFPB setting aside and invalidating the CFPB Rule; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CFPB Rule or any order like it requiring anyone seeking back rent in a rent or eviction proceeding to provide any information about the CDC Order, and any other relief that may be appropriate.

## COUNT II: THE CFPB VIOLATED THE APA BECAUSE ITS RULE IS IN VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION AND REQUIRES FALSE SPEECH

52.    Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

53.    Apart from violating the APA, CFPB's Rule violates core limits on the type of speech an agency can compel from private persons. Simply, the government has no interest in compelling false speech. But, as discussed, this is precisely what CFPB's rule requires—false statements to tenants who have not paid their rent.

54.    The First Amendment provides, in pertinent part, that "Congress shall make no law ... abridging the freedom of speech[.]" U.S. Const. amend. I. "This constitutional guarantee, the Supreme Court has held, applies not only when government restricts speech, but also when it compels speech." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) (citing *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (*NIFLA*)).

55.    "When laws, whether restrictive or compulsive, 'target speech based on its communicative content,' they generally 'are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" *Id*. (quoting *NIFLA*, 138 S.Ct. at 2371).

56.    "Heightened scrutiny generally applies to content-based regulation of any speaker, including a physician or other professional." *Id*. at 426. Indeed, "[s]peech

21

is not unprotected merely because it is uttered by 'professionals.'" *NIFLA*, 138 S.Ct. at 2371-72.

*57.* Under strict scrutiny, "precision must be the touchstone" of any regulation of speech. *NIFLA*, 138 S.Ct. at 2376 (cleaned up). Compelled speech must be shown, with "evidence," to actually address the purported government interest and must be narrowly tailored so that it is neither "underinclusive" in its reach to target harms nor overbroad in its application to protected speech that is unrelated to the harms. *See id.* If the government could reach its goals "without burdening a speaker with unwanted speech" it fails strict scrutiny. *See id.*

58. CFPB's Rule fails First Amendment scrutiny. Most importantly, CFPB's Rule does nothing to accomplish its stated purpose. CFPB insists that the Rule is necessary to abate "consumer harms associated with evictions during the COVID-19 pandemic," because "consumers may be unaware of their eligibility for temporary protection under the CDC Order." *CFPB Rule*, 86 Fed. Reg. at 21168. But the CDC Order is invalid, and it cannot lawfully prevent any eviction under state law. *See Tiger Lily*, 992 F.3d at 522; *Skyworks*, 2021 WL 911720, at \*13. The CFPB Rule cannot therefore have any legitimate impact on evictions, nor can it prevent any purported downstream harms to consumers.

59. Of course, a rule mandating *false* disclosure about an invalid eviction moratorium does have significant adverse impacts on housing providers and

22

tenants themselves, because it provides false assurances to tenants that they simply do not have to meet their rent obligations. By mandating disclosures in circumstances where CFPB agrees the Halt Order "does not apply," moreover, CFPB has tipped its hand that it sees no problem with misinforming tenants and suggesting that they have protections that do not exist. *See CFPB Rule*, 86 Fed. Reg. at 21180. But such misleading disclosure encourages recalcitrant tenants to resist lawful rent. It requires Plaintiff Schoeffler to inform the third party of something he believes to be false and further that injures his own clients because it multiplies litigation in both number and length. It requires Plaintiffs PMC and the members of NARPM to falsely inform tenants who are in arrears that they cannot be evicted for nonpayment of rent.

60. Such an obligation to provide misinformation is wrong in itself, and it makes it much more difficult for housing providers to access court proceedings guaranteed by the laws of their states. The result is that CFPB's Rule creates significant uncertainty and disruption for all parties, while mandating false disclosures.

61. The Rule is invalid. The government can only mandate "truthful, non-misleading, and relevant" disclosures. *See EMW Women's Surgical Ctr.*, P.S.C., 920 F.3d at 429. The Rule is none of these things. It instead mandates false disclosures about the CDC Order, encourages misleading disclosures whenever the

Halt Order "does not apply," and creates irrelevant burdens on housing providers that frustrate their rights to access their own property when a tenant has simply refused to pay rent.

**WHEREFORE**, Plaintiffs demand declaratory judgment against CFPB setting aside and invalidating the CFPB Rule; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CFPB Rule or any order like it requiring anyone seeking back rent in a rent or eviction proceeding to provide any information about the CDC Order, and any other relief that may be appropriate.

May 3, 2021

Respectfully,

*/s/ Ben M. Rose*
**Ben M. Rose (#21254)**
RoseFirm, PLLC
Post Office Box 1108
Brentwood, Tennessee 37024
615-942-8295
ben@rosefirm.com

*/s/ John J. Vecchione*
**John J. Vecchione**
(*pro hac vice* forth coming)
Senior Litigation Counsel
**Caleb Kruckenberg**
(*pro hac vice* forthcoming)
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036

24

John.Vecchione@ncla.legal
Caleb.Kruckenberg@ncla.legal
(202) 869-5210
*Counsel for Plaintiffs*

25