IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THE PROPERTY MANAGEMENT CONNECTION, LLC, ET AL., | : : : : : | |
| | : | CIVIL ACTION NO.: 3:21-cv-00359 |
| Plaintiffs, | : : : | |
| v. | : : | |
| ACTING DIRECTOR UEJIO, CONSUMER FINANCIAL PROTECTION BUREAU, ET AL. | : : : : | |
| Defendants. | : | |

## PLAINTIFFS' MOTION FOR TEMPORARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs The Property Management Connection, LLC (PMC), Gordon J. Schoeffler, and the National Association of Residential Property Managers (NARPM) move for a temporary restraining order pending trial against Defendants Acting Director Dave Uejio, Consumer Financial Protection Bureau, and the United States of America (collectively CFPB) prohibiting Defendants from implementing their interim final rule, *Debt Collection Practices in Connection With the Global COVID-19 Pandemic (Regulation F)*, 86 Fed. Reg. 21163 (April 22, 2021).

In support of their motion, Plaintiffs say as follows:

1. On September 1, 2020, the U.S. Centers for Disease Control and Prevention issued an order entitled, *Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19*. The CDC Health Order became effective upon publication in the Federal Register, which occurred on September 4, 2020. 85 Fed. Reg. 55292 (Sept. 4, 2020).

1

2. The Halt Order said, "Under this Order, a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." *Id*. The Order was not effective so long as a local jurisdiction applied similar eviction restrictions. *Id*.

3. The Halt Order claimed to have been issued pursuant to Section 361 of the Public Health Service Act, 42 U.S.C. § 264, and 42 C.F.R. § 70.2. Id. at 55297. It claimed criminal enforcement authority under 18 U.S.C. §§ 3559, 3571, 42 U.S.C. §§ 243, 268, 271, and 42 C.F.R. § 70.18. Id. at 55296.

4. The Halt Order was effective upon publication until December 31, 2020, "unless extended." *Id*. at 55297.

5. The Halt Order was subsequently extended several times, and, on April 1, 2021, CDC extended it through June 30, 2021, unless extended further. *See Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19* (Apr. 1, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/more/pdf/CDC-Eviction-Moratorium-03292021.pdf.

6. The Halt Order was immediately challenged in numerous courts across the country. In Georgia, housing providers immediately sought to enjoin the Halt Order. *See Brown v. Azar*, No. 1:20-CV-03702-JPB, --- F.Supp.3d ----, 2020 WL 6364310, at *23 (N.D. Ga. Oct. 29, 2020). The District Court for the Northern District of Georgia declined to issue a preliminary injunction, but that matter is currently pending before the Eleventh Circuit on an expedited basis. *See Brown v. Azar*, Case No. 20-14210 (11th Cir.).

2

7. Within the Sixth Circuit two challenges were filed against the Halt Order, both resulting in decisions invalidating CDC's action. First, on March 10, 2021, the District Court for the Northern District of Ohio "determine[d] that the Centers for Disease Control and Prevention's orders—*Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55,292 (Sept. 4, 2020) and *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 86 Fed. Reg. 8020 (Feb. 3, 2021)—exceed the agency's statutory authority provided in Section 361 of the Public Health Service Act, 42 U.S.C. § 264(a), and the regulation at 42 C.F.R. § 70.2 promulgated pursuant to the statute, and are, therefore, invalid." *Skyworks, Ltd. v. Centers for Disease Control & Prevention*, No. 5:20-CV-2407, --- F.Supp.3d ----, 2021 WL 911720, at *13 (N.D. Ohio Mar. 10, 2021).

8. Just days later the District Court for the Western District of Tennessee likewise held that the "Halt Order is *ultra vires* and unenforceable in the Western District of Tennessee." *Tiger Lily, LLC, et al. v. HUD, et al.*, No. 2:20-cv-2692, --- F.Supp.3d ----, 2021 WL 1171887, at *10 (W.D. Tenn. Mar. 15, 2021).

9. CDC appealed the *Tiger Lily* decision and sought a stay of the injunction pending appeal. In a published, precedential opinion issued on March 29, 2021, the Sixth Circuit denied a stay after holding that Congress did *not* "grant the CDC the power it claims" underlying the Halt Order. *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522 (6th Cir. 2021). The Sixth Circuit said, "CDC points to 42 U.S.C. § 264 as the sole statutory basis for the order's extension [b]ut the terms of that statute cannot support the broad power that the CDC seeks to exert." *Id*.

10. The CDC also suffered a loss in Texas where, in a case that has been appealed but not stayed, a district court declared its action unlawful as outside the power under the Commerce Clause to the U.S. Constitution. *Terkel et. al., v. Centers for Disease Control, et al.,* --- F.Supp.3d ----, 2021 WL 74877 (E.D. Texas, February 25, 2021) *appeal pending* No. 21-40137 (5th Cir.).

11. Undeterred, on April 22, 2021, Defendant CFPB issued an interim final rule titled, *Debt Collection Practices in Connection With the Global COVID-19 Pandemic (Regulation F)*, 86 Fed. Reg. 21163. The CFPB Rule becomes effective on May 3, 2021, without public comment. *CFPB Rule*, 86 Fed. Reg. at 21163.

12. The CFPB Rule extends the Halt Order and imposes new obligations on any person seeking to collect unpaid rent through the eviction process in any jurisdiction in which the CDC Order purportedly applies—even in jurisdiction like the Sixth Circuit where the Halt Order has been held unlawful. *Id*. The CFPB Rule requires any person seeking to collect a debt for back rent, including "attorneys who engage in eviction proceedings on behalf of landlords or residential property owners to collect unpaid residential rent," to make certain affirmative written disclosures to any tenants prior to filing eviction proceedings in state courts. *Id*. at 21165, 21169. According to CFPB, the failure to make such disclosures would violate the Fair Debt Collection Practices Act, which would subject a housing provider or the provider's agent to private damages or regulatory enforcement. *See id.*

13. Specifically, the CFPB Rule adds several provisions to Regulation F (12 C.F.R. § 1006 *et seq.*). *Id*. at 21180. In new Section 1006.9(c) CFPB prohibits any property owner or other person seeking to collect owed rent from:

> (1) Fil[ing] an eviction action for non-payment of rent against a consumer
> to whom the CDC Order reasonably might apply without disclosing to that

4

consumer clearly and conspicuously in writing, on the date that the debt collector provides the consumer with an eviction notice or, if no eviction notice is required by applicable law, on the date that the eviction action is filed, that the consumer may be eligible for temporary protection from eviction under the CDC Order; or

(2) Falsely represent[ing] or imply[ing] to a consumer that the consumer is ineligible for temporary protection from eviction under the CDC Order.

*Id*. at 21180.

14. Conspicuously absent in the CFPB Rule, however, is any mention of the fact that the CDC Order was set aside in *Skyworks*, 2021 WL 911720, at *13, much less that the Sixth Circuit held that the CDC Order was legally invalid in the Sixth Circuit. *See Tiger Lily.*, 992 F.3d at 522.

15. Plaintiff PMC is a property management company in Nashville, TN, where it manages over 400 rental properties. Unfortunately, at the time of this filing, more than one of PMC's tenants have stopped paying rent and are eligible for eviction for nonpayment of rent under Tennessee law. PMC has initiated eviction proceeding for unpaid rent for two of its tenants and has served eviction notices to those tenants. Even though the Sixth Circuit has held that the Halt Order is invalid, as of the effective date of the CFPB Rule PMC will be required to make disclosures in writing to its tenants, including those who face eviction for nonpayment of rent, that they may be eligible for protection under the Halt Order, even though PMC knows that such a representation is false.

16. Plaintiff Schoeffler is in the same position. Mr. Schoeffler is an attorney admitted to the Bar of Louisiana who regularly seeks to collect back rent from tenants on behalf of clients who are property owners. Mr. Schoeffler has a large number of clients who are currently pursuing state eviction proceedings for unpaid rent, and he has served some of those adverse parties with notices of eviction suits. Under the Louisiana rules of Professional

5

Conduct a lawyer has a duty of candor to the tribunal (Rule 3.3) but also to third parties. Rule 4.1 of the Rules of Professional Responsibility of Louisiana states, "In the course of representing a client a lawyer shall not knowingly … make a false statement of material fact or law to a third person[.]" Even though Mr. Schoeffler knows that such disclosures would be untruthful, and would likely violate the Louisiana Rules of Professional Conduct governing attorneys concerning untruthful statements to third parties, under the CFPB Rule he would be required to provide written notice to those adverse parties that they may be eligible for protection under the Halt Order.

17. Plaintiff NARPM is a trade association comprised of more than 5,000 members who are residential property managers. Many of NARPM's members, including significant numbers of members who reside within the geographic confines of the U.S. Court of Appeals for the Sixth Circuit, manage properties with tenants who are eligible for eviction for unpaid rent under state law. As of the effective date of the CFPB Rule those members will be forced to choose between following the Sixth Circuit's pronouncement in *Tiger Lily* that the Halt Order is invalid, or falsely informing these tenants, in writing, that they may be eligible for the Halt Order's protection.

18. If the CFPB Rule becomes effective as scheduled Plaintiffs will be forced to provide inaccurate and potentially misleading written disclosures to their tenants informing them, falsely, that the tenants "may be eligible for temporary protection from eviction under the CDC Order." If Plaintiffs refuse, they will be subject to both private and regulatory liability under the FDCPA. Plaintiffs will also be forbidden from informing their tenants the truth— that the Halt Order is legally invalid and unenforceable. *See CFPB Rule* 86 Fed. Reg. at 21180 ("During the effective period of the CDC Order, a debt collector collecting a debt

6

in any jurisdiction in which the CDC Order applies must not … "represent or imply to a consumer that the consumer is ineligible for temporary protection from eviction under the CDC Order.").

19. Plaintiffs have challenged the CFPB Rule as being not in accordance with law under the Administrative Procedure Act and violating the First Amendment to the U.S. Constitution. They are likely to succeed on both challenges.

20. The CFPB Rule conflicts with the text of the Fair Debt Collection Practices Act, which it purports to interpret, and thus must be set aside under the APA. *See City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007) ("Agency action is 'not in accordance with the law' when it is in conflict with the language of the statute relied upon by the agency.") (quoting 5 U.S.C. § 706(2)(A)). The CFPB Rule says that a "false, deceptive, or misleading representation" under the FDCPA requires an affirmative disclosure that a tenant may be protected by the Halt Order. *CFPB Rule*, 86 Fed. Reg. 21170. However, the FDCPA uses "an objective test" to determine if conduct falls under its prohibitions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). And the Sixth Circuit has cautioned that statements are not "false, deceptive, or misleading" if they are *true*. *Id*. at 331; *see also Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 594 (6th Cir. 2009) (debt collector did not violate FDCPA with unclear language because it "did not go so far as to falsely describe [the] debt"). As the Sixth Circuit has already held, in a published decision, that CDC lacked the statutory authority to issue the Halt Order, it cannot be false, deceptive or misleading for a property manager to refuse to issue CFPB's required notice. *See Tiger Lily*, 992 F.3d at 522-23. Plaintiffs are likely to succeed on their claim that the CFPB Rule conflicts with the FDCPA.

7

21. Plaintiffs are also likely to succeed on their claim that the CFPB Rule violates the First Amendment. The First Amendment "applies not only when government restricts speech, but also when it compels speech." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) (citing *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018)). "When laws, whether restrictive or compulsive, 'target speech based on its communicative content,' they generally 'are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" *Id*. But CFPB's Rule fails First Amendment scrutiny because it mandates false disclosures about the Halt Order, even though the Halt Order cannot lawfully prevent any eviction under state law. *See Tiger Lily*, 992 F.3d at 522; *Skyworks*, 2021 WL 911720, at *13.

22. Because Plaintiffs can establish a likelihood of success on their First Amendment claim the remaining factors warrant a restraining order. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor."). The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). "Likewise, the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to prevent the violation of a party's constitutional rights." *Id*. Because the CFPB Rule likely violates Plaintiffs' First Amendment freedoms, the balance of equities warrants a restraining order.

23. Plaintiffs have attested that the facts set out in the Complaint are accurate and that they will be forced to make inaccurate disclosures after the effective date of the CFPB Rule. *See* Decl. of Trevor Garrett, ¶¶ 1-7 (Apr. 29, 2021); Decl. of Gail S. Phillips, ¶¶ 1-6 (Apr. 30, 2021); Decl. of Gordon J. Schoeffler, ¶¶ 1-7 (May 3, 2021).

24. Undersigned counsel has attempted to notify counsel for Defendants of the pendency of this motion. Undersigned counsel has arranged personal service of this lawsuit, this motion and its corresponding memorandum of law on the service address for the United States Attorney for the Middle District of Tennessee. Undersigned counsel has also alerted the U.S. Attorney's Office by telephone of this motion.

25. Because the CFPB Rule was published on April 22, 2021, with an effective date of May 3, 2021, Plaintiffs were not able to locate counsel and brief and file their challenge to the Rule before its effective date. Undersigned counsel filed this motion as soon as possible following the promulgation of the CFPB Rule and has made every effort to alert Defendants to the pendency of this case and the request for a temporary retraining order.

WHEREFORE for the reasons set out above, the Court should enter a temporary restraining order against the CFPB Rule.

May 3, 2021

                Respectfully,

                */s/ Ben M. Rose*
                Ben M. Rose (#21254)
                RoseFirm, PLLC
                Post Office Box 1108
                Brentwood, Tennessee 37024
                615-942-8295
                ben@rosefirm.com

                */s/ Caleb Kruckenberg*
                **Caleb Kruckenberg**

Litigation Counsel
**John Vecchione**
Senior Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5210
*(Pro Hac Vice* Application Pending)
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

> */s/ Ben M. Rose*
> Ben M. Rose
> *Counsel for Plaintiffs*