IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THE PROPERTY MANAGEMENT CONNECTION, LLC, ET AL., | : : : : : | CIVIL ACTION NO.: 3:21-cv-00359 |
| Plaintiffs, | : : | |
| v. | : : | |
| ACTING DIRECTOR UEJIO, CONSUMER FINANCIAL PROTECTION BUREAU, ET AL. | : : : : | |
| Defendants. | : : | |

## **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs The Property Management Connection, LLC (PMC), Gordon J. Schoeffler, and the National Association of Residential Property Managers (NARPM) move for a temporary restraining order pending trial against Defendants Acting Director Dave Uejio, Consumer Financial Protection Bureau, and the United States of America (collectively CFPB) prohibiting Defendants from implementing their interim final rule, *Debt Collection Practices in Connection With the Global COVID-19 Pandemic (Regulation F)*, 86 Fed. Reg. 21163 (April 22, 2021).

Americans are expected to follow the law. So are government actors. But what happens when a government agency simply refuses to acknowledge the law, and ignores the orders of a federal court? Must ordinary people pick sides?

Unfortunately, these are not hypothetical questions. After the Sixth Circuit Court of Appeals held, in a precedential opinion, that the U.S. Centers for Disease Control and Prevention's

1

(CDC) nationwide eviction moratorium was unlawful, Defendants acted as though the Court's holding had no meaning. Instead, CFPB issued a new rule, effective a mere two weeks after it was noticed and without any prior public comment period, mandating, even within the Sixth Circuit, that any person who sought to collect unpaid rent from tenants had to falsely inform the tenants that they could be protected from eviction by the now-invalid Halt Order. If these property managers chose instead to follow the Sixth Circuit's edict, CFPB declared that they would face civil liability to tenants and even enforcement actions from the agency. Plaintiffs should never have been put in this position, because CFPB should have respected the rule of law. This Court must set things aright and temporarily restrain CFPB from enforcing its facially invalid rule.

**I. FACTS**:

On September 1, 2020, the U.S. Centers for Disease Control and Prevention issued an order entitled, *Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19*. The CDC Health Order became effective upon publication in the Federal Register, which occurred on September 4, 2020. 85 Fed. Reg. 55292 (Sept. 4, 2020).

The Halt Order said, "Under this Order, a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." *Id*. The Order was not effective so long as a local jurisdiction applied similar eviction restrictions. *Id*.

The Halt Order said, "'Evict' and 'Eviction' means any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property. This does not include foreclosure on a home mortgage." *Id*. at 55293. The Halt Order also said, "[A] person violating

2

this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death or one year in jail, or both, or a fine of no more than $250,000 if the violation results in a death or one year in jail, or both[.]" *Id*. at 55296.

It also applied to "covered persons" who are tenants "of a residential property" who attest that they (1) have "used best efforts to obtain all available government assistance for rent or housing;" (2) "either (i) expects to earn no more than $99,000 in annual income for Calendar Year 2020 … (ii) w[ere] not required to report any income in 2019 to the U.S. Internal Revenue Service, or (iii) received an Economic Impact Payment [under] … the CARES Act;" (3) are "unable to pay the full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses;" (4) they are "using best efforts to make timely partial payments that are as close to the full payment as the individual's circumstances may permit, taking into account other nondiscretionary expenses;" and (5) "eviction would likely render the individual homeless—or force the individual to move into and live in close quarters in a new congregate or shared living setting—because the individual has no other available housing options." *Id*. at 55293.

The Halt Order claimed to have been issued pursuant to Section 361 of the Public Health Service Act, 42 U.S.C. § 264, and 42 C.F.R. § 70.2. Id. at 55297. It claimed criminal enforcement authority under 18 U.S.C. §§ 3559, 3571, 42 U.S.C. §§ 243, 268, 271, and 42 C.F.R. § 70.18. *Id*. at 55296.

The Halt Order was effective upon publication until December 31, 2020, "unless extended." *Id*. at 55297.

The Halt Order was subsequently extended several times, and, on April 1, 2021, CDC extended it through June 30, 2021, unless extended further. *See Temporary Halt in Residential*

*Evictions to Prevent Further Spread of COVID-19* (Apr. 1, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/more/pdf/CDC-Eviction-Moratorium-03292021.pdf.

The Halt Order was immediately challenged in numerous courts across the country. In Georgia, housing providers immediately sought to enjoin the Halt Order. *See Brown v. Azar*, No. 1:20-CV-03702-JPB, --- F.Supp.3d ----, 2020 WL 6364310, at *23 (N.D. Ga. Oct. 29, 2020). The District Court for the Northern District of Georgia declined to issue a preliminary injunction, but that matter is currently pending before the Eleventh Circuit on an expedited basis. *See Brown v. Azar*, Case No. 20-14210 (11th Cir.).

Within the Sixth Circuit two challenges were filed against the Halt Order, both resulting in decisions invalidating CDC's action. First, on March 10, 2021, the District Court for the Northern District of Ohio "determine[d] that the Centers for Disease Control and Prevention's orders— *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55,292 (Sept. 4, 2020) and *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 86 Fed. Reg. 8020 (Feb. 3, 2021)—exceed the agency's statutory authority provided in Section 361 of the Public Health Service Act, 42 U.S.C. § 264(a), and the regulation at 42 C.F.R. § 70.2 promulgated pursuant to the statute, and are, therefore, invalid." *Skyworks, Ltd. v. Centers for Disease Control & Prevention*, No. 5:20-CV-2407, --- F.Supp.3d ----, 2021 WL 911720, at *13 (N.D. Ohio Mar. 10, 2021).

Just days later the District Court for the Western District of Tennessee likewise held that the "Halt Order is *ultra vires* and unenforceable in the Western District of Tennessee." *Tiger Lily, LLC, et al. v. HUD, et al.*, No. 2:20-cv-2692, --- F.Supp.3d ----, 2021 WL 1171887, at *10 (W.D. Tenn. Mar. 15, 2021).

4

CDC appealed the *Tiger Lily* decision and sought a stay of the injunction pending appeal. In a published, precedential opinion issued on March 29, 2021, the Sixth Circuit denied a stay after holding that Congress did *not* "grant the CDC the power it claims" underlying the Halt Order. *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522 (6th Cir. 2021). The Sixth Circuit said, "CDC points to 42 U.S.C. § 264 as the sole statutory basis for the order's extension [b]ut the terms of that statute cannot support the broad power that the CDC seeks to exert." *Id*.

The CDC also suffered a loss in Texas where, in a case that has been appealed but not stayed, a district court declared its action unlawful as outside the power under the Commerce Clause to the U.S. Constitution. *Terkel et al., v. Centers for Disease Control, et al.,* --- F.Supp.3d ----, 2021 WL 74877 (E.D. Texas, February 25, 2021) *appeal pending* No. 21-40137 (5th Cir.).

Undeterred, on April 22, 2021, Defendant CFPB issued an interim final rule entitled, *Debt Collection Practices in Connection With the Global COVID-19 Pandemic (Regulation F)*, 86 Fed. Reg. 21163. The CFPB Rule becomes effective on May 3, 2021, without public comment. *CFPB Rule*, 86 Fed. Reg. at 21163.

The CFPB Rule extends the Halt Order and imposes new obligations on any person seeking to collect unpaid rent through the eviction process in any jurisdiction in which the CDC Order purportedly applies—even in jurisdictions like the Sixth Circuit where the CDC Order has been held unlawful. *Id*. The CFPB Rule requires any person seeking to collect a debt for back rent, including "attorneys who engage in eviction proceedings on behalf of landlords or residential property owners to collect unpaid residential [rent]," to make certain affirmative written disclosures to any tenants prior to filing eviction proceedings in state courts. *Id*. at 21165, 21169. According to CFPB, the failure to make such disclosures would violate the Fair Debt Collection

5

Practices Act, which would subject a housing provider or the provider's agent to private damages or regulatory enforcement. *See id.*

Specifically, the CFPB Rule adds several provisions to Regulation F (12 C.F.R. §§ 1006 *et seq.*). *Id*. at 21180. In new Section 1006.9(c) CFPB prohibits any property owner or other person seeking to collect owed rent from:

> (1) Fil[ing] an eviction action for non-payment of rent against a consumer to whom the CDC Order reasonably might apply without disclosing to that consumer clearly and conspicuously in writing, on the date that the debt collector provides the consumer with an eviction notice or, if no eviction notice is required by applicable law, on the date that the eviction action is filed, that the consumer may be eligible for temporary protection from eviction under the CDC Order; or

> (2) Falsely represent[ing] or imply[ing] to a consumer that the consumer is ineligible for temporary protection from eviction under the CDC Order.

*Id*. at 21180.

The CFPB Rule further provides "official interpretations," which CFPB purports to be binding on regulated parties. *Id*. Under these interpretations, a "consumer to whom the CDC Order reasonably might apply is a consumer who reasonably might be eligible to be a covered person as defined in the CDC Order." *Id*. Strangely, however, CFPB insists that "A debt collector does not violate FDCPA sections 807 (15 U.S.C. 1692e) or 808 (15 U.S.C. 1692f) merely because the debt collector provides the disclosure to consumers as described in this comment 9(c)(1)-2 even if the consumer is not reasonably eligible to be a covered person." *Id*. CFPB further says, "A debt collector does not violate FDCPA sections 807 (15 U.S.C. 1692e) or 808 (15 U.S.C. 1692f) merely because the debt collector provides the sample language in this comment 9(c)(1)-5.i to a consumer in a jurisdiction in which the CDC Order does not apply." *Id*. In other words, while CFPB *requires* the disclosure that a renter "may be eligible for temporary protection from eviction under the CDC Order," the agency does not consider it misleading if the housing provider is *aware* that the Order

6

is inapplicable. *See id.* Put simply, CFPB says that Plaintiffs will engage in *fraudulent* collection practices to refuse to misleading direct tenants to an invalidated moratorium, but Plaintiffs will not engage in fraud if they falsely assure tenants that the moratorium applies.

Conspicuously absent in the CFPB Rule, however, is any mention of the fact that the CDC Order was set aside in *Skyworks*, 2021 WL 911720, at *13, much less that the Sixth Circuit held that the CDC Order was legally invalid in the Sixth Circuit. *See Tiger Lily.*, 992 F.3d at 522.

Plaintiff PMC is a property management company in Nashville, TN, where it manages over 400 rental properties. Unfortunately, at the time of this filing, more than one of PMC's tenants have stopped paying rent and are eligible for eviction for nonpayment of rent under Tennessee law. PMC has initiated eviction proceedings for unpaid rent for two of its tenants and has served eviction notices to those tenants. Even though the Sixth Circuit has held that the Halt Order is invalid, as of the effective date of the CFPB Rule, PMC will be required to make disclosures in writing to its tenants, including those who face eviction for nonpayment of rent, that they may be eligible for protection under the Halt Order, even though PMC knows that such a representation is false.

Plaintiff Schoeffler is in the same position. Mr. Schoeffler is an attorney admitted to the Bar of Louisiana who regularly seeks to collect back rent from tenants on behalf of clients who are property owners. Mr. Schoeffler has a large number of clients who are currently pursuing state eviction proceedings for unpaid rent, and he has served some of those adverse parties with notices of eviction suits. Under the Louisiana rules of Professional Conduct, a lawyer has a duty of candor to the tribunal (Rule 3.3) but also to third parties. Rule 4.1 of the Rules of Professional Responsibility of Louisiana states, "In the course of representing a client a lawyer shall not knowingly … make a false statement of material fact or law to a third person[.]" Even though Mr.

Schoeffler knows that such disclosures would be untruthful, and would likely violate the Louisiana Rules of Professional Conduct governing attorneys concerning untruthful statements to third parties, under the CFPB Rule he would be required to provide written notice to those adverse parties that they may be eligible for protection under the Halt Order.

Plaintiff NARPM is a trade association comprised of more than 5,000 members who are residential property managers. Many of NARPM's members, including significant numbers of members who reside within the geographic confines of the U.S. Court of Appeals for the Sixth Circuit, manage properties with tenants who are eligible for eviction for unpaid rent under state law. As of the effective date of the CFPB Rule, those members will be forced to choose between following the Sixth Circuit's pronouncement in *Tiger Lily* that the Halt Order is invalid, or falsely informing these tenants, in writing, that they may be eligible for the Halt Order's protection.

If the CFPB Rule becomes effective as scheduled, Plaintiffs will be forced to provide inaccurate and potentially misleading written disclosures to their tenants informing them, falsely, that the tenants "may be eligible for temporary protection from eviction under the CDC Order." If Plaintiffs refuse, they will be subject to both private and regulatory liability under the FDCPA. Plaintiffs will also be forbidden from informing their tenants the truth—that the Halt Order is legally invalid and unenforceable. *See CFPB Rule* 86 Fed. Reg. at 21180 ("During the effective period of the CDC Order, a debt collector collecting a debt in any jurisdiction in which the CDC Order applies must not … "represent or imply to a consumer that the consumer is ineligible for temporary protection from eviction under the CDC Order.").

## II. ARGUMENT

This Court may issue a temporary restraining order, even without notice to the adverse party, to restrain unlawful conduct. Fed. R. Civ. P. 65(b). In determining whether to grant or deny

8

a temporary restraining order, courts consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (*en banc*) (citations omitted).

**A. The CFPB Rule Is Likely Unlawful Under the Administrative Procedure Act Because It Requires Disclosures That Are Not Required Under the Fair Debt Collection Practices Act**

The Fair Debt Collection Practices Act generally prohibits debt collectors from using "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And while the statute lists 16 examples of prohibited representations, the list is non-exhaustive. *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 450 (6th Cir. 2014) ("[T]he listed examples of illegal acts are just that—examples."). Thus, in its Rule CFPB claims regulatory authority over how to define what constitutes a "false, deceptive, or misleading representation or means in connection with the collection of any debt" pursuant to 15 U.S.C. § 1692(d) ("the Bureau may prescribe rules with respect to the collection of debts by debt collectors"). *See* CFPB Rule, 86 Fed. Reg. at 21168-69.

Whether or not CFPB's claimed regulatory authority empowers it to define prohibited practices, it nearly goes without saying that CFPB cannot proscribe conduct that, in fact, is not "false, deceptive, or misleading[.]" *See City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007) ("Agency action is 'not in accordance with the law' when it is in conflict with the language of the statute relied upon by the agency.") (quoting 5 U.S.C. § 706(2)(A)). Indeed, it is a bedrock principle of administrative law that "[f]irst, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the

9

matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). A court may "hold unlawful and set aside agency action" that violates a statutory directive because it is "not in accordance with law." 5 U.S.C. § 706(2)(A).

The FDCPA uses "an objective test" to determine if conduct falls under its prohibitions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). And the Sixth Circuit has cautioned that statements are not "false, deceptive, or misleading" if they are *true*. *Id*. at 331; *see also Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 594 (6th Cir. 2009) (debt collector did not violate FDCPA with unclear language because it "did not go so far as to falsely describe [the] debt"). Indeed, in *Harvey* the Court rejected an argument that filing a debt-collection lawsuit without first obtaining documentary proof of all the facts underlying the suit was a deceptive practice. *See id*. at 331-32. This was because there was no indication that the suit lacked an evidentiary basis, and the debtor "never denied … that she owed [] a debt" or that the collectors "misstated or misrepresented the amount she owed." *Id*. at 332. As one court put it, "It would take a bizarre or idiosyncratic interpretation by the least sophisticated consumer to conclude that [a] true statement violates the FDCPA." *Remington v. Fin. Recovery Servs., Inc.*, No. 3:16-CV-865 (JAM), 2017 WL 1014994, at *4 (D. Conn. Mar. 15, 2017)

Moreover, even if a statement is false, it must be materially so, and not just "false in some technical sense." *Miller*, 561 F.3d at 596 (quoting *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009)). "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Id*. (quoting *Hahn*, 557 F.3d at 757). If a "common sense" reading of a statement renders it "pretty much" accurate, then it will not be actionable. *Id*.

Here, CFPB's rule seeks to extend agency action that has already been set aside as being unlawful. As a result, its dictates about what disclosures are necessary under the FDCPA are simply incorrect. The CFPB Rule therefore prohibits disclosures that are *true*, which conflicts with the statutory text of the FDCPA.

CFPB's entire premise is that housing providers' (and others) seeking to collect back rent without first providing disclosures about the Halt Order is inherently deceptive because "many consumers are unaware that they may be temporarily protected from eviction for nonpayment of rent under the CDC Order[.]" *CFPB Rule*, 86 Fed. Reg. 21170. But that assumes, of course, that the CDC Order is itself valid, and otherwise applies to the tenants. Indeed, CFPB even acknowledges this, saying, "If a particular consumer would not actually qualify for temporary eviction protection under the CDC Order, then there is likely no deception or unfairness to cure, no consumer benefit from receiving a disclosure about the Order, and no reason to cause debt collectors to incur the expense of providing such a disclosure." *Id*. at 21170.

But the Sixth Circuit has already held, in a published decision, that CDC lacked the statutory authority to issue the moratorium to *anyone*, and thus CFPB's premise is simply incorrect. *See Tiger Lily*, 992 F.3d at 522-23. As the Court recognized, the Halt Order invoked 42 U.S.C. § 264 and a related regulation as the source of its unlimited authority to criminalize the operation of state housing courts. *See id.* at 523. Section 264(a) said that the CDC had the authority to "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." CDC had argued that this "'broad grant of authority' to impose any number of regulatory actions, provided the Secretary believes those actions will help prevent the spread of disease, regardless of

11

whether they are in any way tethered to the 'specific intrusions on private property described in the second sentence' of § 264." *Id*. The Court rejected this reading as "unreasonable," saying that the "terms of that statute cannot support the broad power that the CDC seeks to exert." *Id*. at 522-23. Applying the *ejusdem generis* canon of construction, the Court also determined that CDC was limited to measures like "inspection, fumigation, disinfection, sanitation, [and] pest extermination," but "government intrusion on property to sanitize and dispose of infected matter is different in nature from a moratorium on evictions." *Id*. at 523. The Court also concluded that "the broad construction of § 264 the government proposes raises not only concerns about federalism, but also concerns about the delegation of legislative power to the executive branch." *Id*.

Because the Halt Order has already been held to be invalid, it can hardly be said that a housing provider engages in "false, deceptive, or misleading" conduct by not informing a tenant to seek protection under the *unlawful* CDC Order. Indeed, a tenant *cannot* seek refuge in the lawless CDC Order, and thus a housing provider clearly does not violate the FDCPA by refusing to utter CFPB's proposed disclaimer. *See Harvey*, 453 F.3d at 331.

In fact, the disclosures *required* by the Rule are themselves deceptive and misleading. CFPB insists that a housing provider should provide a disclosure about the CDC Order "even if the consumer is not reasonably eligible to be a covered person" or even if "the debt collector provides the sample language in this comment … to a consumer in a jurisdiction in which the CDC Order does not apply." *CFPB Rule*, 86 Fed. Reg. at 21180. But such disclosures would be clearly *false*. Indeed, even though CFPB fails to recognize as much, the CDC Order does not apply within the Sixth Circuit at all, and it thus would be misleading for a housing provider to suggest otherwise to a tenant. *See Tiger Lily*, 992 F.3d at 522; *Skyworks*, 2021 WL 911720, at *13.

12

Plaintiffs should not have to choose between following a binding decision of the Sixth Circuit or the edicts of an administrative agency. But under the CFPB Rule they are caught in an untenable position of deciding whether to falsely inform their tenants of the availability of the Halt Order when they *know* it has been invalidated or face civil liability to their tenants or risk enforcement actions by the CFPB. Following the law as set out by the Sixth Circuit *should be an option* for Plaintiffs. And to the extent that the CFPB Rule says otherwise, this Court should set the rule aside.

In the end, CFPB's Rule conflicts with the plain language of the FDCPA and is void under Section 706(2)(A) of the APA. *See City of Cleveland*, 508 F.3d at 838. CFPB has tried to force *untrue* disclosures through a contorted definition of false, deceptive and misleading conduct. But the only statements actually barred by the statutory language seem to be CFPB's own required deceptive and misleading disclaimers. Plaintiffs have thus demonstrated a substantial likelihood that the CFPB Rule is invalid.

**B. The CFPB Rule Likely Violates the First Amendment Because It Requires False Disclosures**

Apart from violating the APA, CFPB's Rule violates core limits on the type of speech an agency can compel from private persons. Simply, the government has no interest in compelling false speech. But, as discussed, this is precisely what CFPB's Rule requires—false statements to tenants who have not paid their rent.

The First Amendment provides, in pertinent part, that "Congress shall make no law ... abridging the freedom of speech[.]" U.S. Const. amend. I. "This constitutional guarantee, the Supreme Court has held, applies not only when government restricts speech, but also when it compels speech." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) (citing *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (*NIFLA*)).

13

"When laws, whether restrictive or compulsive, 'target speech based on its communicative content,' they generally 'are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" *Id*. (quoting *NIFLA*, 138 S.Ct. at 2371). "Heightened scrutiny generally applies to content-based regulation of any speaker, including a physician or other professional." *Id*. at 426. Indeed, "[s]peech is not unprotected merely because it is uttered by 'professionals.'" *NIFLA*, 138 S.Ct. at 2371-72.

With respect to compelled speech, the Court has explained that "strict scrutiny" applies unless a government actor shows that the speech falls into two limited exceptions. *Id*. at 2372. First, a court may apply a "more deferential review to some laws that require professionals to disclose *factual*, *noncontroversial information* in their 'commercial speech.'" *Id*. (emphasis added). Second, certain traditionally-regulated "professional conduct" may be subject to lesser scrutiny, "even though that conduct incidentally involves speech." *Id*.

Analyzing the first exception "contains three inquiries: whether the notice is (1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome. A compelled disclosure accompanying a related product or service must meet all three criteria to be constitutional." *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) (citing *NIFLA*, 138 S.Ct. at 2372).

"Purely factual" and "noncontroversial" speech is just that—true statements that are not subject to interpretation. *See NIFLA*, 138 S.Ct. at 2372 (disclosures concerning abortion were on "anything but an 'uncontroversial' topic"); *Safelite Group, Inc. v. Jepsen*, 764 F.3d 258, 264 (2d Cir. 2014) (law requiring disclosure of the name of a competitor's business was neither "purely factual" nor "noncontroversial" because "[p]rohibiting a business from promoting its own product

14

on the condition that it also promote the product of a competitor is a very serious deterrent to commercial speech."). Unsurprisingly, when the government mandates *false* speech, or even *misleading* speech, a court looks to that mandate with strict scrutiny. *See Massachusetts Ass'n of Priv. Career Sch. v. Healey,* 159 F. Supp. 3d 173, 206-08 (D. Mass. 2016) (invalidating prohibition on "unfair or deceptive" practices that would encompass "truthful" statements about an educational program).

Whether compelled speech is unjustified or unduly burdensome asks whether the goals of the proposed law "could be accomplished" with less burdensome alternatives. *Am. Beverage Ass'n*, 916 F.3d at 757. Similarly, restrictions that sweep too broadly and include protected as well as unprotected speech "chill the speaker's protected speech" and are also unduly burdensome. *Id*. (quoting *NIFLA*, 138 S.Ct. at 2378).

The second excepted category is narrow. Indeed, these are typically limits inherent in the "regulation of professional conduct" that were "firmly entrenched in American [] law." *NIFLA*, 138 S.Ct. at 2374. If the required disclosure is not "tied to" the "professional conduct" at all, it will be reviewed with strict scrutiny. *Id*. Of course, even when mandatory disclosures are subject to lesser scrutiny, they still must be "truthful, non-misleading, and relevant" to comport with the First Amendment. *EMW Women's Surgical Ctr.*, P.S.C., 920 F.3d at 429.

Under strict scrutiny, "precision must be the touchstone" of any regulation of speech. *NIFLA*, 138 S.Ct. at 2376 (cleaned up). Compelled speech must be shown, with "evidence," to actually address the purported government interest and must be narrowly tailored so that it is neither "underinclusive" in its reach to target harms nor overbroad in its application to protected speech that is unrelated to the harms. *See id.* If the government could reach its goals "without burdening a speaker with unwanted speech[,]" it fails strict scrutiny. *See id.*

15

CFPB's Rule violates the First Amendment. First, the Rule must be subject to strict scrutiny because it does not fit either of *NIFLA*'s exceptions. The speech here is neither purely factual nor uncontroversial. Indeed, it requires disclosures that suggest to a tenant who refuses to pay rent that the tenant "may be eligible for temporary protection from eviction under the CDC Order," 86 Fed. Reg. at 21180, even though the Sixth Circuit has held that the CDC Order is unlawful, and another court within this circuit has set aside the Halt Order in its entirety. *See Tiger Lily*, 992 F.3d at 522; *Skyworks*, 2021 WL 911720, at \*13. Furthermore, CFPB insists that housing providers should make *false* disclosures to a tenant that the tenant can take advantage of the CDC Order "even if the consumer is not reasonably eligible to be a covered person" or even if "the debt collector provides the sample language in this comment … to a consumer in a jurisdiction in which the CDC Order does not apply." *CFPB Rule*, 86 Fed. Reg. at 21180. The Rule *mandates* untrue speech and encourages plainly misleading speech. It thus warrants strict scrutiny. *See Massachusetts Ass'n of Priv. Career Sch.*, 159 F. Supp. 3d at 206-08.

Similarly, the Rule does not apply to a narrow class of purely professional conduct. The Rule applies to any person who seeks to collect a debt for back rent, whether they let a room in their house for rent or have multiple properties. *See CFPB Rule*, 86 Fed. Reg. at 21165. The disclosures do not, therefore, depend on any well-known or routine professional obligations. The disclosures are instead targeted broadly at the *speech itself*. Thus, the presumption of strict scrutiny must apply. *See NIFLA*, 138 S.Ct. at 2374.

Applying strict scrutiny, the Rule plainly fails. Most importantly, CFPB's Rule does nothing to accomplish its stated purpose. CFPB insists that the Rule is necessary to abate "consumer harms associated with evictions during the COVID-19 pandemic," because "consumers may be unaware of their eligibility for temporary protection under the CDC Order." *CFPB Rule*,

86 Fed. Reg. at 21168. But the CDC Order is invalid, and it cannot lawfully prevent any eviction under state law. *See Tiger Lily*, 992 F.3d at 522; *Skyworks*, 2021 WL 911720, at *13. The CFPB Rule cannot therefore have any legitimate impact on evictions, or any purported downstream harms to consumers. Of course, a rule mandating *false* disclosure about an invalid eviction moratorium does have significant adverse impacts on housing providers and tenants themselves because it provides false assurances to tenants that they simply do not have to meet their rent obligations. By mandating disclosures in circumstances where CFPB agrees the CDC Order "does not apply," moreover, CFPB has tipped its hand that it sees no problem with misinforming tenants and suggesting that they have protections that do not exist. *See CFPB Rule*, 86 Fed. Reg. at 21180. But this deceptive disclosure encourages recalcitrant tenants to resist lawful rent obligations through misinformation and makes it much more difficult for housing providers to access court proceedings guaranteed by the laws of their states. The result is that CFPB's Rule creates significant uncertainty and disruption for all parties, while mandating false disclosures.

Of course, even under lesser scrutiny, the Rule is invalid. The government can only mandate "truthful, non-misleading, and relevant" disclosures. *See EMW Women's Surgical Ctr.*, P.S.C., 920 F.3d at 429. The Rule is none of these things. It instead mandates false disclosures about the CDC order, encourages misleading disclosures whenever the CDC Order "does not apply," and creates irrelevant burdens on housing providers that frustrate their rights to access their own property when a tenant has simply refused to pay rent. Thus, Plaintiffs are also substantially likely to prevail on their claim that the CFPB Rule violates the First Amendment.

**C. Plaintiffs Will Suffer Irreparable Constitutional Injuries from the CFPB Rule and thus the Balance of the Equities Warrants a Restraining Order**

"When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor."

17

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). The same is true for temporary restraining orders. *See Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1294 (D. Colo. 2020) (granting TRO because of the "strong public interest in protecting First Amendment values") (citation omitted).

"With regard to the factor of irreparable injury, for example, it is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distrib. Co.*, 154 F.3d at 288 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). "Thus, to the extent that [a plaintiff] can establish a substantial likelihood of success on the merits of its First Amendment claim, it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights." *Connection Distrib. Co.*, 154 F.3d at 288.

"Likewise, the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to prevent the violation of a party's constitutional rights." *Id*. A party seeking a temporary restraining order must demonstrate both "that the balance of equities tips in [its] favor, and that an injunction is in the public interest," but "[t]hese factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And "the public as a whole has a significant interest in ... protection of First Amendment liberties." *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995). Thus, "the public interest would be advanced by issuance of a preliminary injunction enjoining enforcement of … statutes that are of *questionable constitutionality*." *Id*. (emphasis added).

Plaintiffs have been ordered under penalty of both private liability and public enforcement to utter *false* and misleading speech in violation of their First Amendment rights, and thus will suffer irreparable injury at the Rule's effective date. Indeed, if the CFPB Rule becomes effective, Plaintiffs will be forced to provide written disclosures to their tenants informing them, falsely, that the tenants "may be eligible for temporary protection from eviction under the CDC Order." *See CFPB Rule*, 86 Fed. Reg. at 21180. Plaintiffs will also be forbidden from informing their tenants the truth—that the Halt Order is legally invalid and unenforceable. *See id*. ("During the effective period of the CDC Order, a debt collector collecting a debt in any jurisdiction in which the CDC Order applies must not … "represent or imply to a consumer that the consumer is ineligible for temporary protection from eviction under the CDC Order."). As discussed, this violates Plaintiffs' First Amendment rights. And for Mr. Schoeffler, it also violates his ethical obligations as a member of the Louisiana Bar. *See* Louisiana Rules of Professional Conduct, Rule 4.1 ("In the course of representing a client a lawyer shall not knowingly … make a false statement of material fact or law to a third person[.]"). The CFPB Rule thus puts Plaintiffs in a dilemma of adhering to the law set out by the Court in *Tiger Lily*, or falsely informing tenants that they may be protected by an invalid order that *cannot and will not* prevent any eviction. Because the CFPB rule violates the First Amendment, if the rule is effective, even for a "minimal period[] of time," then Plaintiffs will "unquestionably" suffer irreparable injury. *See Connection Distrib. Co.*, 154 F.3d at 288.

Moreover, CFPB has no legitimate interest in violating Plaintiffs' First Amendment rights, but the public, of course, has a strong interest in ensuring that the agency does not intrude into protected speech. *See Connection Distrib. Co.*, 154 F.3d at 288. As the CFPB Rule is of "questionable constitutionality[,]" "the public interest would be advanced by issuance of a"

restraining order. *See Dayton Area Visually Impaired Persons, Inc.*, 70 F.3d at 1490 (6th Cir. 1995).

## III. CONCLUSION

For the reasons set out above, the Court should enter a temporary restraining order against the CFPB Rule.

May 3, 2021

Respectfully,

*/s/ Ben M. Rose*
Ben M. Rose (#21254)
RoseFirm, PLLC
Post Office Box 1108
Brentwood, TN 37024
615-942-8295
ben@rosefirm.com

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
**John Vecchione**
Senior Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5210
(Applications for admission *Pro Hac Vice* Pending)
*Counsel for Plaintiffs*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2021, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which sent notification of such filing to all counsel of record.


*/s/ Ben M. Rose*
Ben M. Rose
*Counsel for Plaintiffs*