**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| The Property Management Connection, LLC, *et al.*, | |
| *Plaintiffs*, | Civil Action. No. 3:21-cv-00359 |
| v. | Judge Eli J. Richardson |
| | Magistrate Judge Alistair Newbern |
| Consumer Financial Protection Bureau, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS CFPB AND ACTING DIRECTOR UEJIO'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR TEMPORARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 2

    A.   The CDC Eviction Moratorium Order ................................................................. 2

        1.  The COVID-19 Pandemic and the CDC Order ......................................... 2

        2.  Litigation Concerning the CDC Order ...................................................... 4

    B.   The Bureau and the FDCPA ............................................................................... 6

    C.   The Challenged Rule ........................................................................................... 7

        1.  The Rule's Prohibitions and Substantive Application ............................... 7

        2.  The Rule's Effective Date and Application to Eviction Activity ............ 10

STANDARD OF REVIEW ........................................................................................... 11

ARGUMENT ................................................................................................................. 12

  I.   Plaintiffs Have Not Demonstrated Substantial Likelihood of Success on the Merits ........ 12

    A.   The Rule Does Not Require False Disclosures ................................................. 13

    B.   The Rule Does Not Violate the First Amendment or the FDCPA ................... 15

  II.  Plaintiffs Have Not Shown Irreparable Injury. ................................................. 21

    A.   Plaintiffs' Asserted Harm Depends on Non-Existent First Amendment Injury ............ 21

    B.   Delaying Eviction Proceedings Pending the Outcome of this Litigation (or Expiration of the Moratorium) Does Not Impose Irreparable Harm ................................ 22

  III.  The Public Interest Weighs Strongly Against Granting Plaintiffs' Request ....................... 24

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Ala. Assoc. of Realtors v. U.S. Dep't of Health & Human Servs.*,
  2021 WL 1779282 (D.D.C. May 5, 2021) ................................................................... 5

*Am. Beverage Ass'n v. City & Cty. of San Francisco*,
  916 F.3d 749 (9th Cir. 2019) ................................................................................... 16

*Brown v. Azar*,
  2020 WL 6364310 (N.D. Ga. Oct. 29, 2020) ............................................... 6, 23, 25

*Chambless Enterprises, LLC v. Redfield*,
  2020 WL 7588849 (W.D. La. Dec. 22, 2020) .................................................... 6, 23

*Connection Distrib. Co. v. Reno*,
  154 F.3d 281 (6th Cir. 1998) .................................................................................. 22

*CTIA - The Wireless Ass'n v. City of Berkeley,Cal.*,
  928 F.3d 832 (9th Cir.), *cert denied*, 140 S. Ct. 658 (2019) .................................. 19

*Davis v. Pension Benefit Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009) .............................................................................. 12

*Dixon Ventures, Inc., v. Dep't of Health and Human Servs.*,
  2021 WL 1604250 (E.D. Ark. Apr. 23, 2021) ........................................................ 23

*Discount Tobacco City & Lottery, Inc. v. United States*,
  674 F.3d 509 (6th Cir. 2012) ............................................................................ 17, 18

*D.T. v. Sumner Cty. Sch.*,
  942 F.3d 324 (6th Cir. 2019) ............................................................................ 12, 21

*Fuentes v. Shevin*,
  407 U.S. 67 (1972) .................................................................................................. 21

*Just Funky, LLC v. Unique Logistics Int'l NYC, LLC*,
  2021 WL 1339133 (N.D. Ohio Apr. 9, 2021) ......................................................... 12

*KBW Inv. Props. LLC v. Azar*,
  No. 20-4852 (ECF No. 16) (S.D. Ohio Sept. 25, 2020) .......................................... 23

*Leary v. Daeschner*,
  228 F.3d 729 (6th Cir. 2000) ............................................................................ 11, 12

*Memphis A. Phillip Randolph Inst. v. Hargett*,
  485 F. Supp. 3d 959 (M.D. Tenn. 2020) ................................................................. 20

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
  559 U.S. 229 (2010) ............................................................ 18, 19

*Montgomery v. Huntington Bank*,
  346 F.3d 693 (6th Cir. 2003) .................................................... 7

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  138 S. Ct. 2361 (2018) ....................................................... 16, 17

*Nken v. Holder*,
  556 U.S. 418 (2009) .............................................................. 24

*Overstreet v. Lexington Fayette Urban Cty. Gov't*,
  305 F.3d 566 (6th Cir. 2002) ............................................... 11, 12

*Patio Enclosures, Inc. v. Herbst*,
  39 F. App'x 964 (6th Cir. 2002) .............................................. 20

*R.E. Dailey & Co. v. John Madden Co.*,
  1992 WL 405282 (6th Cir. Dec. 15, 1992) ................................ 18

*Rock & Roll Hall of Fame & Museum v. Genile Prods.*,
  134 F.3d 749 (6th Cir. 1998) .................................................. 12

*Rotella v. Mid-Continent Cas. Co.*,
  2009 WL 1287834 (N.D. Tex. May 8, 2009) .............................. 22

*S. Milk Sales, Inc. v. Martin*,
  924 F.2d 98 (6th Cir. 1991) .................................................... 21

*Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*,
  2021 WL 911720 (N.D. Ohio Mar. 10, 2021) .............................. 6

*Terkel v. Ctrs. for Disease Control & Prevention*,
  2021 WL 742877 (E.D. Tex. Feb. 25, 2021) ............................... 6

*Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*
  992 F.3d 518 (6th Cir. 2021) ........................................... 5, 6, 18
  2020 WL 7658126 (W.D. Tenn. Nov. 6, 2020) ................... 5, 6, 22, 23
  2021 WL 1171887 (W.D. Tenn. Mar. 15, 2021) ..................... 5, 18

*Vick v. Core Civic, Inc.*,
  2018 WL 6044897 (M.D. Tenn. Nov. 19, 2018) .......................... 11

*Wallace v. FedEx Corp.*,
  764 F.3d 571 (6th Cir. 2014) .................................................. 18

iii

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................................. 12

*Workman v. Bredesen*,
   486 F.3d 896 (6th Cir. 2007) ............................................................................... 12

*Zauderer v. Off. of Disciplinary Counsel of Supreme Ct. of Ohio*,
   471 U.S. 626 (1985) ............................................................................................. 16

*1st Avenue Funding v. Fairchild Holdings, Inc.*,
   2012 WL 3061080 (E.D. Mich. July 26, 2012) .................................................. 21

**Statutes**

5 U.S.C. § 706 ............................................................................................................. 12

12 U.S.C. § 5512 ........................................................................................................... 6

15 U.S.C. § 1692 ........................................................................................................... 6

15 U.S.C. § 1692a(6) ..................................................................................................... 7

15 U.S.C. § 1692a(6)(F)(iii) ......................................................................................... 7

15 U.S.C. § 1692d .......................................................................................................... 7

15 U.S.C. § 1692e ........................................................................................... 6, 7, 15, 21

15 U.S.C. § 1692f .............................................................................................. 7, 15, 21

15 U.S.C. § 1692l(d) ...................................................................................................... 7

15 U.S.C. § 1638(e)(1)(M) .......................................................................................... 17

20 U.S.C. § 1070 .......................................................................................................... 17

42 U.S.C. § 264 ......................................................................................................... 2, 4

42 U.S.C. § 264(a) ..................................................................................................... 5, 6

Consolidated Appropriations Act, 2021
   Pub. L. No. 116-260, 134 Stat 1182 (2020) ......................................................... 2

American Rescue Plan Act of 2021
   Pub. L. No. 117-2, 135 Stat. 4 (2021) ................................................................... 2

**Regulations**

iv

12 C.F.R. § 1002.9(a)(2) ................................................................. 17

12 C.F.R. § 1006.9 ........................................................................... 8

12 C.F.R. § 1006.9(b)(3) ................................................................ 10

12 C.F.R. § 1006.9(c) ............................................................ 10, 14, 15

12 C.F.R. § 1006.9(c)(1) ........................................................... *passim*

12 C.F.R. § 1006.9(c)(2) ......................................................... 8, 9, 13

12 CFR § 1006.9(b)(1) ..................................................................... 13

21 C.F.R. § 201.66(c)(5)(vi) ......................................................... 17

42 C.F.R. § 70.2 ............................................................................... 2

**Other Authorities**

Centers for Disease Control & Prevention, HHS/CDC Temporary Halt in Residential Evictions
    to Prevent the Further Spread of COVID-19, Frequently Asked Questions (Apr. 13, 2021),
    *https://www.cdc.gov/coronavirus/2019-ncov/downloads/Eviction-Moratoria-Order-FAQs-*
    *02012021-508.pdf* ...................................................................... 3

Debt Collection Practices in Connection with the Global COVID-19 Pandemic
    (Regulation F), Interim Final Rule,
    86 Fed. Reg. 21,163 (Apr. 22, 2021) ................................... *passim*

H.R. 1319, 117th Cong., 167 Cong. Rec. 1281 (2021) ................................ 4

Temporary Halt in Residential Evictions to Prevent the Further Spread of
    COVID-19, Agency Order,
    85 Fed. Reg. 55,292 (Sept. 4, 2020) ....................................... 2

Temporary Halt in Residential Evictions to Prevent the Further Spread of
    COVID-19, Agency Order,
    86 Fed. Reg. 16,731 (Mar. 31, 2021) ..................................... *passim*

U.S. House Comm. on Fin. Servs., COVID-19 Stimulus Package: Temporary Extension of the
    CDC Moratorium & Emergency Rental Assistance,
    https://go.usa.gov/xss3y (last visited May 7, 2021) .................... 3

U.S. Dept. of the Treasury, Emergency Rental Assistance Fact Sheet (May 7, 2021),
    https://home.treasury.gov/system/files/136/FACT_SHEET-Emergency-Rental-Assistance-
    Program_May2021.pdf. ........................................................... 24

# INTRODUCTION

Plaintiffs' request for a temporary restraining order is premised on a fundamental misunderstanding of the disclosure provision of the Fair Debt Collection Practices (FDCPA) rule[1] they challenge, coupled with their legal position that an order issued by the Centers for Disease Control and Prevention (CDC) to provide a moratorium on certain residential evictions during the COVID-19 pandemic is illegal. The validity of the CDC Order is currently the subject of separate litigation in numerous federal courts. But the outcome of that litigation will not affect the validity of the challenged rule issued by the Consumer Financial Protection Bureau (CFPB or Bureau). The Bureau's rule requires debt collectors who send an eviction notice or (if applicable law does not require an eviction notice) file an eviction action to disclose that tenants may be eligible for protection under the CDC Order—but only where the CDC Order applies.

Plaintiffs fail to demonstrate that they are entitled to the extraordinary relief they seek. Requiring debt collectors to provide routine, factual notification of rights or legal protections that consumers "may" have, in jurisdictions where the CDC Order applies, does not compel false speech and plainly passes First Amendment muster. Plaintiffs are therefore not likely to succeed on the merits of their claims. And because their alleged irreparable harm is premised entirely on their meritless First Amendment claim, they fail to satisfy that requirement for injunctive relief as well. Moreover, even if Plaintiffs were right about their potential First Amendment claim (they are not), they could easily avoid this injury by simply delaying the institution of eviction proceedings until the conclusion of this litigation or the CDC Order expires. As every court to consider the issue has held, the possible (but far from certain) loss of money due to such delay

---

[1] Debt Collection Practices in Connection with the Global COVID-19 Pandemic (Regulation F), 86 Fed. Reg. 21,163 (Apr. 22, 2021) (the Rule).

does not constitute irreparable harm sufficient to grant emergency relief. In sum, because Plaintiffs fail to demonstrate likelihood of success on the merits of their claims or that they will suffer irreparable harm, and in order to vindicate the important public interests in protecting consumers and making sure they are aware of available anti-eviction protections, the Court should deny Plaintiffs' motion for a temporary restraining order.

## BACKGROUND

### A. The CDC Eviction Moratorium Order

#### 1. *The COVID-19 Pandemic and the CDC Order*

Citing the historic threat to public health posed by the COVID-19 pandemic, on September 4, 2020, the CDC issued an order providing for a temporary halt on certain residential evictions pursuant to section 361 of the Public Health Service Act. "Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19." 85 Fed. Reg. 55,292, 55,293 (Sept. 4, 2020) ("CDC Order"); *see also* 42 U.S.C. § 264; 42 C.F.R. § 70.2. The CDC Order has been extended three times (including once by Congress) and is currently set to expire on June 30, 2021. *See* 86 Fed. Reg. 16,731 (Mar. 31, 2021).

The CDC Order works in tandem with significant rental assistance designed to reach landlords whose tenants have fallen behind in rent due to the pandemic.[2] At the same time that Congress extended the moratorium, it appropriated $25 billion in emergency rental assistance.[3] It subsequently appropriated another $21.5 billion for that purpose.[4] These appropriations are

---

[2] Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. N, tit. V, § 502, 134 Stat. 1182, 2078-79 (2020) (2021 Appropriations Act).

[3] *Id.* at § 501, 134 Stat. 1182, 2070-78.

[4] American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 3201(a)(1), 135 Stat. 4, 54.

2

meant to work together with the eviction moratorium, which helps to "ensure that millions of renters across America are not evicted while waiting to receive assistance."[5]

The CDC Order generally prohibits a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action on their behalf from evicting for non-payment of rent any "covered person" from any residential property.  86 Fed. Reg. at 16,731-33.  To be a "covered person" under the CDC Order, a person must submit a written declaration under penalty of perjury attesting to certain eligibility criteria.  *See id*. at 16,732.  The CDC Order does not preclude evictions unrelated to the non-payment of rent.  *Id.* at 16,735.  The CDC Order also does not bar a landlord, residential property owner, or their representative, including an attorney, from filing an eviction action in court, but it does prohibit the physical removal of a person from the property if the person meets the criteria and submits the declaration.[6]

In addition to its eligibility criteria, the CDC Order is subject to certain categorical limitations.  First, the CDC Order does not apply in any State, local, territorial, or tribal area with a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in the CDC Order.  86 Fed. Reg. at 16,736.  Second, the CDC Order expressly indicates that it does not apply "to the extent its application is prohibited by federal court order."  *Id*.

---

[5] U.S. House Comm. on Fin. Servs., *COVID-19 Stimulus Package: Temporary Extension of the CDC Eviction Moratorium & Emergency Rental Assistance*, https://go.usa.gov/xss3y (last visited May 7, 2021).

[6] *See* Centers for Disease Control & Prevention, *FREQUENTLY ASKED QUESTIONS* (Apr. 13, 2021), *https://www.cdc.gov/coronavirus/2019-ncov/downloads/Eviction-Moratoria-Order-FAQs-02012021-508.pdf*.

3

The CDC's temporary moratorium on certain evictions, and its March 2021 extension of the moratorium, is based on its statutory authority to prevent the interstate spread of communicable diseases. After the CDC initiated the moratorium in September 2020 pursuant to its authority under 42 U.S.C. § 264 to curb the interstate spread of COVID-19, in September 2020, Congress extended through January 31, 2021, the effective date of "[t]he order issued by the [CDC] under section 361 of the Public Health Service Act (42 U.S.C. 264)." 2021 Appropriations Act, § 502, 134 Stat. at 2078-79. Through this explicit reference to the CDC's statutory authority, Congress ensured the agency could further extend the moratorium if the evolving conditions of the pandemic so required.[7]

### 2. Litigation Concerning the CDC Order

In the last several months, multiple courts have considered various statutory and constitutional challenges to the CDC Order. As of this filing, however, there is no currently active nationwide injunction or nationwide judicial vacatur of the CDC Order and thus the Order remains in effect for most of the country. Further, the cases that have held against the Government with respect to the CDC Order's legality remain on appeal. Notably, every court that has been asked to issue a preliminary injunction or temporary restraining order enjoining its implementation has declined to do so.

---

[7] The CDC's ability to extend the moratorium was particularly important to Congress because, as noted *supra* pp. 2-3, the moratorium works in tandem with the $25 billion in emergency rental assistance that Congress appropriated in the adjacent provision of the same legislation, *see* 2021 Appropriations Act, § 501, 134 Stat. at 2070-73, and that Congress later increased by $21.5 billion, *see* American Rescue Plan Act, § 3201(a)(1), 135 Stat. at 54. The CDC's extension of the moratorium helps to ensure that renters are not evicted – exacerbating the spread of the virus – while awaiting this rental assistance. *See, e.g.*, H.R. 1319, 117th Cong., 167 Cong. Rec. 1281 (2021) (statement of Rep. Waters) (urging the CDC to "again extend the federal eviction moratorium that expires on March 31, 2021 so that grantees have time to distribute assistance to renters in need").

4

Most recently, a district court judge in the U.S. District Court for the District of Columbia found on final judgment that the CDC exceeded its authority in issuing the Order and issued a nationwide vacatur of the Order. *Ala. Assoc. of Realtors v. U.S. Dep't of Health & Human Servs.*, No. 1:20-cv-03377, 2021 WL 1779282 (D.D.C. May 5, 2021). The Government has already appealed that decision, however, and has requested a stay of that decision pending appeal from both the district court and the D.C. Circuit. The district court administratively stayed its order while the court considers the Government's motion to stay its order pending appeal. Minute Order (May 5, 2021), *Ala. Assoc. of Realtors v. U.S. Dep't of Health & Human Servs.*, No. 1:20-cv-03377.

As of this filing, the only jurisdiction in which the CDC Order has been declared "unenforceable" is the Western District of Tennessee, where the district court held that the Order exceeded the CDC's authority under 42 U.S.C. § 264(a), and the Sixth Circuit denied a motion to stay that district court order while it considers the Government's appeal. *See Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, No. 2:20-cv-2692, 2021 WL 1171887, at *4, 10 (W.D. Tenn. Mar. 15, 2021), *appeal filed* No. 21-5256 (6th Cir. 2021); *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 520 (6th Cir. 2021) (denying motion for stay pending appeal).

Even in that case, as the Sixth Circuit noted, the district court in the Western District of Tennessee nonetheless denied the plaintiffs' motion for emergency relief, holding that the plaintiffs had failed to show irreparable harm. *See Tiger Lily* , 992 F.3d at 521 ("The district court denied the preliminary injunction because it found that Plaintiffs' loss of income did not rise to the level of an irreparable injury"); *see also Tiger Lily*, 2020 WL 7658126, at *10 (W.D. Tenn. Nov. 6, 2020) ("The fact is, despite Plaintiffs' creative framing, at bottom Plaintiffs are

likely to suffer monetary damages, not irreparable harm, and their bevy of constitutional claims do not change this conclusion.").[8]

## B. The Bureau and the FDCPA

As part of its response to the 2007-2008 financial crisis and its aftermath, Congress created the Consumer Financial Protection Bureau and authorized it to "prescribe rules that may be necessary or appropriate to enable the Bureau to administer and carry out the purposes and objectives of the Federal consumer financial laws, and to prevent evasions thereof." *See* 12 U.S.C. § 5512. These laws include the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 *et seq*., which was enacted in 1977 to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. *See id*. § 1692(e).

The FDCPA generally applies to a "debt collector," which is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect,

---

[8] Two other district courts have also ruled against the legality of the CDC Order, but those rulings apply only to the parties to those cases and both decisions have been appealed. *See Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, No. 5:20-cv-2407, 2021 WL 911720, at *12-13 (N.D. Ohio Mar. 10, 2021) (holding that the CDC exceeded its authority under 42 U.S.C. § 264(a)) ("*Plaintiffs here* are entitled to declaratory judgment") (emphasis added); *mot. to clarify or amend judgment filed,* ECF No. 57 (Apr. 7, 2021)*, appeal filed, see* Notice of Appeal, ECF No. 63 (May 7, 2021); *Terkel v. Ctrs. for Disease Control & Prevention*, No. 6:20-cv-564, 2021 WL 742877, at *1-2, 10-11 (E.D. Tex. Feb. 25, 2021), *appeal filed*, No. 21-40137 (5th Cir. 2021). In two other district courts, the courts declined to enjoin the CDC Order at the preliminary injunction stage and plaintiffs appealed the denial of preliminary relief. *See Brown v. Azar*, No. 1:20-cv-03702, 2020 WL 6364310, at *9-11 (N.D. Ga. Oct. 29, 2020), *appeal filed*, No. 20-14210 (11th Cir. 2020); *Chambless Enterprises, LLC v. Redfield,* No. 20-cv-01455, 2020 WL 7588849, at *5-9 (W.D. La. Dec. 22, 2020), *appeal filed,* No. 21-30037 (5th Cir. 2021). Other litigation remains pending in the district courts.

6

directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C.

§ 1692a(6).  The FDCPA generally does not apply to "creditors" (*i.e.*, those collecting for their

own account), officers or employees of creditors, or those who acquired the debt or the right to

collect on the debt before the debt was in default.  *Id*. § 1692a(6)(A) & F(iii); *Montgomery v.*

*Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003).  The Bureau believes that landlords,

residential property owners, or property managers would typically not be debt collectors as

defined by the FDCPA (and therefore typically would not be subject to or liable under the

Bureau's Rule).  *See* 86 Fed. Reg. at 21,165 ("The Bureau understands that a significant number

of landlords and residential property owners *hire* debt collectors for pre-eviction collections."

(emphasis added)).

The FDCPA prohibits debt collectors, in connection with the collection of a debt, from

engaging in harassment or abuse, *see* 15 U.S.C. § 1692d, making false or misleading

representations, *see id*. § 1692e, and engaging in unfair practices in debt collection, *see id*. §

1692f.  The Bureau is authorized "to prescribe rules with respect to the collection of debts by

debt collectors."  *Id*. § 1692*l*(d).

**C. The Challenged Rule**

*1.  The Rule's Prohibitions and Substantive Application*

In the months following the initial institution of the CDC Order, the Bureau became

aware that consumers who interact with debt collectors may not be aware of the CDC Order or, if

they are aware of the Order, they may believe that the Order's protections apply automatically or

may otherwise not understand the steps they must take to avail themselves of its protections. 86

Fed. Reg. 21,163, 21,171 (Apr. 22, 2021).  At the same time, the Bureau understood that debt

collectors who otherwise might be inclined to inform consumers of the CDC Order's protections

7

lacked clear direction about how to do so in compliance with the FDCPA. *Id.* The Bureau also became aware that some debt collectors may be engaging in misrepresentations regarding consumers' ineligibility for the CDC Order's protections. *Id.* As a result, and in consideration of the negative economic impacts of the pandemic on renters, which include an elevated risk of eviction, as well as the immediate health and safety consequences that are likely to ensue, *id.* at 21,168-69, the Bureau promulgated its Rule.

The Rule amended Regulation F, which implements the FDCPA, to add two prohibitions related to the CDC Order. *Id.* at 21,174 (codified at 12 C.F.R. § 1006.9). The Bureau found that consumers lack awareness of the CDC Order, including that the protections are not automatic and the requirement that the consumer provide a declaration, and that this lack of awareness causes some consumers who would be eligible for such temporary protection to forgo it. *Id.* at 21,173; *see also id.* at 21,170-71. The Rule clarified that a debt collector violates the FDCPA's prohibition on unfair practices in the collection of a debt by filing an eviction action against such a consumer without disclosing that the consumer may be eligible for temporary protection from eviction under the CDC Order. *Id.* at 21,173. As is most relevant here, the Rule provides that:

> [A] debt collector collecting a debt in any jurisdiction in which the CDC Order applies must not, in connection with the collection of that debt . . . file an eviction action for non-payment of rent against a consumer to whom the CDC Order reasonably might apply without disclosing to that consumer clearly and conspicuously in writing, on the date that the debt collector provides the consumer with an eviction notice or, if no eviction notice is required by applicable law, on the date that the eviction action is filed, that the consumer may be eligible for temporary protection from eviction under the CDC Order.

12 C.F.R. § 1006.9(c)(1). The Rule also added a second prohibition to Regulation F which provides that a debt collector must not, in connection with the collection of such a debt, "[*f*]*alsely* represent or imply to a consumer that the consumer is ineligible for temporary protection from eviction under the CDC Order." 12 C.F.R. § 1006.9(c)(2) (emphasis added). The regulation's commentary elaborates, among other things, that "[a] consumer is not

8

reasonably eligible to be a covered person if the debt collector has knowledge that a consumer is not eligible for protection under the CDC Order." *Id*. § 1006.9(c)(1) cmt. 2.

In issuing this prohibition, the Bureau acknowledged that "in many circumstances it will be difficult for a debt collector to identify the consumers to whom the CDC Order reasonably might apply." 86 Fed. Reg. at 21,171. Accordingly, the Rule "does not require a debt collector to make an individualized determination as to a consumer's eligibility for protection under the CDC Order in connection with providing the disclosure." *Id.* Rather, the commentary to the regulation clarifies that "nothing in [the regulation] prohibits a debt collector from providing the disclosure to a consumer even if the consumer might not reasonably be eligible to be a covered person." 12 C.F.R. § 1006.9(c)(1) cmt. 2. To protect debt collectors from allegations that such disclosures violate the FDCPA itself, notwithstanding that they are allowed by the regulation, the commentary also contains a safe harbor by clarifying that a debt collector does not violate the relevant FDCPA sections merely because the debt collector provides the disclosure, even if the consumer is not reasonably eligible to be a covered person. *Id.*[9] However, this language is entirely permissive; a debt collector is not required by the regulation to provide the disclosure if the consumer might not reasonably be eligible or the collector knows the consumer is not eligible.

---

[9] The Rule reasoned: "[The regulation] requires debt collectors to disclose to consumers that the consumers 'may' be eligible for temporary protection from eviction under the CDC Order. The Bureau believes that, in this context, the disclosure does not convey, impliedly or expressly, that the debt collector has determined that the consumer is eligible for protection under the CDC Order. Accordingly, nothing in the disclosure constitutes legal advice, and a debt collector does not violate the FDCPA by providing the disclosure to a consumer to whom the protection is not reasonably likely to apply or to whom the protection does not ultimately apply." 86 Fed. Reg. at 21,171.

9

The Rule's prohibitions apply only "[d]uring the effective period of the CDC Order" to "a debt collector collecting a debt in any jurisdiction in which the CDC Order applies." 12 C.F.R. § 1006.9(c). Since the CDC Order does not apply "to the extent its application is prohibited by federal court order," 86 Fed. Reg. at 16,736, and the prohibitions contained in the Rule are limited to debt collectors "collecting a debt in jurisdictions in which the CDC Order applies," the Rule's provisions—by the Rule's own operation—have no application where the CDC Order, on account of a court order or otherwise, does not apply.

2. *The Rule's Effective Date and Application to Eviction Activity*

The Rule became effective on May 3, 2021. 86 Fed. Reg. at 21,174. Upon becoming effective, the Rule's required disclosure must be provided only once, upon service of an "eviction notice." The Rule defines "eviction notice" as "the earliest of any written notice that the laws of any State, locality, territory, or tribal area require to be provided to a consumer before an eviction action against the consumer may be filed." 12 C.F.R. § 1006.9(b)(3).[10]

The rule would never require a debt collector to provide a disclosure merely because of conduct occurring before the Rule's effective date. The Rule indicates that if, before May 3, 2021, "a debt collector has provided the consumer an eviction notice but not yet filed an eviction action, the debt collector would comply by providing the disclosure on the date that the eviction action is filed." 86 Fed. Reg. at 21,171 n. 110.[11] But a debt collector in this situation could also simply choose not to file an eviction action and would then not be required to provide the disclosure. The Rule, therefore, only requires a debt collector to provide a disclosure *if* the

---

[10] If no eviction notice is required by applicable law, the debt collector must provide the disclosure on the date that an eviction action is filed. 12 C.F.R. § 1006.9(c)(1).

[11] In those circumstances, because the debt collector has already provided the required eviction notice, "no eviction notice is required by applicable law," so the debt collector must provide the disclosure "on the date that the eviction action is filed." *Id.*

10

collector chooses to send an eviction notice (or, if the notice has already been sent, chooses to file an eviction action) on or after May 3, 2021. A collector is therefore completely able to avoid the Rule's disclosure requirement by declining to move forward with eviction proceedings on or after May 3, 2021.

If a debt collector has, before May 3, 2021, already both provided a required eviction notice and filed an eviction action, no disclosure is required under the Rule. This is because the date that the debt collector provided the consumer with the required eviction notice and the date that the eviction action was filed would have occurred before the Rule became effective. *See* 12 C.F.R. § 1006.9(c)(1). Moreover, if a debt collector engages in some other communication with a consumer regarding a possible eviction that is not "require[d] to be provided to a consumer before an eviction action," *id.*, the Rule does not require a collector to provide the disclosure at that time. Accordingly, a debt collector is free to delay initiating an eviction action until either the conclusion of this litigation or the CDC Order expires without triggering the Rule's disclosure requirement.

## STANDARD OF REVIEW

A temporary restraining order is "an extraordinary remedy" that should only be granted if the movant carries his burden of proving that the circumstances "clearly demand it." *Vick v. Core Civic*, No. 1:18-cv-0003, 2018 WL 6044897 (M.D. Tenn. Nov. 19, 2018) (relying on *Overstreet v. Lexington Fayette Urban Cty. Gov't* , 305 F.3d 566, 573 (6th Cir. 2002)); *see also Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Courts consider four factors when determining whether a plaintiff has fulfilled its burden: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the

11

injunction on the public interest."[12]  *See, e.g., Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *Rock & Roll Hall of Fame & Museum v. Genile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).  The  proof required for a plaintiff to obtain emergency relief like a temporary restraining order is "much more stringent than the proof required to survive a summary judgment motion," *see Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000), and Plaintiffs fall far short of offering it here.

## ARGUMENT

### I.  Plaintiffs Have Not Demonstrated Substantial Likelihood of Success on the Merits

Plaintiffs allege in their complaint that the Rule violates Section 706 of the Administrative Procedure Act (APA) because the Rule exceeds the Bureau's statutory authority under the FDCPA and is contrary to constitutional rights under the First Amendment.  Plaintiffs have not shown, and cannot show, a likelihood of success on the merits of either claim.  The Rule's modest requirement that certain debt collectors provide truthful information about legal protections that may be available to consumers facing eviction easily passes muster under the controlling First Amendment standards.  And because Plaintiffs do not allege *any* irreparable harm resulting from their claim about the FDCPA, the Court need not even address that claim to

---

[12] "The standard for a preliminary injunction is the same as that for a temporary restraining order." *Just Funky, LLC v. Unique Logistics Int'l NYC, LLC*, 2021 WL 1339133, at *2 (N.D. Ohio Apr. 9, 2021).  The Sixth Circuit has, at times, described the preliminary injunction inquiry as a "balancing test."  *See, e.g. Overstreet*, 305 F.3d at 573.  But this practice is inconsistent with, and thus does not survive, the Supreme Court's decision in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), which held "[a] plaintiff seeking a preliminary injunction *must* establish" the four prerequisite factors.  *See D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 328 (6th Cir. 2019) (Nalbandian, J., concurring) (quoting 555 U.S. at 20); *see also Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295-96 (D.C. Cir. 2009) (Kavanaugh, J., concurring).  Although there does appear to be some confusion on this score, *see Sumner Cty. Sch.*, 942 F.3d at 326-27, even where this Circuit has considered a balancing test post-*Winter*, it has made clear that "even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement." *Id.* (citation omitted).

resolve Plaintiffs' motion. If it does address that claim, the Court should hold that Plaintiffs have not shown a likelihood of success there either.

### A. The Rule Does Not Require False Disclosures

Plaintiffs' challenges hinge on Plaintiffs' allegation that the Rule "mandates false disclosures about the CDC order." Pls.' Mem. in Support of Mot. for TRO at 17 (Mem.), ECF No. 7.[13] But the Rule does no such thing.[14]

Plaintiffs assert that the Rule is contrary to the Bureau's authority under the FDCPA because the Rule requires debt collectors "to falsely inform" tenants of the availability of the CDC Order even when "they *know* it [the CDC Order] had been invalidated" by a court order. Mem. at 13. Likewise, Plaintiffs allege that the Rule violates the First Amendment because it "*mandates* untrue speech and encourages plainly misleading speech" by requiring disclosures about the possible availability of temporary protection from the CDC Order. *Id.* at 16. The disclosures required by the Rule are allegedly false, in Plaintiffs' estimation, because, if they are

---

[13] Plaintiffs do not appear to challenge the provision of the Rule that prohibits debt collectors from making false representations about the CDC Order. Even assuming they do, their arguments against it fail for the same reasons that their challenge to the disclosure provision fails. Moreover, to the extent Plaintiffs even reference this requirement, *see* Mem. at 19 ("Plaintiffs will also be forbidden from informing their tenants the truth"), they mischaracterize the Rule, which only prohibits a <u>false</u> representation that a consumer is ineligible for protection under the CDC Order. *See* 12 C.F.R. § 1006.9(c)(2).

[14] Plaintiffs' brief relies on numerous other misconstructions of the Bureau's Rule. For example, in addition to asserting erroneously that the Rule requires false disclosures, the brief (1) implies that the Rule applies to "housing providers," *see* Mem. at 11, a term that seemingly encompasses landlords, residential property owners, and property managers. But "housing providers" are only covered by the Rule to the extent they are, in their specific factual circumstances, acting as "debt collectors" (the defined term that both the statute and the Rule use), as the term is defined under the FDCPA (12 CFR 1006.9(b)(1); (2) implies that the Rule applies to attempts to "collect back rent," *see* Mem. at 5, 16, but the Rule's disclosure requirement explicitly only applies when a formal eviction action is initiated for non-payment of rent, *id.* at 1006.9(c)(1); and (3) alleges that the Rule requires disclosures "first," *see* Mem. at 11 – i.e. before a debt collector "seek[s] to collect back rent" – but the Rule only requires the disclosure "on the date" that a required eviction notice is sent or an eviction action is filed. *Id.*

13

provided where the CDC Order is not available, the disclosures "misinform[] tenants and suggest[] that they have protections that do not exist." *Id.* at 17.

The flaw in Plaintiffs' argument is that the Rule is clear that its provisions apply only to debt collectors "collecting a debt in any jurisdiction *in which the CDC order applies*." 12 C.F.R. § 1006.9(c) (emphasis added); *see also supra* pp. 9-10 (explaining how the Rule's provisions— by the Rule's own operation—have no application where the CDC Order does not apply). The preamble to the Rule similarly confirms that "the [Rule's] prohibitions apply . . . *only in jurisdictions in which the CDC Order is effective*." (emphasis added). 86 Fed. Reg. 21,170. By its own terms, the CDC Order does not apply "to the extent its application is prohibited by federal court order." 86 Fed. Reg. at 16,736. Thus, Plaintiffs fail to plausibly allege that the Rule compels *any* disclosures, much less false ones, whenever—due to a court order or for some other reason—the CDC Order does not apply.

Even in circumstances where it is uncertain whether the CDC Order applies, the Rule does not compel debt collectors to make any false or misleading statements. The Rule specifically contemplates scenarios where debt collectors may be uncertain whether the CDC Order or a jurisdiction-specific moratorium applies and provides alternate language that debt collectors may use in that circumstance. *See* 86 Fed. Reg. at 21,181. The Rule permits, but does not require, the debt collector to satisfy the disclosure requirement in § 1006.9(c)(1) by using sample alternate language which states: "Because of the global COVID-19 pandemic, you may be eligible for temporary protection from eviction under the laws of your State, territory, locality, or tribal area, or under Federal law."[15] 86 Fed. Reg. at 21,181. Plaintiffs' allegations (i.e. that

---

[15] In addition, even though the Rule's prohibitions do not apply at all where the CDC Order does not apply, the Bureau offered a safe harbor to debt collectors who nonetheless used this language (or the other provided sample language) in "jurisdictions in which the CDC Order does not

the Rule requires "clearly *false*" disclosures) ignore the terms of the Rule, including this available (but not required) alternate language.

Further, even where the CDC Order is in effect, the Rule does not require debt collectors to make definitive statements regarding the availability of the CDC Order's protections. Rather, it merely requires debt collectors to inform consumers to whom the CDC Order "reasonably might apply" that the consumers "*may* be eligible" for temporary protection under the CDC Order. 12 C.F.R. § 1006.9(c) (emphasis added). The Bureau stated that, "in this context, this disclosure does not convey, impliedly or expressly, that the debt collector has determined that the consumer is eligible for protection under the CDC Order." 86 Fed. Reg. 21,171.

Because the required disclosure is accurate and not misleading (*i.e.*, it only is required where the CDC Order applies, and in this context, it is accurate and not misleading to say consumers *may* be eligible for temporary eviction protection under that Order), Plaintiffs fail to plausibly claim that the Rule requires debt collectors to make false statements if they choose to file an eviction action.

**B. The Rule Does Not Violate the First Amendment or the FDCPA**

Even assuming that Plaintiffs are debt collectors to whom the Rule applies, Plaintiffs have not shown, and cannot show, a likelihood of success on the merits of either their constitutional claim or their FDCPA claim because the Rule's modest requirement that certain debt collectors provide consumers with truthful information about legal protections that may be available to them easily passes muster under the controlling standards.

---

apply." *Id.* at 21,181 ("A debt collector does not violate FDCPA sections 807 (15 U.S.C. 1692e) or 808 (15 U.S.C. 1692f) merely because the debt collector provides the [alternate sample] language . . . to a consumer in a jurisdiction . . . in which the CDC Order does not apply").

15

With respect to the First Amendment claim, the parties agree on the relevant legal standard: The Rule does not violate the First Amendment if the Court finds that the required notice "is (1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." Mem. at 14 (quoting *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019)); *see also Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372 (2018) ("*NIFLA*") (required disclosures of "purely factual and uncontroversial information about the terms under which ... services will be available … should be upheld unless they are unjustified or unduly burdensome") (internal quotation marks omitted).[16]

Plaintiffs' primary argument with respect to their First Amendment claim (at 16-17) is that the notice required by the Rule is untrue, either because the CDC Order is allegedly invalid or illegal in certain (or all) jurisdictions or because the notice may or must be provided to consumers who are not, in fact, eligible for relief under it. As explained in detail above, Plaintiffs are mistaken. The Rule merely requires debt collectors who are "collecting a debt in a jurisdiction in which the CDC Order applies" to inform consumers to whom the CDC Order "reasonably might apply" that the consumers "may be eligible" for temporary protection under the CDC Order. That statement is not only true—it is nearly tautological.

The fact that some consumers who receive the notice could turn out not to qualify for protection under the CDC Order does not render the notice inaccurate or misleading. By way of analogy, the FDA requires that drugs include warning labels alerting consumers to "side effects

---

[16] Plaintiffs' argument in the alternative (at 16-17) that the Court should apply strict scrutiny to the Rule's notice requirement is simply wrong. As numerous decisions of the Supreme Court and the Sixth Circuit make clear, required disclosure of factual and noncontroversial information is permissible in the context of commercial speech so long as such requirements are not unjustified or unreasonably burdensome. *See, e.g.*, *NIFLA*, 138 S. Ct. at 2372; *Zauderer v. Off. of Disciplinary Counsel of Supreme Ct. of Ohio*, 471 U.S. 626, 651 (1985).

16

that the consumer *may* experience." 21 C.F.R. § 201.66(c)(5)(vi) (emphasis added). No one would say such warnings are inaccurate or misleading merely because some people may take the drug without experiencing side effects. Similarly, the Sixth Circuit has upheld labels on tobacco products warning consumers about the health risks they may (but are not certain in every case to) incur from tobacco use. *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 569 (6th Cir. 2012). And the Supreme Court recently emphasized that it "do[es] not question the legality" of these sorts of familiar "health and safety warnings"—nor of "purely factual and uncontroversial disclosures about commercial products." *NIFLA*, 138 S. Ct. at 2376.

Nor is it at all unusual that an entity might be required to disclose to consumers the existence of legal provisions or rights that could (but might not in all circumstances) be relevant to them. The Truth in Lending Act, for example, requires lenders making private education loans to disclose "clearly and conspicuously … that the borrower *may* qualify for Federal student financial assistance through a program under title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 et seq.) … ." 15 U.S.C. § 1638(e)(1)(M). Similarly, Regulation B, which implements the Equal Credit Opportunity Act, requires creditors in certain circumstances to inform consumers that the Act prohibits credit discrimination. 12 C.F.R. § 1002.9(a)(2). These disclosures are not rendered untrue, or unjustified, by the possibility that a borrower may not qualify for student financial assistance or may not be a victim of credit discrimination.

Nor would the disclosure be rendered false or misleading even if the disclosure were provided (despite not being required to be provided) in a jurisdiction where the CDC Order was presently inapplicable due to a court order. No court of appeals has definitively opined on the

CDC Order's validity,[17] and the issue has not reached the Supreme Court, which could issue a binding decision upholding the CDC Order's legality. An open-ended statement of rights that "may" be available, such as the one given here, is not false or misleading so long as the consumer might one day become eligible for temporary protection under the CDC Order. Thus, a statement that the Order's protections "may" be available in such jurisdictions—which is not even required by the Rule—would be neither false or misleading.

The Rule's notice requirement, accurately informing certain consumers about legal protections that may be available to them, is thus purely factual and noncontroversial. *Cf.* Mem. at 14 ("'Purely factual' and 'noncontroversial' speech is just that—true statements that are not subject to interpretation."). The statement is "factual" because it describes a fact—the possible availability of legal protections for the consumer—as opposed to "a personal or political opinion." *Discount Tobacco*, 674 F.3d at 555; *cf. also Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250 (2010) (upholding requirement that advertisements by debt-relief agencies include "an accurate statement identifying the advertiser's legal status" as a debt-relief agency). It is noncontroversial for essentially the same reason: The fact that consumers to whom the CDC Order "reasonably might apply" "may be eligible" for protection under the Order is not reasonably in dispute. That Plaintiffs may disagree that the CDC properly issued the Order or that the Order is wise policy does not render the Rule's notice requirement itself controversial.

---

[17] It is important to note that despite Plaintiffs' attempts to paint the Sixth Circuit's *Tiger Lily* decision as a binding Circuit decision on the merits of the case, it is not. The order of the motions panel is "not strictly binding upon subsequent panels." *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014); *see also R.E. Dailey & Co. v. John Madden Co.*, No. 92-1397, 1992 WL 405282, at *1 n.1 (6th Cir. Dec. 15, 1992) (unpub.) ("we are not bound to follow the decision of the motions panel"). And the Sixth Circuit's decision simply denied a requested stay of an order that currently applies only to the Western District of Tennessee. 992 F.3d at 524; 2021 WL 1171887, at *10.

18

*Cf. CTIA—The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 845 (9th Cir.) (rejecting argument that "any purely factual statement that can be tied in some way to a controversial issue is, for that reason alone, controversial"), *cert. denied*, 140 S. Ct. 658 (2019).

Plaintiffs also cannot show that the Rule's limited notice requirement is unjustified or unduly burdensome, and they do not even attempt to make such a showing in their memorandum. In issuing the Rule, the Bureau reported that "consumers may be unaware of their eligibility for temporary protection under the CDC Order and potentially other moratoria," as well as the steps necessary to avail themselves of such protections. 86 Fed. Reg. at 21,167. It described evidence that some debt collectors are falsely telling consumers they are ineligible for protection or "are not abiding by the CDC Order" itself. *Id.* To address deceptive and unfair debt collection practices relating to these protections, the Rule requires that debt collectors inform consumers, as appropriate, that they may be eligible. In light of the evidence of ongoing deceptive and unfair practices in the eviction of consumers during a time of global pandemic, the justification for such notices is self-evident, and certainly is *at least* as strong as the justification for requiring debt-relief agencies to disclose themselves as such, a requirement the Supreme Court upheld in *Milavetz. See* 559 U.S. at 250.

The notice is also not unduly burdensome and Plaintiffs do not argue otherwise. The Bureau took multiple steps to tailor the Rule appropriately and avoid unwarranted burden. Debt collectors need notify only those consumers to whom the CDC Order might reasonably apply. 12 C.F.R. § 1006.9(c)(1). They need do so only in jurisdictions in which the Order applies. *Id.* They need only do so when the eviction is based on the nonpayment of rent. *Id.* cmt. 1. They need not provide the notice more than once. *Id.* cmt. 4. They need not "ensure that the consumer actually receives the disclosure" so long as they take steps to provide the information,

19

such as "delivering the disclosure to the address that is the subject of eviction proceedings." *Id.* cmt. 3.[18]  The Rule provides—but does not require debt collectors to use—two samples of language for disclosures to facilitate debt collectors' compliance with the Rule's requirements. *Id.* cmt. 5.  And finally, the Rule creates a safe harbor for debt collectors that prefer to simply give the notice to all consumers for whom they file an eviction action, rather than making the determination whether the CDC Order might reasonably apply to those consumers.  *Id.* § 1006.9(c)(1).[19]  Thus, even if Plaintiffs had not waived any argument that the notice requirement is unduly burdensome, they could not make that showing.

With respect to Plaintiffs' claim about the FDCPA, it is not properly raised in this motion as a basis for preliminary relief because Plaintiffs have not argued that this claimed violation of law has caused them any irreparable injury at all.  For this reason, the Court need not even address this claim in order to resolve the present motion.  *See generally Memphis A. Phillip Randolph Inst. v. Hargett*, 485 F. Supp. 3d 959, 974-75 (M.D. Tenn. 2020) ("The demonstration of some irreparable injury is a sine qua non for issuance of an injunction.") (quoting *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002)).  In any event, Plaintiffs' FDCPA argument is, like their First Amendment argument, wholly premised on the belief that it is false or misleading to tell consumers to whom the CDC Order reasonably might apply that the Order (or similar state and local moratoria) might offer them some protections from eviction.  As noted above, that premise is wrong.  Plaintiffs' motion also overlooks entirely that the Rule's

---

[18] *See also* 86 Fed. Reg. at 21178-79 (describing benefits and costs of Rule to covered persons, and indicating burden is minimal because the Rule (1) would entail at most one additional printed page per disclosure; (2) the disclosure is required in connection with a notice that already must be provided to the consumer; and (3) the disclosure does not need to be customized to specific consumers.

[19] Plaintiffs' apparent objection (at 16) to this reasonable safe harbor is curious, particularly in the context of their First Amendment claim, since it neither forbids nor requires any speech.

requirements address debt collection practices that the Bureau has determined are not only deceptive under 15 U.S.C. § 1692e but also *unfair* under 15 U.S.C. § 1692f.  *See, e.g.*, 86 Fed. Reg. at 21,170, 21, 173.  Plaintiffs offer no argument at all why the Bureau's requirements would be outside the Bureau's authority to regulate unfair debt-collection practices and so for this reason as well have not established a likelihood they will succeed on their FDCPA claim.

## II.  Plaintiffs Have Not Shown Irreparable Injury

Plaintiffs similarly fail to carry an "indispensable" part of their burden to obtain the extraordinary relief of a temporary restraining order. *Sumner Cty. Sch.*, 942 F.3d at 326-27.  "If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit."  *Id.* at 327; *see also S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6th Cir. 1991) ("The district court was well within its province in determining that a preliminary injunction was not necessary if [plaintiff] would not suffer 'irreparable harm' in the absence of such relief.").  "Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury." *1st Avenue Funding v. Fairchild Holdings, Inc.*, No. 12-13067, 2012 WL 3061080, at *1 (E.D. Mich. July 26, 2012) (relying on *Fuentes v. Shevin*, 407 U.S. 67 (1972)).

### A.  Plaintiffs' Asserted Harm Depends on Non-Existent First Amendment Injury

The only irreparable injury Plaintiffs even allege they will suffer is a putative violation of their First Amendment rights.  They claim that the Rule will "compel" them to "falsely" inform tenants that they may be eligible for temporary protection under the CDC Order, and will forbid them from "informing their tenants the truth – that the [CDC Order] is legally invalid and unenforceable."  Mem. at 19.  As Plaintiffs acknowledge, when a party seeks extraordinary relief on the basis of a potential violation of the First Amendment, "the likelihood of success on the

merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). Because Plaintiffs have failed to demonstrate a likelihood of success on the merits of their First Amendment claim, their claim to irreparable injury, which is based exclusively on the First Amendment argument, fails.[20] *See id.*

**B. Delaying Eviction Proceedings Pending the Outcome of this Litigation (or Expiration of the Moratorium) Does Not Impose Irreparable Harm**

Other than the baseless claim to First Amendment injury, Plaintiffs do not, and could not, offer any other harm they might suffer absent the requested injunction. And even if the required disclosures were false and in violation of the First Amendment (they are not), Plaintiffs have a simple way to avoid any injury: Plaintiffs could simply defer initiating the eviction proceedings that trigger the disclosure requirements. The Rule does not "compel" any speech at all except upon an affirmative eviction action by Plaintiffs. Even if they suffered some monetary loss from this choice, such monetary injury is "the antithesis of the irreparable harm needed to warrant" the extraordinary relief of a temporary restraining order. *Tiger Lily*, 2020 WL 7658126, at *8; *see also Rotella v. Mid-Continent Cas. Co.*, 2009 WL 1287834 (N.D. Tex. May 8, 2009) ("Although the court's denial of this TRO may force [movant] to wait and spend more time and energy … such inconveniences do not constitute irreparable harm").

Neither the CDC Order nor the Bureau's Rule relieves tenants of their obligation to pay rent, and the CDC Order allows landlords to "charg[e] and collect[] fees, penalties, or interest as the result of [a tenant's] failure to pay rent or other housing payment on a timely basis." 86 Fed. Reg. at 16,736; *see also Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev.*, -- F. Supp. 3d --

---

[20] Notably, Plaintiffs would still not be entitled to preliminary relief even if the CDC Order is vacated or enjoined nationwide during the pendency of this litigation. As explained above, if that were the case, Plaintiffs would have no disclosure obligations *at all* under the terms of the Rule, and thus they could not plausibly claim any injury, let alone an irreparable one.

, 2020 WL 7658126 (W.D. Tenn. Nov. 6, 2020) (order denying plaintiff's motion for a preliminary injunction of the CDC Order because alleged harm was monetary and temporary). A tenant's inability to remain current on rent in the midst of the economic upheaval wrought by the pandemic does not demonstrate that the tenant will be unable to pay the debt in the future. *See, e.g.*, *Brown*, 2020 WL 6364310, at *19-20; *Chambless*, 2020 WL 7588849, at *14.

Indeed, every court asked to preliminarily enjoin the CDC Order has declined to do so, finding that the temporary eviction moratorium does not cause landlords irreparable harm. *See* Order, *KBW Inv. Props. LLC v. Azar*, ECF No. 16, No. 20-4852 (S.D. Ohio Sept. 25, 2020) (denying temporary restraining order); *Brown v. Azar*, No. 20-3702, --- F. Supp. 3d ---, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020) (denying preliminary injunction), *appeal filed*, No. 20-14210 (11th Cir. Nov. 9, 2020), *mot. for inj. pending appeal denied*, No. 20-14210 (11th Cir. Dec. 17, 2020); *Tiger Lily LLC v. U.S. Dep't of Hous. & Urb. Dev.*, No. 20-2692, --- F. Supp. 3d ---, 2020 WL 7658126 (W.D. Tenn. Nov. 6, 2020) (denying preliminary injunction); *Chambless Enters., LLC v. Redfield*, No. 20-1455, --- F. Supp. 3d ---, 2020 WL 7588849 (W.D. La. Dec. 22, 2020) (denying preliminary injunction), *appeal filed*, No. 21-30037 (5th Cir. Jan. 21, 2021); *Dixon Ventures, Inc. v. Dep't of Health and Human Servs.*, No. 20-1518, 2021 WL 1604250 (E.D. Ark. Apr. 23, 2021) (denying preliminary injunction). Defendants are aware of no federal court that has held otherwise.

Finally, rental support provided by recent legislation is an additional reason Plaintiffs fail to show irreparable harm absent the injunction. Numerous sources of rental assistance are being made available to tenants at risk of eviction for non-payment of rent. For example, just last week, the Federal Government allocated an additional $21.6 billion under the American Rescue

23

Plan for Emergency Rental Assistance.[21]  In light of this support, Plaintiffs (or their members) are even less likely to suffer financial injury as a result of delaying eviction proceedings should they choose to do so to avoid providing tenants notice of their potential eligibility for eviction protections under the CDC Order.

***

In sum, Plaintiffs have failed to make the indispensable showing that they will suffer irreparable harm for two independent reasons.  First, their only claimed harm is premised on their meritless First Amendment argument, but that harm is illusory: the Rule's disclosure does not mandate false speech and does not violate the First Amendment.  Second, even if that harm existed, Plaintiffs could avoid that harm by delaying the initiation of eviction proceedings until this litigation is resolved or the CDC Order has expired (currently less than two months away, June 30, 2021).  The potential loss of rental income from such delay, even if the Bureau's Rule required it, does not, as every court to consider the issue has concluded, constitute irreparable harm.  For either of these reasons alone, Plaintiffs' request for a temporary restraining order should be denied.

### III. The Public Interest Weighs Strongly Against Granting Plaintiffs' Request

Finally, the balance of the harms overwhelmingly favors the government, and the injunction Plaintiffs seek is manifestly contrary to the public interest.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (pointing out that "[t]hese factors merge when the Government is the opposing party").  The Bureau issued the Rule to ensure consumers are aware of the important protections potentially available under the CDC Order and to protect them from

---

[21] U.S. Dept. of the Treasury, *Emergency Rental Assistance Fact Sheet* (May 7, 2021), available at https://home.treasury.gov/system/files/136/FACT_SHEET-Emergency-Rental-Assistance-Program_May2021.pdf.

24

misrepresentations about their ineligibility for those protections. 86 Fed. Reg. at 21,169.  In other words, the Rule is designed to help consumers avail themselves of the important protections afforded by the CDC Order, which numerous federal courts have already recognized the paramount public interest in.  *See, e.g.*, *Brown,* 2020 WL 6364310, at *23 (plaintiff's alleged economic injuries "pale[] in comparison to the significant loss of life that Defendants have demonstrated could occur should the Court block the Order").  As a result, the Bureau's Rule can provide direct health and safety benefits to consumers by delaying or preventing their physical removal from housing, 86 Fed. Reg. at 21,175, which reduces their exposure to the risk of COVID-19 infections.  *Id.* at 21,177.  On a community level, the reduction of renters' exposure to COVID-19 infection could have significant effects on public health.  *Id.* at 21,178.

Plaintiffs, on the other hand, are acting in their individual economic interests.  As demonstrated above, they have not shown these interests will be irreparably harmed by the temporary restrictions in the Rule.  The public interest, therefore, overwhelmingly favors denial of Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a temporary restraining order.

Dated: May 10, 2021                                       Respectfully submitted,

STEPHEN VAN METER
 *Acting General Counsel*
JOHN R. COLEMAN
 *Deputy General Counsel*
LAURA M. HUSSAIN
 *Assistant General Counsel*

 /s/ *Karen S. Bloom*
KAREN S. BLOOM*
KEVIN E. FRIEDL**

25

*Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Legal Division
Washington, D.C. 20552
Telephone: (202) 435-7012
Fax: (202) 435-7024
Karen.Bloom @cfpb.gov

*Counsel for Defendants Consumer Financial
Protection Bureau and Acting Director David
Uejio*

\*   Admitted *Pro Hac Vice*
\*\* Motion to appear *Pro Hac Vice* pending

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2021, a copy of the foregoing Opposition to Plaintiffs' Motion for Temporary Injunction was filed electronically. Notice of this filing will be sent to the following, if registered, by operation of the Court's electronic filing system. If not registered, notice was sent by First Class, United States mail, to:

Benjamin M. Rose
RoseFirm, PLLC
P O Box 1108
Brentwood, TN 37024
Email: ben@rosefirm.com

Caleb Kruckenberg
New Civil Liberties Alliance
1225 19th St. NW
Suite 450
Washington, DC 20036
Email: caleb.kruckenberg@ncla.legal

John Vecchione
New Civil Liberties Alliance
1225 19th St. NW
Suite 450
Washington, DC 20036
Email: jvecchione@valadlaw.com

J. Matthew Blackburn
Assistant United States Attorney
110 9th Ave. S.
Suite 961
Nashville, Tennessee, 37203
Email: matt.blackburn@usdoj.gov

s/ Karen S. Bloom
KAREN S. BLOOM
Senior Counsel
Consumer Financial Protection Bureau