IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE PROPERTY MANAGEMENT CONNECTION, LLC, ET AL., | : <br> : <br> : CIVIL ACTION NO.: 3:21-cv-00359 <br> : |
| Plaintiffs, | : |
| v. | : |
| ACTING DIRECTOR UEJIO, CONSUMER FINANCIAL PROTECTION BUREAU, ET AL. | : <br> : <br> : |
| Defendants. | : |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs The Property Management Connection, LLC (PMC), Gordon J. Schoeffler, and the National Association of Residential Property Managers (NARPM) (collectively the Housing Providers) reply to Defendants Acting Director Dave Uejio, Consumer Financial Protection Bureau, and the United States of America (collectively CFPB) and their briefs in opposition (ECF No. 17, ECF No. 18) to Plaintiffs' motion for a temporary restraining order (ECF No. 6).[1]

CFPB has put the Housing Providers in an impossible position. The agency has insisted in its interim final rule, *Debt Collection Practices in Connection With the Global COVID-19 Pandemic (Regulation F)*, 86 Fed. Reg. 21163 (April 22, 2021), that any person who seeks to collect back rent from a tenant must make a series of disclosures about the applicability of an order entitled, *Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19* issued by the U.S. Centers for Disease Control and Prevention (CDC). If the Housing Providers refuse,

---

[1] The United States filed its own brief adopting the substantive arguments set out by CFPB. *See* ECF No. 18. The arguments are not convincing regardless of their source.

1

then they face private liability to their tenants and potential enforcement from the agency. But the latter order is unlawful, and a gross misuse of government authority. *See Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522 (6th Cir. 2021); *Tiger Lily, LLC, et al. v. HUD, et al.*, No. 2:20-cv-2692, --- F.Supp.3d ----, 2021 WL 1171887, at *10 (W.D. Tenn. Mar. 15, 2021). The Housing Providers have now been caught in the middle, ordered by CFPB to make false and misleading disclosures about the Halt Order, and facing liability if they instead choose to follow the orders of the courts.

Instead of acknowledging this vexing state of affairs, CFPB has steadfastly insisted that this Court should *also* ignore a published decision by the Sixth Circuit, and that the Housing Providers have no choice but to make inaccurate disclosures concerning the invalid Halt Order. In CFPB's eyes, the Halt Order may, or may not, be valid, but either way, the Housing Providers must tell their tenants (even falsely) that it may apply to them. "In other words, telling the truth is prohibited, while telling lies is either mandatory or at least permitted. All this in the name of enforcing a statute that forbids 'false or misleading representations.'" Jacob Sullum, *Federal Regulators Require Rent Collectors To Lie About the CDC's Illegal Eviction Moratorium*, Reason (May 4, 2021) https://reason.com/2021/05/04/federal-regulators-require-rent-collectors-to-lie-about-the-cdcs-illegal-eviction-moratorium/. CFPB's Rule is unjustified and unjustifiable. This Court must issue a temporary restraining order.

I. **PLAINTIFFS WILL SUFFER IRREPARABLE CONSTITUTIONAL INJURIES FROM THE CFPB RULE AND THUS THE BALANCE OF THE EQUITIES WARRANTS A RESTRAINING ORDER**

Mindful perhaps that it has no substantive defense of its Rule, CFPB argues forcefully that the Housing Providers have not suffered sufficient harm to warrant early intervention by this Court. But CFPB has only clarified why this Court must issue the TRO. By insisting, still, that the now-

invalidated Halt Order should be followed, CFPB has demonstrated the need for a clear statement by this Court that the Housing Providers[2] need not issue the false disclosures mandated by CFPB.

CFPB's argument against irreparable harm is to simply dismiss the Housing Providers' First Amendment interests by asserting that the plaintiffs can avoid being subject to fines and enforcement by simply following the invalid CFPB Rule. Specifically, CFPB says that "even if the required disclosures were false and in violation of the First Amendment (they are not), Plaintiffs have a simple way to avoid any injury: Plaintiffs could simply defer initiating the eviction proceedings that trigger the disclosure requirements." CFPB Br. at 22. In other words, even though CFPB has no lawful basis to force the disclosures at issue, CFPB says that the Housing Providers can avoid making them by forgoing their other legal rights to access court proceedings and retake their own private property. The Housing Providers must apparently maintain this posture until CFPB exhausts all appeals. This argument makes a mockery of First Amendment law, represents an unlawful form of coercion, and, in any event, is based on a faulty factual premise.

As a threshold, CFPB seems to agree with longstanding precedent establishing that "[w]hen a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). Indeed, as the Sixth Circuit has recognized, if the Housing Providers "can establish a substantial likelihood of success on the merits of its First Amendment claim, [they] also ha[ve] established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights." *See id.* at 288. Thus, because

---

[2] CFPB quibbles with the idea that Plaintiffs really are "housing providers" instead of its preferred term "debt collectors." *See* CFPB Br. at 13 n. 14. There is no doubt that Plaintiffs fall under the CFPB Rule's definition of "debt collectors" because they seek to collect unpaid rent from residential tenants. *See* Pl. Br. at 7-8. As they face legal jeopardy unless they make CFPB's false and misleading disclosures, there is no doubt that they have ample reason to seek this Court's intervention.

the Housing Providers' substantive claim is likely to succeed, they have also shown irreparable harm.

While that showing resolves the issue, CFPB's suggestion about simply forgoing lawful speech must be exposed for what it is—an attack on First Amendment jurisprudence. "[I]t is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,'" in part because a speaker might "'remain silent rather than communicate even arguably unlawful words [and] ideas[.]'" *Id*. at 288, 293 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality) and *Reno v. ACLU*, 521 U.S. 844, 872 (1997), respectively). Indeed, in raising a First Amendment challenge to a statute or rule courts must relax normal considerations and will entertain broad challenges that consider even third-party harms because of the threat of chilling protected speech. *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (acknowledging that overbreadth adjudication reduces the "social costs" of the "considerable burden (and sometimes risk) of vindicating [ ] rights through case-by-case litigation"); *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 167 n. 14 (2002) (allowing the third-party claim of those who wish to canvass anonymously to factor into substantiality of overbreadth without any notion of whether claims had been or will be brought against them noting only that the statute would require them to surrender their anonymity). Thus, the Sixth Circuit has recognized that a litigant can challenge a rule on First Amendment grounds "even where the agency interpreted a provision in such a way as to preclude enforcement." *Anderson v. Spear*, 356 F.3d 651, 669 (6th Cir. 2004).

CFPB's suggestion that there really is no injury here because, maybe, the Housing Providers could somehow change their behavior to avoid being subject to enforcement ignores this precedent. Instead, CFPB has suggested that, even without a lawful basis for its rule, the Housing

4

Providers should stay quiet instead of risking enforcement actions if they choose to make truthful disclosures to their tenants. Protected speech cannot be so simply cast aside as unimportant, and the fact that CFPB has concededly chilled lawful speech is more than sufficient to constitute irreparable harm. *See Connection Distrib. Co.*, 154 F.3d at 288.

Further, CFPB conveniently ignores the trilemma facing the Housing Providers. The plaintiffs can choose to engage in false and misleading speech by incorrectly informing tenants that they cannot be evicted. This coercion of speech, of course, would violate the First Amendment. Otherwise, the Housing Providers can forgo any attempts to collect rent, which everyone agrees is owed to them, and relinquish their property, indefinitely, so that they can avoid being forced by the federal government to say false and misleading things to their tenants. Or, finally, the Housing Providers can speak the truth, but be subject to liability to their tenant and the government (and face the potentially ruinous costs of fighting a CFPB investigation) under the CFPB Rule. This very coercion *is the First Amendment violation*—the Housing Providers must choose between false speech and some other negative outcome. The Constitution does not permit the government to behave this way. *See id*.

Finally, as a factual matter, PMC and Mr. Schoeffler cannot "simply defer initiating the eviction proceedings" as CFPB insists, because they already face legal jeopardy and consequences from the rule. CFPB argues that the Rule "only requires a debt collector to provide a disclosure *if* the collector chooses to send an eviction notice (or, if the notice has already been sent, chooses to file an eviction action) on or after May 3, 2021," which the agency somehow construes to mean that the Housing Providers are not really in jeopardy. CFPB Br. at 10-11. For PMC, it is simply too late. PMC has initiated eviction proceedings for two tenants. Attachment A, Declaration of Trevor Garrett at ¶¶ 3-6. But PMC has not made the disclosures required by CFPB. Attachment

5

A, Declaration of Trevor Garrett at ¶¶ 3-6. Under CFPB's own explanation of its rule, PMC is currently in legal jeopardy under the Rule.

For Mr. Schoeffler, whose practice centers on housing matters, simply refusing to practice law for his clients is hardly an option. If Mr. Schoeffler declines to prosecute his clients' cases, this will hurt their legal interests by needlessly delaying their cases, exposing their properties to diminution of value and damage and depriving the homeowners of replacement tenants. Attachment B, Declaration of Gordon Schoeffler at ¶¶ 5-7. Furthermore, Mr. Schoeffler's clients will have no recourse from the courts for these harms. *Id*. at ¶¶ 5-7. If Mr. Schoeffler were to prejudice his clients in this way, this would harm his legal practice and his reputation as a businessperson. *Id*. at ¶¶ 3-4, 7. CFPB's proposal is thus totally untenable.

## II. CONTRARY TO CFPB'S ARGUMENT, THE SIXTH CIRCUIT HAS INVALIDATED THE CDC HALT ORDER

CFPB's substantive defense of its rule betrays an obstreperousness that does little more than prove the need for this Court's intervention. CFPB says the Housing Providers have nothing to fear because "the Rule is clear that its provisions apply only to debt collectors 'collecting a debt in any jurisdiction *in which the CDC order applies*.'" CFPB Br. at 14 (quoting 12 C.F.R. § 1006.9(c)). But then CFPB never says whether or not it thinks the CDC Order applies *in this Court*. In fact, CFPB explicitly says otherwise. It disclaims the Sixth Circuit's *Tiger Lily* decision as not being "a binding Circuit decision on the merits of the case" and then says that "the Sixth Circuit's decision simply denied a requested stay of an order that currently applies only to the Western District of Tennessee." CFPB Br. at 18 n. 17. As much as the Housing Providers would welcome a limited holding from this Court that the CFPB Rule has no application to them, CFPB has argued otherwise. That kind of logic is *why* Plaintiffs have sought this TRO.

6

Case 3:21-cv-00359   Document 20   Filed 05/11/21   Page 6 of 11 PageID #: 147

Furthermore, CFPB's halfhearted suggestion that this Court should disregard the *Tiger Lily* decision should not delay this Court long. As noted, a panel of the Sixth Circuit held, in a published opinion that Congress did *not* "grant the CDC the power it claims" underlying the Halt Order. *Tiger Lily*, 992 F.3d at 522. "In the regular course of events, one panel of [the Sixth Circuit] cannot overrule another panel's published decision." *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014). And, of course, a district court is likewise bound by the Court of Appeals. *See id.* To be sure, *unpublished* decisions by motions panels of interlocutory orders may be subject to revision, and are "thus, not strictly binding upon subsequent panels[.]" *Id*. *Published* decisions are binding, however. *See* 6 Cir. R. 32.1(b) ("Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc."); *Lair v. Bullock*, 798 F.3d 736, 747 (9th Cir. 2015) ("We have held that motions panels can issue published decisions … [and] we are bound by a prior three-judge panel's published opinions" on motions). And, even for *unpublished* motions decisions, "[l]ater *panels* cannot simply choose to disregard motions-panel decisions, and if a litigant wishes to challenge a motions panel's decision on a dispositive motion, the proper course of action is to request panel rehearing or rehearing en banc." *Wallace*, 764 F.3d at 583 (emphasis added). A district court, of course, must follow the law of this Circuit. *See id.* Because the *Tiger Lily* decision was published, it is binding not only on later panels of the Sixth Circuit, but on this Court as well, and CFPB's basic premise collapses.

### III. THE CFPB RULE LIKELY VIOLATES THE FIRST AMENDMENT BECAUSE IT REQUIRES FALSE DISCLOSURES

CFPB's First Amendment defense amounts to little more than its insistence that the underlying CDC Halt Order is valid, and thus it may also force the Housing Providers to tell their tenants that they may benefit from the Halt Order. But, as discussed, CFPB's insistence is simply

7

wrong. CFPB has no interest in enforcing the lawless Halt Order. Its assertion otherwise conflicts with core First Amendment protections.

As a threshold, CFPB is wrong in its description of the applicable standard of review and its claim that the Housing Providers "agree on the relevant legal standard." *See* CFPB Br. at 16. Through some convenient editing, CFPB rolls past the Housing Providers' argument that "the Rule must be subject to strict scrutiny" (Pl. Br. at 16), and instead focuses on the Housing Providers' description of an inapplicable standard of review as somehow setting the relevant legal standard. *See* CFPB Br. at 16. But as argued in the Housing Providers' opening brief, CFPB's rule must be subject to strict scrutiny, and it is presumptively unconstitutional because it compels false speech. *See EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) (citing *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (NIFLA)) ("When laws, whether restrictive or compulsive, 'target speech based on its communicative content,' they generally 'are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'"). And, moreover, because the rule does nothing to accomplish its stated purpose, it violates First Amendment protections. *See* Pl. Br. at 16-17.

Substantively, CFPB just challenges the premise concerning the validity of the CDC Halt Order. CFPB dismisses the notion that its required notice would be false or misleading even though "some consumers who receive the notice could turn out not to qualify for protection under the CDC Order." CFPB Br. at 16. CFPB goes even farther, and says, "Nor would the disclosure be rendered false or misleading even if the disclosure were provided (despite not being required to be provided) in a jurisdiction where the CDC Order was presently inapplicable due to a court order." CFPB Br. at 17. The reason? According to CFPB "[n]o court of appeals has definitively opined on

8

Case 3:21-cv-00359   Document 20   Filed 05/11/21   Page 8 of 11 PageID #: 149

the CDC Order's validity." CFPB Br. at 17-18. In other words, CFPB sees no problem forcing disclosures that may or may not apply, because it sees some daylight between its preferred reading of the law and adverse court decisions.

CFPB's argument fails because it sees no problem with *misinforming* consumers about protections that simply do not exist. The Sixth Circuit has not equivocated, it held the Halt Order to be unlawful. *Tiger Lily*, 992 F.3d at 522. But CFPB still insists that the Housing Providers *must* tell their tenants otherwise or face civil liability and potential enforcement. Whether or not CFPB wants to accept it, such disclosures are misleading. CFPB's Rule tells the Housing Providers that they are forbidden from telling the truth about the state of the Halt Order, but they may, at their discretion, lie to their tenants about inapplicable protections. What rule better protects consumers? One that permits them to tell the truth or one that requires them to lie?

Finally, as an aside, CFPB claims that the Housing Providers "claim about the [Fair Debt Collection Practices Act], [] is not properly raised in this motion as a basis for preliminary relief because Plaintiffs have not argued that this claimed violation of law has caused them any irreparable injury at all." CFPB Br. at 20. On the contrary, the Housing Providers' First Amendment claim draws from the Rule's conflict with the FDCPA. The agency has ordered the plaintiffs to make false disclosures for fear of liability under the FDCPA (which CFPB enforces), but to do so, it has mandated actions that are *forbidden* by the Act—false and misleading statements.[3]

---

[3] CFPB argues dismissively that it can mandate the false disclosures here under the portion of the FDCPA preventing "unfair" practices. CFPB Br. at 20-21. But it never explains how mandating false disclosures about inapplicable protections constitutes unfairness. Indeed, one would think that misleading tenants about nonexistent protections would be "unfair"—not the other way around.

## IV.    CONCLUSION

For the reasons set out above, the Court should enter a temporary restraining order against the CFPB Rule.

May 11, 2021

                                                  Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
*Admitted Pro Hac Vice*
**John Vecchione**
Senior Litigation Counsel
*Pro Hac Vice Motion Pending*
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5210


*/s/ Ben M. Rose*
Ben M. Rose (#21254)
RoseFirm, PLLC
Post Office Box 1108
Brentwood, TN 37024
615-942-8295
ben@rosefirm.com

*Counsel for Plaintiffs*

10

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

>*/s/ Caleb Kruckenberg*
>Caleb Kruckenberg
>*Counsel for Plaintiffs*