IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE PROPERTY MANAGEMENT CONNECTION, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ACTING DIRECTOR UEJIO, CONSUMER FINANCIAL PROTECTION BUREAU, et al., <br><br> Defendants. | NO. 3:21-cv-00359 <br> JUDGE RICHARDSON |

## MEMORANDUM OPINION

Pending before the Court is Plaintiffs' Motion for Temporary Injunction (Doc. No. 6, "Motion"), whereby Plaintiffs seek a temporary restraining order pursuant to Federal Rule of Civil Procedure 65. Defendants have filed responses (Doc. Nos. 17-18),[1] and Plaintiffs have filed a reply (Doc. No. 20). The Court has determined that a hearing is not necessary.

For the reasons discussed herein, the Court will deny the Motion.

---

[1] One response (Doc. No. 17), was filed on behalf of Defendant Consumer Finance Protection Bureau and its acting director. The other (Doc. No. 18) was filed by Defendant United States of America; its response asserted that it was not a proper defendant in a case, like this one, challenging agency action and also adopted the substantive argument set forth by the other Defendants. The Court herein does not address the United States' assertion that it is not a proper defendant herein.

## BACKGROUND[2]

This action challenges a recent Interim Final Rule ("Rule") promulgated by Defendant Consumer Financial Protection Bureau ("CFPB") that Plaintiffs assert requires them to make false statements to tenants who have been sued for unpaid rent and are subject to eviction. Plaintiffs allege that the Rule violates the Administrative Procedures Act ("APA") and Plaintiffs' First Amendment rights and should be declared unlawful and set aside. Via the Motion, Plaintiffs seek a temporary restraining order ('TRO") prohibiting Defendants from implementing the Rule.

Plaintiffs are a Tennessee property management company, an attorney practicing real estate law in Louisiana, and a national association representing more than 5,000 residential property managers nationwide. Defendant CFPB is an independent executive agency of the United States that regulates consumer financial products and services, and Defendant Uejio is the Acting Director of Defendant CFPB. Plaintiffs have also sued the United States.

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which included a limited and temporary moratorium on evictions for certain types

---

[2] For purposes of ruling on a temporary restraining order ("TRO"), the Court typically takes as true facts that are "(1) asserted and evidentially supported at least to some degree by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by one side to such an extent, or in such a manner, that they are credited by this Court even if rebutted to some extent by the other side; or (4) subject to judicial notice." *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-cv-00981, 2019 WL 6050283, at *1 n.1 (M.D. Tenn. Nov. 15, 2019). Plaintiffs have filed an unverified Complaint and three declarations in support of their Motion, each of which verifies the facts in the Complaint within the declarant's personal knowledge. Fed. R. Civ. P. 65 allows a TRO to be issued only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." The Court herein accepts the core facts (as opposed to legal conclusions and arguments) asserted by Plaintiffs and does not believe that there are material factual disputes that affect the outcome of the Motion.

2

Case 3:21-cv-00359   Document 23   Filed 05/14/21   Page 2 of 19 PageID #: 158

of federally-backed housing. On September 1, 2020, the Center for Disease Control ("CDC") issued a nationwide order ("CDC Order"), not limited to federally-backed housing, that prohibited eviction of "any covered person"[3] from any residential property in any jurisdiction to which the order applied during its effective period. This CDC Order,[4] also known as the "Halt Order," has been extended multiple times and is currently set to expire on June 30, 2021, unless extended further.[5]

The CDC Order has been litigated extensively in federal courts. Several federal courts have found that by issuing the order, the CDC exceeded the authority Congress gave it. Some are in the Sixth Circuit. For example, in *Skyworks, Ltd. v. Centers for Disease Control & Prevention*, No. 5:20-CV-2407, 2021 WL 911720 (N.D. Ohio Mar. 10, 2021), the court found an injunction to be inappropriate because money damages could redress the plaintiffs' alleged injury, but also stated that "[b]ecause the Court determines that the statute is unambiguous and, by issuing a nationwide eviction moratorium, CDC exceeded the authority Congress gave it in Section 361, the Court holds that action unlawful and sets it aside, as the APA requires." *Id.* at *12. And in *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, No. 2:20-cv-02692-MSN-atc, 2021 WL 1171887, at *10 (W.D. Tenn. Mar. 15, 2021), the court held that "[t]he Halt Order exceeds the statutory authority of the Public Health Act, 42 U.S.C. § 264 [and therefore] is ultra vires and unenforceable

---

[3] To be a "covered person," a tenant must complete and sign a written declaration attesting to certain eligibility criteria, such as his or her inability to pay rent because of a substantial loss of household income. 86 Fed. Reg. at 16731-32 (Mar. 31, 2021).

[4] By its terms, the CDC Order is not effective in local jurisdictions that apply more onerous eviction standards. 86 Fed. Reg. at 16736 (Mar. 31, 2021).

[5] The CDC Order expressly indicates that it does not apply to the extent that its application is prohibited by federal court order. 86 Fed. Reg. at 16736 (Mar. 31, 2021).

3

Case 3:21-cv-00359    Document 23    Filed 05/14/21    Page 3 of 19 PageID #: 159

in the Western District of Tennessee." Defendants in the latter case filed an emergency motion for a stay of the district court order pending appeal. In a published order, the Sixth Circuit denied the motion on the grounds that the government was unlikely to succeed on the merits, as the CDC Order exceeded the CDC's statutory authority. *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518 (6th Cir. 2021) ("Sixth Circuit *Tiger Lily* opinion").

However, federal courts have also routinely held that plaintiffs challenging the CDC Order are not entitled to injunctive relief. *E.g.*, *Skyworks, Ltd.*, 2021 WL 911720 (finding an injunction to be inappropriate because money damages could redress the plaintiffs' injury); *Chambless Enterprises, LLC v. Redfield*, No. 3:20-CV-01455, 2020 WL 7588849, at *12 (W.D. La. Dec. 22, 2020) (finding that plaintiffs did not carry their burden of showing a likelihood of success on the merits and finding that "Plaintiffs cannot satisfy their burden by suggesting that it may be difficult to enforce money judgments against their tenants"); *Tiger Lily,* 2020 WL 7658126, at *8 (denying motion for preliminary injunction, and finding that "loss of rental income" was not sufficient to show irreparable harm); *Brown v. Azar*, 497 F. Supp. 3d 1270 (N.D. Ga. 2020) (finding that the plaintiffs had not shown a substantial likelihood of success on the merits, and that plaintiff had not shown an irreparable injury).

On April 22, 2021, pursuant to the Fair Debt Collection Practices Act ("FDCPA"), the CFPB issued the Rule entitled "Debt Collection Practices in Connection with the Global COVID-19 Pandemic (Regulation F)." The Rule sets forth "prohibitions" applicable to "debt collectors" as follows:[6]

---

[6] Defendants correctly note that the Rule applies only to "debt collectors," and thus is applicable to a "housing provider" "landlord," etc. only to the extent that it is a "debt collector." (Doc. No. 17 at 13 n.14). By the Rule's own terms, it generally "applies [only] to debt collectors, as defined in FDCPA section 803(6), 15 U.S.C. 1692(a)(6) [sic]." 12 C.F.R. § 1006.9(a). Notably, the

4

> (c) Prohibitions. During the effective period of the CDC Order, a debt collector collecting a debt in any jurisdiction in which the CDC Order applies must not, in connection with the collection of that debt:
>
>> (1) File an eviction action for non-payment of rent against a consumer to whom the CDC Order reasonably might apply without disclosing to that consumer clearly and conspicuously in writing, on the date that the debt collector provides the consumer with an eviction notice or, if no eviction notice is required by applicable law, on the date that the eviction action is filed, that the consumer may be eligible for temporary protection from eviction under the CDC Order; or
>>
>> (2) Falsely represent or imply to a consumer that the consumer is ineligible for temporary protection from eviction under the CDC Order.

Debt Collection Practices in Connection With the Global COVID-19 Pandemic (Regulation F), 86 Fed. Reg. 21163 (Apr. 22, 2021); 12 C.F.R. § 1006.9.[7] As Defendants correctly note, (Doc. No. 17 at 13), Plaintiffs do not appear to challenge the prohibition set forth in paragraph (c)(2) of the Rule. Rather, Plaintiffs challenge only the provisions of paragraph (c)(1)—which actually set forth in essence *conditional requirements* rather than "prohibitions." That is, during the effective period of the CDC Order, paragraph (c)(2) requires any debt collector (1) seeking to collect unpaid rent (2) from a tenant ("consumer") to whom the CDC Order reasonably might apply (3) in a jurisdiction in which the CDC Order applies (4) when or before filing an eviction action or providing the tenant with an eviction notice, *to disclose in writing to that tenant that the tenant*

---

FDCPA's definition essentially excludes officers or employees of a creditor acting to collect a debt on behalf of the creditor; that is to say that apparently a housing provider or landlord is not a debt collector within the meaning of the FDCPA—or the Rule—if its own personnel, rather than a third-party debt-collection service, is acting to collect on the housing provider's or landlord's own accounts. The Court will assume (as seems safe with respect to at least the attorney, Plaintiff Schoeffler) that Plaintiffs are "debt collectors" and thus within the scope of the Rule.

[7] Notably, the "prohibitions" of subsection (c) are the only operative provisions of the Rule. For this reason, to say that the Rule does not apply is to say that these prohibitions do not apply, and vice versa.

5

*may be eligible for temporary protection from eviction under the CDC Order*. Thus, if these four conditions are satisfied, the Rule essentially requires debt collectors, while the CDC Order is in effect, to do what is set forth above in italics: tell the tenant that the tenant may be eligible for relief from the CDC Order.

Plaintiffs challenge Paragraph (c)(2) on the grounds that the written disclosure it conditionally requires (at least in some jurisdictions) is false. That is, Plaintiffs contend that if the Rule is upheld, they will be forced to provide their tenants with a written disclosure that is inaccurate and misleading in light of various federal court rulings around the country that have invalidated the CDC Order. Based on this contention, and as explained more fully below, Plaintiffs assert that the Rule violates the APA by exceeding the CFPB's statutory and regulatory authority (Count I) and also violates the First Amendment (Count II).[8]

As indicated above, however, by its own terms the Rule applies only during the effective period of the CDC Order, only to tenants to whom the CDC Order reasonably might apply, and only in jurisdictions in which the CDC Order applies. Defendant CFPB has opined, in its response to the Motion, that "the Rule's provisions—by the Rule's own operation—have no application where the CDC Order, on account of a court order or otherwise, does not apply." (Doc. No. 17 at 10). The Court concurs with this view, and it intends to hold CFPB to this view (and believes that other courts perhaps should do likewise).

---

[8] The caption (though not the content) of Count II suggests that it is not premised directly on the (alleged) violation of the First Amendment, but rather is premised directly on a violation *of the APA* occasioned by a violation of the First Amendment. Either way, the claim would require Plaintiffs to show a violation of the First Amendment, and the Court's characterization and analysis of Count II proceeds accordingly.

6

## STANDARDS FOR MOTION FOR TEMPORARY RESTRAINING ORDER

In determining whether to issue a TRO pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court is to consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006). When determining whether to issue a TRO, a threat of an immediate, irreparable harm must be present. Fed. R. Civ. P. 65(b)(1)(A) (requiring a court to examine, on application for a TRO, whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant"); *Cunningham v. First Class Vacations, Inc.,* No. 3:16-cv-2285, 2019 WL 1306214, at *1 (M.D. Tenn. Jan. 11, 2019).

Alternatively, the Sixth Circuit permits a district court, in its discretion, to grant a preliminary injunction or temporary restraining order "even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982).

Courts sometimes describe this inquiry as a balancing test. *See, e.g.*, *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). And that is true, to an extent; district courts weigh the strength of the four factors against one another. The balance of hardships test, however, does not eliminate the irreparable harm requirement. Even the strongest showing on the other three factors cannot "eliminate the irreparable harm requirement." *Friendship Materials,* 679 F.2d at

105, *cited in Memphis A. Philip Randolph Institute v. Hargett,* 978 F.3d 378, 385 (6th Cir. 2020). That factor is indispensable. If the plaintiff isn't facing imminent and irreparable injury, there is no need to grant relief *now* as opposed to at the end of the lawsuit. *See Friendship Materials,* 679 F.2d at 103. That is why the Sixth Circuit has held that a district court abuses its discretion "when it grants a preliminary injunction without making specific findings of irreparable injury[.]" *Bankers Life & Cas. Co. v. McDaniel*, No. 3:21-cv-00247, 2021 WL 1165974, at *3 (M.D. Tenn. Mar. 26, 2021) (quoting *Friendship Materials*, 679 F.2d at 105). Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory for a TRO to be issued. *Id.*; *D.T. v. Sumner Cty. Schools,* 942 F.3d 324, 326-27 (6th Cir. 2019).

## FIRST AMENDMENT (COUNT II)

The First Amendment provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend. I. This constitutional guarantee, the Supreme Court has held, applies not only when government restricts speech, but also when it compels speech. *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019). Plaintiffs argue that because the Sixth Circuit has invalidated the CDC Order, the Rule compels false speech by requiring disclosures that would be false in the Sixth Circuit—where (according to Plaintiffs) it is now simply untrue to say that a tenant "may be eligible for temporary protection from eviction under the CDC Order"—and thus violates the First Amendment. For purposes of the Motion, the Court will accept arguendo Plaintiffs' basic premise that, in a jurisdiction in which the CDC Order has been held invalid under a still-effective court order, it is

8

false to say what the Rule requires a debt collector to tell the tenant, *i.e.*, that a tenant "may be eligible for temporary protection from eviction under the CDC Order."[9]

As noted above, however, by its own provisions, the Rule has no application where the CDC Order does not apply.[10] The Rule applies only in jurisdictions in which the CDC Order applies (and only during the effective period of the CDC Order). 12 C.F.R. § 1006.9(c). In other words, the Rule itself takes care of the very (alleged) problem about which Plaintiffs complain, namely, the imposition of the requirement of the Rule in a jurisdiction (the Sixth Circuit)[11] where the CDC Order (according to Plaintiffs) does not apply in light of an effective court order.[12] By its very terms, the Rule compels nothing at all—including disclosure of false speech—in jurisdictions where the CDC Order does not apply (whether due to a court order declaring the Rule invalid, or to something else). Plaintiffs concede (indeed, insist, and correctly so) that the Rule does not apply in such jurisdictions; therefore, in such jurisdictions the Rule cannot compel them to engage in

---

[9] The validity of this premise turns primarily, if not exclusively, on how one construes the word "may." To the extent the word is taken to mean "currently may," Plaintiffs' premise seems valid. To the extent the word is taken to mean something like "may at some point," or "may, depending upon how (legal) circumstances develop," Plaintiffs' premise would be invalid. The Court does not see how either construction is obviously wrong, and the Court need not embrace either construction because, as noted, it will assume that Plaintiffs' premise is valid.

[10] "The prohibitions in § 1006.9(c) apply only if certain initial conditions are satisfied. First, because this interim final rule is designed to address deceptive and unfair debt collection practices with respect to the CDC Order, the prohibitions apply only during the effective period of the CDC Order, and **only in jurisdictions in which the CDC Order is effective**." Debt Collection Practices in Connection With the Global COVID-19 Pandemic (Regulation F), 86 Fed. Reg. 21170 (Apr. 22, 2021) (emphasis added).

[11] The Court notes that Plaintiff Schoeffler does not base his law practice in the Sixth Circuit; rather, he lives and works in Louisiana, a jurisdiction within the Fifth Circuit.

[12] As set forth below, the Court is of the view that the Sixth Circuit order in *Tiger Lily* currently is binding on courts within the Sixth Circuit.

9

speech, false or otherwise, and does not violate their First Amendment rights. In short, Plaintiffs' theory is that the Rule violates the First Amendment by compelling speech that would be false if made in a jurisdiction in which the CDC Order is inapplicable, but in such jurisdictions the Rule is inapplicable and thus compels no speech. Plaintiffs' theory is simply internally inconsistent, and accordingly Plaintiffs have not shown a likelihood of success on the merits of their claim that the Rule violates the First Amendment.

Alternatively, though quite relatedly, the Court finds that Plaintiffs' First Amendment theory does not suggest that Plaintiffs would suffer irreparable harm absent a TRO, a necessary showing to warrant the issuance of a TRO. *D.T.*, 2019 WL 5850408, at *2; *Patio Enclosures, Inc.*, 39 F. App'x at 967. To the contrary, because the Rule does not apply to Plaintiffs in the jurisdictions (such as the Sixth Circuit) within the scope of Plaintiffs' theory, the Rule cannot and does not create irreparable harm by its (non-existent) application in such jurisdictions. Plaintiffs cannot be harmed by a rule where it does not apply.

To this, perhaps Plaintiffs would respond that they *could* be harmed by the *improper* enforcement of the Rule where it does not apply. To the extent that Plaintiffs make this argument—*i.e.*, argue that Defendants potentially could try to enforce the Rule against them in the Sixth Circuit in spite of the Sixth Circuit order in *Tiger Lily* that (according to Plaintiffs) renders the Rule inapplicable here—the argument fails to support the issuance of a TRO because it is unrelated to Plaintiffs' claim in Count I (and Count II, for that matter). Plaintiffs may fear that Defendants might do such a thing, but neither Count I nor Count II is based on such fear; therein Plaintiffs complain about the Rule *itself*—and not any *potential attempt to improperly enforce the Rule* where by its own terms it should not be enforced. (Doc. No. 1 at ¶ 51) ("The CFPB Rule . . . is . . . invalid."); (*Id.* at ¶ 61) ("The Rule is invalid."). In short, Plaintiffs claim that what is invalid is

10

the Rule itself, and not certain potential enforcement efforts, and thus cannot now rely on any alleged injury flowing from improper enforcement efforts.

Like the claims themselves, Plaintiffs' request for injunctive relief is aimed not at any potential allegedly improper enforcement of the Rule, but rather at the Rule itself. (*Id.* at 20) ("Plaintiffs demand . . . an injunction prohibiting [the Rule's] enforcement"); (*Id.* at 24) (same). Plaintiffs have not asked the Court to anticipate Defendants' actions and find that any incorrect/improper application of the Rule should be enjoined. Instead, they have asked the Court for a wholesale injunction against the Rule and its enforcement, which is a far cry from asking for an injunction specifically against the Rule's enforcement in a jurisdiction where its enforcement allegedly would be improper (in light of an effective court order invalidating the CDC Order). In short, as Plaintiffs have not challenged any potential allegedly improper enforcement of the Rule, the Court will not ask the inapplicable question of whether Plaintiffs would suffer irreparable injury absent an injunction against such enforcement.

The Sixth Circuit has explained that, when a court considers injunctive relief based on a potential violation of the First Amendment:

> [T]he likelihood of success on the merits often will be the determinative factor. With regard to the factor of irreparable injury, for example, it is well-settled that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality); *see also Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir.1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.") (citing *Elrod*). Thus, to the extent that [Plaintiff] can establish a substantial likelihood of success on the merits of its First Amendment claim, it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights. *See Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir.1995).

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *see also Wappler v. Kleinsmith*, No. 1:08-CV-595, 2009 WL 483223, at *3 (W.D. Mich. Feb. 24, 2009) ("Absent a showing of substantial likelihood of success on the merits of his First Amendment claim, Plaintiff fails to show irreparable injury." (citing *Connection Distrib. Co.*, 154 F.3d at 288)); *Laborers' Int'l Union of N. Am., Loc. 534 v. Hodge*, No. 1:11CV569, 2011 WL 5597261, at *6 (S.D. Ohio Nov. 17, 2011) ("[W]here there has not been a showing of a likelihood of success on a First Amendment claim, a plaintiff cannot establish irreparable harm.") (collecting cases)). In other words, the well-worn path to a finding of irreparable harm from a First Amendment violation is a showing of a likelihood of success on the merits of the claim of such violation. This path is essential for plaintiffs (like Plaintiffs here) who otherwise would be unable to show irreparable injury from a First Amendment violation, and it is the path Plaintiffs attempt to blaze to show irreparable injury (absent the requested injunction) from the First Amendment violation they allege.[13]

---

[13] The cases cited above cast doubt on whether a plaintiff can ever successfully show irreparable injury, even absent a *likelihood* of success on the merits of the First Amendment claim, based on some kind of injury other than the loss of First Amendment freedoms. These cases tend to indicate that the First Amendment context is an exception to the rule that a court can grant a preliminary injunction or temporary restraining order "even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). In any event, Plaintiffs assert irreparable injury solely on loss of free-speech interests protected by the First Amendment, and not some other kind of harm such as financial loss. (Doc. No. 7 at 17-19). Thus, even if some other kind of harm could underlie a claim of irreparable injury flowing from a First Amendment violation, that would made make no difference in this case because Plaintiffs premise irreparable injury solely on the loss of First Amendment-protected freedoms. And to show irreparable injury of that kind, Plaintiffs *must* show a likelihood of success on the merits, which they have failed to do.

But this attempt fails. As the Court has previously discussed, Plaintiffs have not shown that they are likely to succeed on the merits of their claim that the Rule violates the First Amendment. Therefore, the Court finds that Plaintiffs have not carried their burden to show that they will suffer irreparable harm because (supposedly) their First Amendment rights are violated by the Rule. Plaintiffs have failed to carry their burden to show that they are likely to succeed on their First Amendment claims, and to the extent that the Motion is based on that claim (Count II), it will be denied.

## ADMINISTRATIVE PROCEDURES ACT (COUNT I)

Plaintiffs argue that the Rule is unlawful under the APA because it requires disclosures that are not required by the FDCPA. The FDCPA provides that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Basically, Plaintiffs contend that, within its regulatory authority under the FDCPA, CFPB cannot prohibit debt collectors from engaging in speech or conduct that in fact is not false, deceptive, or misleading. Therefore, Plaintiffs maintain, the CFPB exceeded its authority by promulgating the Rule, which (according to Plaintiffs) not only proscribes disclosures that are true, but also affirmatively *requires* disclosures that (far from *prohibiting* or otherwise *countering* false speech or conduct) would themselves be false, deceptive, or misleading if made in a jurisdiction where the CDC Order has been declared invalid under an effective court order.

As explained above, however, the Rule itself provides an exception that eliminates the disclosure requirements in jurisdictions, such as the Sixth Circuit, where the CDC Order does not apply (due to an effective court order or otherwise). Thus, Plaintiffs' premise—that the Rule exceeds CFPB's authority because it requires (rather than prohibits or otherwise counters) false, deceptive and/or misleading representations—is incorrect. Debt collectors in jurisdictions where

13

the CDC Order does not apply do not have to make the disclosures required by the Rule. Thus, even if Plaintiffs are correct that such disclosures would be false if made in such jurisdictions, such disclosures are not required in such jurisdictions, and so the Rule cannot be unlawful on the grounds that it *requires* false disclosures.[14] Therefore, Plaintiffs cannot show a likelihood of success on the merits of their claim that the Rule violates the APA by requiring false disclosures.

The Court pauses to wonder whether, at the end of the day, what Plaintiffs really seek (or at least would be content with) in this case is an unambiguous declaration from this Court that, based on the Sixth Circuit *Tiger Lily* opinion, the Rule is inapplicable within the Sixth Circuit.[15] If so, this would be a non-starter, at least at this stage. The Court firmly believes that it should not grant preliminary declaratory relief, as such relief likely is simply unauthorized under federal law and procedure. *See Hamama v. Adducci*, 946 F.3d 875, 878 (6th Cir. 2020). And in any event, as suggested above, Plaintiffs have not actually asked the Court to make such a declaration, either preliminarily or finally; indeed, as indicated above, they have eschewed framing their claims and the Motion in terms of whether the Rule is inapplicable (and thus not properly enforceable) in jurisdictions where an effective court order deems the Rule invalid. Nevertheless, the Court is not averse to stating, as dicta, its view that the Sixth Circuit *Tiger Lily* opinion is precedential and binding on courts within the Sixth Circuit.

Defendants argue in their Response that:

---

[14] If there are other arguments as to why the Rule exceeds the CFPB's rule-making authority under the FDCPA, Plaintiffs have not made them, at least not with near the intentionality and sufficiency to show a likelihood of success on the merits.

[15] On the other hand, the Court realizes that the Plaintiff Schoeffler (the attorney) may not find such relief sufficient, as he is based outside of the Sixth Circuit. His location actually makes the Court wonder what scope of relief he hopes to obtain from a lawsuit filed in, and so intrinsically associated with, the Sixth Circuit. But that is a question for another day.

14

> It is important to note that despite Plaintiffs' attempts to paint the Sixth Circuit's *Tiger Lily* decision as a binding Circuit decision on the merits of the case, it is not. The order of the motions panel is "not strictly binding upon subsequent panels." *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014); *see also R.E. Dailey & Co. v. John Madden Co.*, No. 92-1397, 1992 WL 405282, at *1 n.1 (6th Cir. Dec. 15, 1992) (unpub.) ("we are not bound to follow the decision of the motions panel"). And the Sixth Circuit's decision simply denied a requested stay of an order that currently applies only to the Western District of Tennessee. 992 F.3d at 524; 2021 WL 1171887, at *10.

(Doc. No. 27 at 18 n 17). Plaintiffs respond that the *Tiger Lily* decision is binding, as it is a published decision. (Doc. No. 20 at 7).

The Sixth Circuit has explained that:

> In the regular course of events, one panel of this court cannot overrule another panel's published decision. *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001). While the decisions of motions panels are generally interlocutory in nature (and, thus, not strictly binding upon subsequent panels), they do receive some measure of deference. *See, e.g., Kraus v. Taylor*, 715 F.3d 589, 594 (6th Cir. 2013); *R.E. Dailey & Co. v. John Madden Co.*, 983 F.2d 1068, 1992 WL 405282, at *1 n. 1 (6th Cir. 1992) (table decision). Later panels cannot simply choose to disregard motions-panel decisions, and if a litigant wishes to challenge a motions panel's decision on a dispositive motion, the proper course of action is to request panel rehearing or rehearing en banc. *See* 6 Cir. R. 35, 40; *see also Plumhoff v. Rickard*, ––– U.S. –––, 134 S. Ct. 2012, 2018, 188 L.Ed.2d 1056 (2014) (noting our use of this procedure); *Bowles v. Russell*, 432 F.3d 668, 671 (6th Cir. 2005) (same), *aff'd, Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360, 168 L.Ed.2d 96 (2007).

*Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014); *see also In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 669 (6th Cir. 2020). The Sixth Circuit Rules also state that "Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc." 6 Cir. R. 32.1(b). Moreover, in *Serv. Emps. Int'l Union Local 1 v. Husted,* 531 Fed. App'x 755 (6th Cir. 2012), the Sixth Circuit referred to a published order granting an emergency stay of injunctive relief ordered by a district court as "precedential," without providing any basis for such reference, thus seemingly suggesting that the published order was self-evidently and necessarily

15

precedential precisely because it was published. *See id*. at 755 (citing *Serv. Emps. Int'l Union Local 1 v. Husted,* 698 F.3d 341 (6th Cir. 2012) (per curiam) (stay order)).

Therefore, the Court would consider the Sixth Circuit *Tiger Lily* opinion to be binding precedent for this Court, as it is a published opinion of the Sixth Circuit. As a result, it appears that the CDC Order does not apply to Plaintiffs, and as a result, the Rule would not apply to Plaintiffs due to the language previously discussed in this opinion. The Court does not make these observations to provide Plaintiffs with proverbial cover for particular potential future choices they may make, or to decide things it does not need to and does not now decide. The Court does so, rather, out of a desire to take advantage of the opportunity to provide whatever non-binding guidance it can on the significant (and arguably under-analyzed) issue of when a published Sixth Circuit interim/interlocutory order is precedential

Alternatively to its finding that Plaintiffs lack a likelihood of success on the merits, the Court agrees with Defendants that any potential financial harms Plaintiffs face from the violation alleged in Count I are insufficient to show irreparable harm. (Doc. No. 17 at 22-23).[16]

---

[16] Defendants note that

> With respect to Plaintiffs' claim about the FDCPA, it is not properly raised in this motion as a basis for preliminary relief because Plaintiffs have not argued that this claimed violation of law has caused them any irreparable injury at all. For this reason, the Court need not even address this claim in order to resolve the present motion. *See generally Memphis A. Phillip Randolph Inst. v. Hargett*, 485 F. Supp. 3d 959, 974-75 (M.D. Tenn. 2020) ("The demonstration of some irreparable injury is a sine qua non for issuance of an injunction.") (quoting *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002)). In any event, Plaintiffs' FDCPA argument is, like their First Amendment argument, wholly premised on the belief that it is false or misleading to tell consumers to whom the CDC Order reasonably might apply that the Order (or similar state and local moratoria) might offer them some protections from eviction.

16

Case 3:21-cv-00359 Document 23 Filed 05/14/21 Page 16 of 19 PageID #: 172

"[A]s a general rule, a preliminary injunction is an inappropriate remedy where the potential harm to the movant is strictly financial." *Chambless Enterprises, LLC*, 2020 WL 7588849, at *14 (quoting *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989) (cleaned up)). "Even economic injuries that are 'substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.'" *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Federal courts have routinely found that injunctive relief would be inappropriate when analyzing the CDC Order, due to financial harms not being sufficient to constitute irreparable harm. *E.g.*, *Skyworks, Ltd.*, 2021 WL 911720, at *12 (finding an injunction to be inappropriate because money damages could redress the plaintiffs' injury); *Chambless Enterprises, LLC*, 2020 WL 7588849, at *12 (finding that plaintiffs did not carry their burden of showing a likelihood of success on the merits and finding that "Plaintiffs cannot satisfy their burden by suggesting that it may be difficult to enforce money judgments against their tenants"); *Tiger Lily LLC*, 2020 WL 7658126, at *8 (denying motion for preliminary injunction, and finding that "loss of rental income" was not sufficient to show irreparable harm); *Brown*, 497 F. Supp. 3d 1270 (N.D. Ga. 2020) (finding that the plaintiffs had not shown a substantial likelihood of success on the merits, and that plaintiff had not shown an irreparable injury). Here, absent the requested injunction, the alleged statutory violation would, at most, force Plaintiffs to make certain disclosures before undertaking eviction proceedings. Plaintiffs would have two options: (1) make the disclosures and then undertake eviction proceedings; or (2) forgo

---

(Doc. No. 17 at 20). In short, Plaintiffs have not alleged any irreparable injury flowing from the violation alleged in Count I, and if they had done so, presumably the alleged injury would have been a financial injury. By contrast, with respect to Count II, the alleged irreparable injury was stated expressly as a violation of First Amendment rights, an "irreparable injury" option not available to Plaintiffs with respect to the alleged statutory violation asserted in Count I.

17

eviction proceedings during the pendency of the Rule. The second option would result only in financial injury, which as discussed above is not irreparable. As for the first option, if Plaintiffs select it, and if making the disclosures somehow could be said to inflict irreparable injury on Plaintiffs, that still would not help Plaintiffs on the instant Motion; the irreparable injury would have been caused not by the lack of an injunction (as required for the issuance of a TRO), but rather by Plaintiffs' imprudent insistence on choosing this option rather than the other option, which would not have inflicted irreparable injury.

Therefore, the Court finds that the risk of financial harms to Plaintiffs, absent temporary enjoinment of the Rule, does not constitute an irreparable injury.

For these reasons, Plaintiffs have not carried their burden to show entitlement to a TRO with regard to their APA claim, and to the extent that the Motion is based on that claim (Count I), it will be denied.

## CONCLUSION

In deciding the Motion, the Court does not opine on the wisdom or fairness of the Rule or the CDC Order, on whether lessors of housing units have been disproportionately burdened with softening particular harsh effects of the COVID-19 pandemic, or on whether (as Plaintiffs claim) the CDC Order is "a national housing policy masquerading as a public health policy[.]" (Doc. No 1 at 10). Nor does the Court opine on whether the Rule is likely unlawful for any reason other than the particular ones advanced by Plaintiffs. And, as suggested above, the Court does not opine on any potential actions taken by Defendants to enforce the Rule. Instead, the Court is called upon to decide, in light of the substance of Plaintiffs' Motion (and briefing in support thereof) and based

on the current record,[17] whether they are entitled to the extraordinary remedy of a TRO. For the reasons set forth above, the Court answers that question in the negative.

The Motion will be denied. An appropriate Order will be entered.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[17] The Court notes that although it has necessarily opined on the likelihood of success of Plaintiffs' claims, that opinion necessarily is subject to change during this litigation; it would be procedurally improper for the Court at this juncture to presume to make a final pronouncement on the merits of Plaintiffs' claims.