IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THE PROPERTY MANAGEMENT CONNECTION, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | NO. 3:21-cv-00359 |
| v. | ) ) | JUDGE RICHARDSON |
| THE CONSUMER FINANCIAL PROTECTION BUREAU, et al., | ) ) ) ) | |
| Defendants. | | |

## MEMORANDUM OPINION

Pending before the Court are (1) Defendants Consumer Financial Protection Bureau and David Uejio's[1] (collectively, "CFPB") Motion to Dismiss pursuant to Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6) (Doc. No. 50, "CFPB Motion") supported by a memorandum of law (Doc. No. 51, "Memorandum in Support"), and (2) Defendant United States' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)[2] (Doc. No. 52, "US Motion") (collectively, "Motions"). Plaintiffs responded

---

[1] Mr. David Uejio is the acting director of the Consumer Financial Protection Bureau. *See* https://www.consumerfinance.gov/about-us/blog/the-bureau-is-taking-much-needed-action-to-protect-consumers-particularly-the-most-economically-vulnerable/ (last visited Nov. 8, 2021).

[2] Defendant United States asserts that the US Motion is made pursuant to Fed. R. Civ. P. 12(b)(1)(6). (Doc. No. 52 at 1). The Court assumes this is a scrivener's error and that the United States is actually bringing its motion pursuant to Fed. R. Civ. P. 12(b)(6) since it asserts that Plaintiffs claims "are moot and otherwise fail to state a claim on which relief may be granted." (*Id*.). This phrasing suggests that the United States believes that every basis for dismissal it asserts is one suggesting failure to state a claim and thus within the scope of Rule 12(b)(6). It is possible, however, that the United States meant to signal that the US Motion was brought under Rules 12(b)(1) & (6); if so, that would have been appropriate because, as noted below, mootness implicates Rule 12(b)(1) rather than Rule 12(b)(6).

The United States did not file a memorandum in support of its Motion as required by the local rules. However, the Court does not take issue with this for purposes of this Opinion, because the

to both Motions in a single brief. (Doc. No. 58, "Response"). Only CFBP replied. (Doc No. 59, "CFPB's Reply").

For the reasons discussed herein, CFPB's Motion will be granted as to its 12(b)(1) defense and denied as moot as to its 12(b)(6) defense. The US's Motion will be denied as moot.

## **BACKGROUND**[3]

Plaintiff Property Management Connection LLC ("PMC") is a company that "seeks to collect rent from tenants who rent properties it manages." (Doc. No. 38 at ¶¶ 1-2). Plaintiff Gordon J. Schoeffler is a Louisiana real estate attorney who "seeks to collect rent from tenants renting properties that his clients own and/or manage." (*Id*. at ¶ 3). Plaintiff the National Association of Residential Property Managers ("NARPM") is an organization that "represents over 5,000 residential property managers nationwide." (*Id*. at ¶ 4). Plaintiff Matthew S. Chase is an attorney practicing law in Missouri at Chase Law Firm, which is also a plaintiff in this matter in its own stead. (*Id*. at ¶¶ 6-7). Plaintiff James Hodge is the sole owner of Plaintiff Apex Ventures, Inc., which is "a property management and real estate company in Nashville . . . [that] seeks to collect rent from tenants who rent properties owned and/or managed by [it]." (*Id*. at ¶¶ 8-9).

Defendant Bureau of Consumer Financial Protection ("CFPB") is a federal agency that regulates consumer financial products and services. (*Id*. at ¶ 10). Defendant David Uejio is CFPB's

---

Court is dismissing the case based on the lack of subject-matter jurisdiction, which was not clearly asserted by the United States but was asserted by CFPB.

[3] The facts in this section are taken from Plaintiffs' First Amended Complaint. (Doc. No. 38). The First Amended Complaint is the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Because CFPB has brought forth a factual challenge to subject-matter jurisdiction (as discussed more thoroughly below), the Court does not automatically accept the allegations of the Complaint as true (as it would in a facial challenge). However, the Court will assume arguendo that the Complaint's allegations are true, not least because they do not appear to be in dispute.

acting director. (*Id*. at ¶ 11). The United States also has been named as a Defendant, apart from the CFPB.[4] (*Id*. at ¶ 12).

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). (*Id*. at ¶ 16). The CARES Act placed a "limited and temporary moratorium on evictions, for certain types of federally backed housing". (*Id*.). The moratorium expired on July 24, 2020. (*Id*.).

On September 1, 2020, the Center for Disease Control ("CDC") issued the "Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19" ("Halt Order"). (*Id*. at ¶ 17). The Halt Order provides, in pertinent part, that "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." (*Id*. at ¶ 19). Plaintiffs claim that the Halt Order essentially "stands as a backstop to [ ] state eviction moratoriums" and "purports to deprive home providers of any resort to state mechanisms for eviction." (*Id*. at ¶ 20). There have been several challenges to the Halt Order in various jurisdictions, including within the Sixth Circuit. (*Id*. at ¶¶ 37-41).

On April 22, 2021, the CFPB issued the Debt Collection Practice in Connection with the Global Covid-19 Pandemic regulation ("CFPB regulation"). (*Id*. at ¶ 42). "The CFPB [regulation] expands on the Halt Order and imposes new obligations on any person seeking to collect unpaid rent through the eviction process in any jurisdiction in which the Halt Order purportedly applies." (*Id*. at ¶ 43). Section 1006.9(c) of the CFPB regulation prohibits property owners from:

> (1) Fil[ing] an eviction action for non-payment of rent against a consumer to whom the CDC Order reasonably might apply without disclosing to that consumer

---

[4] The Court is of the view that Plaintiffs' suing of the United States is duplicative of its suing of CFPB, a United States agency, but any such duplication ultimately is irrelevant to the Court's resolution of the Motions.

> clearly and conspicuously in writing, on the date that the debt collector provides the consumer with an eviction notice or, if no eviction notice is required by applicable law, on the date that the eviction action is filed, that the consumer may be eligible for temporary protection from eviction under the CDC Order; or
>
> (2) Falsely represent[ing] or imply[ing] to a consumer that the consumer is ineligible for temporary protection from eviction under the CDC Order.

(*Id*. at ¶ 45).

On May 3, 2021 Plaintiffs filed a motion for a temporary restraining order to prevent enforcement of the CFPB regulation. (Doc. No. 6). The Court denied the motion on May 14, 2021, concluding that in light of the Sixth Circuit's decision in *Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev.*, 992 F.3d 518 (6th Cir. 2021), Plaintiffs were not entitled to injunctive relief in part because "loss of rental income" was not sufficient to show irreparable harm. (Doc. No. 23 at 3-4, 10-18; Doc. No. 24).

Plaintiffs' First Amended Complaint asserts claims for (i) allegedly unlawful agency action in violation of the APA, (ii) the CFPB's alleged violation of the First Amendment for prohibiting truthful speech by requiring false speech, and (iii) declaratory judgment. (Doc. No. 38). Notably, although Plaintiffs style Count III as a separate claim for declaratory judgment, Counts I and II each itself also requests a declaratory judgment, albeit one to somewhat different effect than the one requested in Count III. (Doc. No. 38 at 27, 31).[5] More specifically, Count I requests a declaratory judgment that the CFPB regulation is in violation of the Fair Debt Collection Practices Act, Count II requests a declaratory judgment that the CFPB regulation is in violation of the First Amendment, and Count III requests a declaratory judgment that the CFPB regulation "does not

---

[5] Citations herein are to the page numbers added by the Clerk's Office as part of the electronic case filing process, which may differ from the page numbers used by the author/filer of the document.

apply in the Sixth Circuit, and that the Sixth Circuit Plaintiffs or anyone else in the Sixth Circuit seeking back rent in a rent or eviction proceeding are not required to provide any information to tenants about the [Halt] Order." (*Id.* at 27, 31, 33-34).[6]

Importantly, nowhere does the First Amended Complaint request an award of damages; instead it requests only prospective non-monetary relief, namely: the particular declaratory judgments just discussed; the invalidation of the CFPB regulation; and an injunction "prohibiting the [regulation]'s enforcement and prohibiting the entry, reentry, promulgation, or extension of the CFPB [regulation] or any order like it requiring anyone seeking back rent in a rent or eviction proceeding to provide any information about the [Halt] Order." (*Id.* at 27, 31, 33-34).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions merely the sufficiency of the pleading. *Id*. When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish federally-cognizable claims, jurisdiction exists. *Id.*

---

[6] Plaintiffs define "Sixth Circuit Plaintiffs" to include Plaintiffs Hodge, Apex, PMC and the members of Plaintiff NARPM "who operate within the confines of the Sixth Circuit." (Doc. No. 38 at 31-32).

A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.* Where there is a factual attack on the subject-matter jurisdiction of the court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Id*. "[T]he district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction[.]" *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990). The Sixth Circuit has noted that:

> The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)).

In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.[7] *Gentek Bldg. Products, Inc.*, 491 F.3d at 330; *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1192 (M.D. Tenn. 2017) (discussing *Gentek*). As always, the party invoking federal jurisdiction has the

---

[7] Neither party has requested an evidentiary hearing or pointed the Court to additional evidence they might submit at such a hearing. The Court therefore exercises its discretion to rule on the present Motions without an evidentiary hearing. *See e.g.*, *Ohio Nat. Life Ins. Co.*, 922 F.2d at 327.

burden to prove that jurisdiction. *Global Technology, Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015); *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005).

Here, although it does not expressly so state, CFPB lodges a factual attack on subject-matter jurisdiction. This is because CFBP relies on things outside of the Complaint (like the Supreme Court decision discussed in depth below) to support its challenge to subject-matter jurisdiction. Accordingly, the Court will exercise its discretion to resolve the Motions by reference to the record (and other matters of public record) outside of Plaintiffs' Complaint. *Alpine Indus. v. F.T.C.*, 40 F. Supp. 2d 938, 940 (E.D. Tenn. 1998) ("Consideration of [ ] evidence [outside of the complaint when deciding a factual attack on subject-matter jurisdiction] does not convert the motion into one for summary judgment.").

## DISCUSSION

CFPB moved to dismiss Plaintiffs' First Amended Complaint "for lack of subject-matter jurisdiction . . . and for failure to state a claim." (Doc. No. 50 at 1).[8] Here, the Court must start with an analysis of subject-matter jurisdiction pursuant to 12(b)(1), because if a court does not have subject-matter jurisdiction, any 12(b)(6) defense (of failure to state a claim) would become moot if the court lacks subject-matter jurisdiction in the first place. *Nassif v. Hansen*, No. 1:06 CV

---

[8] The United States also moved to dismiss Plaintiffs' First Amended Complaint because "Plaintiffs' claims are moot and otherwise fail to state a claim on which relief may be granted." (Doc. No. 52 at 1). Contrary to the United States' indication, mootness is a 12(b)(1) concern, not a 12(b)(6) concern. *See City of Streetsboro v. Fraternal Ord. of Police*, No. 5:03 CV 1565, 2004 WL 3710234, at *2 (N.D. Ohio July 23, 2004) (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2001); *West Va. Highlands Conservancy v. Norton,* 161 F.Supp.2d 676, 679 (S.D. W.Va.2001)) ("While SERB brings its motion to dismiss for mootness under Fed. R. Civ. P 12(b)(6), mootness is a question of standing and subject matter jurisdiction. Accordingly, a motion to dismiss for mootness is properly brought pursuant to Fed. R. Civ. P 12(b)(1)."). In any event, Court need not address the merits of CFPB or the United States' 12(b)(6) defense because it is dismissing the case based on lack of subject-matter jurisdiction.

2563, 2008 WL 788558, at *5 (N.D. Ohio Mar. 21, 2008) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990)) ("Respondents argue that the Petition . . . should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6), respectively. The court is bound to consider the Rule 12(b)(1) motion first, since the Rule 12 (b)(6) challenge becomes moot if this court lacks subject matter jurisdiction."). Moreover, generally any grant of a Rule 12(b)(6) motion would be a decision on the merits, and a district court simply should not render any decisions on the merits in cases where it lacks subject-matter jurisdiction (and thus the jurisdiction to make any determination on the merits).

Asserting lack of subject-matter jurisdiction, CFPB contends that (1) "Counts I – III of [the Complaint] are moot because the bureau's rule requires no action by Plaintiffs, and (2) Plaintiffs' speculative fear of enforcement does not defeat mootness and is not sufficient to confer standing." (Doc. No. 51 at 17, 20). CFPB further argues that even if the Court did not lack jurisdiction over Count III (for declaratory judgment), is should exercise its discretion under the Declaratory Judgment Act and decline to adjudicate Count III. (*Id*. at 21-22). The Court will discussion each argument in turn.

    a. *Mootness*

CFPB claims that Counts I-III of the Complaint are moot because the CFPB regulation no longer requires any action by Plaintiffs, and therefore the parties' dispute "is no longer embedded in any actual controversy about [Plaintiffs'] particular legal rights." (Doc. No. 51 at 19). Specifically, CFPB contends that "Counts I and II, which ask the Court to set aside and invalidate the CFPB [regulation] to prevent anyone from having to provide any information about the [Halt] Order, [ ], are moot because it is clear that no one must provide any information about the CDC

Order in any jurisdiction. Count III is likewise moot because the relief it seeks – a prompt and final determination as to whether the CFPB [regulation] applies in the Sixth Circuit, [ ] – has already effectively been provided [via the *Tiger Lily* decision]."[9] (*Id.*) (internal citations omitted). The Court agrees.

"A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' *L.A. County v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). Mootness implicates Article III's "case or controversy" requirement.[10] *Gentry v. Deuth*, 456 F.3d 687, 693 (6th Cir.2006). Accordingly, mootness can be raised at any stage of litigation because it is a jurisdictional requirement. S*ee Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 460 (6th Cir.2007)." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008).

In their Response, at the outset of their mootness discussion, Plaintiffs confusingly claim that this case is not moot because they "have not received complete relief" because "CFPB's [regulation] *was* facially effective against the plaintiffs. CFPB has never disavowed its prior effectiveness outside this jurisdiction, it remains facially effective in this jurisdiction and the

---

[9] Via the Memorandum in Support, CFPB correctly asserts that "[t]he *Tiger Lily* decision, which was handed down after the Amended Complaint was filed, made clear that the CDC Order had no effect within the Sixth Circuit, and the developments in the Supreme Court and D.C. Circuit confirm that no CDC eviction moratorium has effect anywhere. Plaintiffs have thus effectively already received as final a 'determination as to whether the CFPB Rule applies in the Sixth Circuit,' as they could possibly hope to receive. Their entire complaint should be dismissed as moot." (Doc. No. 51 at 19).

[10] "This case-or-controversy requirement applies 'at all stages of review, not merely at the time the complaint is filed.' *Id.* (quoting *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 67 (1997)). 'If events occur during the pendency of a litigation which render the court unable to grant the requested relief, the case becomes moot and . . . falls outside our jurisdiction.'" *Howard v. Tenn.*, 760 F. App'x 837, 840–41 (6th Cir. 2018) (quoting *Demis*, 558 F.3d at 512)." *Jenkins v. Humphreys Cty.*, No. 3:18-CV-00639, 2019 WL 189828, at *2 (M.D. Tenn. Jan. 14, 2019).

plaintiffs who refused to follow the [regulation] face continued liability for potential private and public enforcement." (Doc. No. 56 at 7-8). Whatever Plaintiffs mean by this (and it is unclear to the Court what all Plaintiffs are actually saying here), they have not shown that their claims are not moot. Plaintiffs filed their first complaint on May 3, 2021. In the six months that have passed since then, several intervening decisions have led to Plaintiffs' claims now being moot. But even before this case was filed, as explained thoroughly in the Court's memorandum opinion in support of its denial of Plaintiffs' motion for a preliminary injunction (Doc. No. 23), the Sixth Circuit decided *Tiger Lily* on March 29, 2021, which made clear that the CDC Order had no effect within the Sixth Circuit. 992 F.3d 518 (6th Cir. 2021). Three months after Plaintiffs filed their Complaint, on August 26, 2021, the Supreme Court decided *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.,* 141 S. Ct. 2485 (2021). Finally, although the defendants in *Alabama Ass'n of Realtors* appealed the district court's grant of summary judgment, they moved to voluntarily dismiss the appeal promptly after the Supreme Court's opinion was issued, and the motion was granted promptly by the D.C. Circuit on September 3, 2021. *See Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.,* No. 21-5093, 2021 WL 4057718, at *1 (D.C. Cir. Sept. 3, 2021). Each of these decisions greatly impacted this case and further solidified this case's mootness, as discussed further below.

      Plaintiffs also contend that the case is not moot because two exceptions apply: (1) this issue is capable of repetition, yet evading review, and (2) CFPB cannot moot this case through its voluntary cessation. (Doc. No. 56 at 11-14). But both of these arguments fail.

      As to the first contention, Plaintiffs assert that the relief is not moot for the Plaintiffs who complied with the CFPB regulation because their challenge is capable of repetition, yet evading review. (*Id*. at 12). Plaintiffs further state that "[t]he issues are also capable of repetition as CFPB

retains the authority to issue the [regulation's] provisions at any time and have never acknowledged that they are prohibited from doing so. . . . CFPB has never acknowledged its legal overreach and remains poised to act again at any time" (*Id.*) (citations omitted). Application of the "capable of repetition, yet evading review" exception to mootness doctrine is limited to situations where: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is reasonable expectation that same complaining party will be subjected to same action again. *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307 (6th Cir. 2004) (citing *Weinstein v. Bradford,* 423 U.S. 147, 148 (1975)). Plaintiffs here are asserting the second situation, but it is not present here. At this stage of the litigation, the Court perceives, and Plaintiffs have pointed to, nothing indicating that the Halt Order is going to be essentially reissued or reasserted by CFPB in any way. It is sheer (and unsound) speculation to suggest that it will.

Some background is helpful here. On August 3, 2021, the CDC issued an order extending its Halt Order. *See, e.g., Ajax Mortg. Loan Tr. 2019-E, Mortg.-Backed Sec., Series 2019-E by U.S. Bank Nat'l Ass'n v. Sargent*, No. 1:21-CV-00018-JAW, 2021 WL 4027198, at *2, fn. 1 (D. Me. Sept. 3, 2021). However, about three weeks later, on August 26, 2021, the Supreme Court decided *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.,* 141 S. Ct. 2485 (2021), which is dispositive here. [11] In this case, associations of real estate agents and rental property managers sued

---

[11] The Court pauses here to address an important issue. Given the procedural posture at the time *Alabama Ass'n of Realtors* was decided, the Court understands how some courts have viewed the Supreme Court's order as perhaps merely preliminary because the order addressed only a motion to vacate the district court's *stay* of its own summary judgment, meaning that (at the time) there was still a chance of an appeal being decided on the merits after more fulsome briefing. *See, e.g., Ajax Mortg. Loan Tr. 2019-E,* 2021 WL 4027198, at *2, fn. 1 (hinting that even after the Supreme Court's decision in *Alabama Ass'n of Realtors*, the Halt Order could still be in effect because "[t]he Supreme Court vacated a stay that the district court had imposed *in anticipation of appeal*."). Theoretically, the Supreme Court's order (at the time it was decided) did not necessarily preclude the Halt Order from "coming back to life" if the defendants in that case decided to prosecute an appeal of the summary judgment and won the appeal on the merits. However, other courts have

the Department of Health and Human Services (HHS) and others, challenging a nationwide eviction moratorium for residential rental properties imposed by the director of the CDC in response to the COVID-19 pandemic. Here, the Supreme Court vacated a stay that the district court had imposed in anticipation of appeal because it concluded that "[i]f a federally imposed eviction moratorium is to continue, Congress must specifically authorize it." *Ala. Ass'n of Realtors*,141 S.Ct. at 2490. Accordingly, there is no reasonable expectation that the Halt Order will come back to life, especially considering the appeal's dismissal as discussed in footnote 12. <u>Coe v. Bell</u>, 230 F.3d 1357 (6th Cir. 2000) (citing *Sandison v. Michigan High School Athletic Ass'n, Inc.*, 64 F.3d 1026, 1029-30 (6th Cir.1995)) ("When there is no reasonable expectation that the same complaining party will be subject to the same action again, the 'capable of repetition yet evading review' exception does not apply.").

Plaintiffs also assert that "CFPB cannot moot this case through its voluntary cessation". (Doc. No. 56 at 12-14). However, CFPB correctly refutes this argument in its Reply. There, CFPB

---

concluded easily that the Supreme Court in *Alabama Ass'n of Realtors* resolved this issue conclusively when that opinion was issued, meaning that the Halt Order was definitely no longer in effect, *i.e.,* simply gone. *See, e.g., El Papel LLC v. Durkan*, No. 220CV01323RAJJRC, 2021 WL 4272323, at *6 (W.D. Wash. Sept. 15, 2021) (concluding that the defendants argument that plaintiffs lacked standing failed because in *Alabama Ass'n of Realtors* "the [ ] Supreme Court vacated a [d]istrict [c]ourt's stay of an order vacating the CDC eviction moratorium, so that the CDC eviction moratorium is no longer in effect."). Although the defendants in *Alabama Ass'n of Realtors* did in fact appeal the district court's grant of summary judgment, they moved to voluntary dismiss the appeal promptly after the Supreme Court's opinion was issued, and the motion was granted promptly by the D.C. Circuit on September 3, 2021. *See Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.,* No. 21-5093, 2021 WL 4057718, at *1 (D.C. Cir. Sept. 3, 2021) ("Upon consideration of defendants-appellants' unopposed motion to voluntarily dismiss appeal, it is ordered that the motion be granted and this case be dismissed."). Therefore, any notion that *Alabama Ass'n of Realtors* was still alive on the merits evaporated completely when the appeal was dismissed, thereby precluding any further possibility of litigation on the merits in that case that could somehow ultimately result in a ruling from the Supreme Court different from the one it expressed on August 26, 2021. Accordingly, it is appropriate to consider the Supreme Court's August 26 decision as not a preliminary one that is subject to change in that case. Thus, the Court treats this decision as dispositive, as discussed further herein.

notes that the mootness exception for a defendant's 'voluntary cessation' is inapplicable here because this case's mootness is not a result of any Bureau cessation, but of developments in other litigation that made clear that no CDC eviction moratorium applies anywhere and thus, that the Bureau's disclosure requirement (which, by its own terms, does not apply where the CDC eviction moratorium does not apply) does not apply anywhere either. "In any event, in . . . voluntary cessation cases involving government entities" the Sixth Circuit's 'primary concern is not the mere possibility that the government could revert to a challenged practice but whether there is evidence that the government will 'flip-flop' or has altered its conduct solely in response to litigation.' *Thomas v. City of Memphis, Tennessee*, 996, F.3 318, 328 (6th Cir. 2021). Plaintiffs do not, and could not, offer any such evidence here." (Doc. No. 59 at 3-4). The Court agrees that for these reasons, Plaintiffs' voluntary-cessation argument does not hold any water.

In short, Plaintiffs' contention that "[t]he expiration of CFPB's [regulation][12], and the partial vacatur of the underlying [Halt Order], does not foreclose *all possible* relief for Plaintiffs," (Doc. No. 56 at 8), ignores the practical effect of *Ala. Ass'n of Realtors* decision and the D.C. Circuit's dismissal of the appeal discussed in a footnote above.[13] Plaintiffs' challenge to the CFPB regulation is moot in its entirety,[14] which does in fact foreclose all possible avenues of relief for Plaintiffs. Because *Ala. Ass'n of Realtors* has effectively ended the Halt Order in every jurisdiction,

---

[12] Plaintiffs do not explain, and the Court does not understand, what they mean when they refer to the CFPB regulation's "expiration", but in any event, the Court does not rely on any expiration of the CFPB regulation in finding that the Court lacks subject-matter jurisdiction.

[13] Plaintiffs filed their Response on October 8, 2021, after both *Ala. Ass'n of Realtors* was decided and after the D.C. Circuit dismissed the appeal. (Doc. No. 56).

[14] Perhaps this would not be the case had Plaintiffs asserted claims for damages allegedly arising from alleged statutory and constitutional violations while the CFPB regulation still had some teeth. But Plaintiffs asserted no such claims.

and because it seems entirely clear (and something the Court is authorized to rely on herein) that the Halt Order is simply defunct everywhere at this point, Plaintiffs are no longer required to make disclosures about the eviction moratorium mandated by the Halt Order, and that is true in every jurisdiction. There is no longer a live case or controversy in this matter. *See Jenkins*, 2019 WL 189828 at *2 (dismissing habeas petition as moot because the petition "no longer present[ed] a case or controversy under Article III of the Constitution"). Accordingly, Counts I – III of Plaintiffs' Complaint are moot (and thus not within this Court's subject-matter jurisdiction) and must be dismissed on that basis alone. However, the Court will also entertain the parties standing arguments as discussed immediately below as an additional and alternative basis of dismissal.

b. *Standing*

"Standing is a critical component of the subject-matter jurisdiction of the federal courts; without it there is no 'Case' or 'Controversy' upon which the federal judicial power can act. Consequently if at any time a court discovers that a party bringing suit lacks standing, the case must be dismissed for want of jurisdiction. 'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Exec. Transp Sys. LLC v. Louisville Reg'l Airport Auth.*, 678 F. Supp. 2d 498, 505 (W.D. Ky. 2010) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1869) (*quoted in Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998)).

For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue. *McLemore v. Gumucio*, No. 3:19-CV-00530, 2020 WL 7129023, at *5 (M.D. Tenn. Dec. 4, 2020). More specifically, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates Inc.*, 137 S. Ct.

1645, 1647 (2017). To have standing to sue, a plaintiff must show injury in fact, causation, and redressability. *Durham v. Martin*, 905 F.3d 432, 433 (6th Cir. 2018) (*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

Regarding standing, CFPB asserts that "[t]o the extent Plaintiffs now concede that the [regulation] requires no ongoing action on their part, but they attempt to sustain their legal challenge on a speculative fear that they may someday be subject to an enforcement action for their past non-compliance with the Rule, Plaintiffs lack standing."[15] (Doc. No. 51 at 20). Plaintiffs assert in their Response that they *all* have standing to bring this suit because they suffered an injury in fact—namely that they have "incurred costs by complying with the [regulation]." (Doc. No. 56 at 14-15). However, that argument fails. "'Injury in fact,' as required for Article III standing, is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical." U.S. Const. Art. 3, § 2. True, alleged damages, such as incurring costs, theoretically could support the finding of an injury-in-fact. But they do not do so in this case, because in the Amended Complaint, Plaintiffs did not ask for damages; nor did they make any factual allegations that they have suffered compensable losses as a result of Defendants' alleged violations of law. The only relief requested in the Amended Complaint is declaratory relief and injunctive relief. (*See* Doc. No. 38). Plaintiffs have requested only prospective relief, and prospective relief is moot, as discussed above.

---

[15] CFPB also confusingly cites to and analyzes the requirements for plaintiffs seeking to challenge a rule in the pre-enforcement context. (*See* Doc. No. 51 at 14-15). But this is irrelevant here, as the CFPB regulation is not at the pre-enforcement stage, but rather is defunct and past the enforcement stage, as discussed herein. Accordingly, the Court disregards CFPB's argument, although the Court agrees that Plaintiffs still lack standing in any event.

Therefore, Plaintiffs' claims must be dismissed alternatively for lack of standing because Plaintiffs have not shown an injury in fact.

    c. *Declaratory Judgment Act*

As noted above, the First Amended Complaint requests a different declaratory judgment in each of the three counts, even though only one of the counts (Count III) is titled as a claim for declaratory judgment. Perhaps for this reason, CFPB focuses its attack on Count III's request for a declaratory judgment, although its argument actually applies to all three counts. CFPB asserts that "[e]ven if the Court did lack jurisdiction over Count III [Plaintiffs' request for declaratory judgment], [which] it does, it should exercise its discretion under the DJA and decline to adjudicate it." (Doc. No. 51 at 15). The Court agrees that it does not have jurisdiction over Count III (or any Count of the First Amended Complaint for that matter) for the reasons set forth above, but also notes that (for reasons similar to those depriving the Court of subject-matter jurisdiction) the Declaratory Judgment Act is inapplicable to any of the Counts. Declaratory judgment is available as a remedy only in "case[s] of actual controversy." *See* 28 U.S.C. § 2201. As discussed above, there is no case or controversy in this matter. *See Hayden v. 2K Games, Inc.*, 375 F. Supp. 3d 823, 830 (N.D. Ohio 2019) (dismissing the plaintiff's claim for declaratory judgment due to the absence of an actual "case or controversy" as required by the Declaratory Judgment Act and Article III). In short, the Declaratory Judgment Act is inapplicable for essentially one of the two reasons the Court lacks subject-matter jurisdiction, *i.e.*, the lack of an actual controversy. Accordingly, even if the Court had jurisdiction over Plaintiffs' claims—meaning among other things that it somehow could be said that there still was a "case or controversy" here within the meaning of Article III-- which it does not, each request for declaratory relief would be declined because the Court would not perceive an "actual controversy" for purposes of the DJA.

## CONCLUSION

Plaintiffs are effectively, and much more quickly, in the same (or better) position they would have been in had they prosecuted this lawsuit to the end and won all the relief they had requested. The Court may not understand why Plaintiffs apparently insist on claiming that that this is not the case, but it does understand why Plaintiffs might want to continue this litigation even though it is the case. That is, the Court understands that Plaintiffs may wish to vindicate, via a federal court's decisions, an apparently sincere view that the CFPB regulation (and, secondarily, the Halt Order) were in violation of federal statutes and the federal Constitution. If that is the case, the Court does not begrudge Plaintiffs their wish. But the Court cannot grant it; it cannot even consider vindicating any party's statutory or constitutional theories, no matter how sincere or correct they may be, if they are raised in a controversy that has become moot or if the plaintiffs have no injury-in-fact. Such is the case here. Plaintiffs have prevailed based on developments elsewhere, and they need not and cannot prevail additionally and more specifically in this action in this Court.

For the reasons discussed herein, the Court will grant CFPB's Motion (Doc. No. 50) as to its 12(b)(1) defense and deny as moot CFPB's Motion as to its 12(b)(6) defense. The US's Motion (Doc. No. 52) will be denied as moot.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE